Date: March 18, 2026

REC'D MAR 1 8 2026

Via Certified Mail / Personal Service

City of Philadelphia
Law Department
1515 Arch Street
Philadelphia, PA 19102

Re: Service of Federal Civil Action
Adams v. City of Philadelphia, et al.
United States District Court
Eastern District of Pennsylvania
Civil Action No. 2:26-CV-01357-GAM

To Whom It May Concern:

Please be advised that enclosed herewith are copies of the following documents filed in the United States District Court for the Eastern District of Pennsylvania:

1. Verified Complaint

2. Emergency Motion for Temporary Restraining Order and Preliminary Injunction

3. Memorandum of Law in Support

4. Affidavit of Damages

5. Affidavit in Support of Permanent Injunction (All Writs Act)

6. Proposed Order

This action asserts claims pursuant to 42 U.S.C. §1983, the Fifth and Fourteenth Amendments to the United States Constitution, and related state constitutional provisions arising from the demolition and enforcement actions concerning 2355 West Turner Street, Philadelphia, Pennsylvania.

Defendants are required to respond within the time provided under the Federal Rules of Civil Procedure.

Please direct all future communications regarding this matter to the undersigned.

Respectfully,

SESON DEON TELEO ADAMS
Individually and as Beneficiary
SESON DEON TELEO ADAMS TRUST

c/o 818 Bullock Ave
[Lansdowne Pa., 19050]
917-528-6268
SADAMS1@SESONDEONTELEOADAMS.ORG

To: City of Philadelphia Law Department
1515 Arch Street
Philadelphia, PA 19102

Re: Adams v. City of Philadelphia, et al.
United States District Court
Eastern District of Pennsylvania
Civil Action No. 2:26-CV-01357-GAM

Date: March 18 , 2026

**FORMAL REQUEST FOR PRODUCTION**

PURSUANT TO FED. R. CIV. P. 26(d) AND 34

To Defendants:

Plaintiff hereby serves this formal Request for Production of Documents pursuant to Federal Rules of Civil Procedure 26(d), 34, and 37.

Because an Emergency Motion for Temporary Restraining Order is pending and constitutional property rights are at risk, Plaintiff seeks limited early production directly related to the demolition and enforcement actions concerning:

2355 West Turner Street
Philadelphia, Pennsylvania 19121

## I. DOCUMENTS REQUESTED

You are requested to produce the following documents within fourteen (14) days:

### A. Demolition Records

1. All inspection reports related to the property.

2. All unsafe structure determinations.

3. Any emergency findings authorizing demolition without hearing.

4. Demolition permits.

5. Demolition contractor agreements.

6. Photographs taken prior to demolition.

7. Internal memoranda authorizing demolition.

### B. Notice and Service Documentation

8. Certified mail receipts.

9. USPS tracking confirmations.

10. Returned mail documentation.

11. Personal service affidavits.

12. Posting affidavits.

13. Internal logs reflecting service attempts.

### C. Tax and Payment Records

14. Full accounting of Plaintiff's $1.5 million payment.

15. Allocation of funds received.

16. Current tax balance calculations.

17. Sheriff sale scheduling documentation.

### D. Inter-Agency Communications

18. Emails referencing 2355 West Turner Street.

19. Communications between L&I and Department of Revenue.

20. Communications between the City and Sheriff's Office.

## II. LITIGATION HOLD NOTICE

PURSUANT TO FED. R. CIV. P. 26 & 37

You are hereby placed on formal notice of your obligation to preserve:

- All electronically stored information (ESI)
- Emails
- Internal memoranda
- Digital records
- Physical files

Failure to preserve responsive materials may result in spoliation sanctions.

## III. BASIS FOR EARLY DISCOVERY

This request is narrowly tailored and directly related to:

- Plaintiff's pending Emergency Motion for TRO;
- Constitutional claims under 42 U.S.C. §1983;
- Fifth Amendment Takings claim;
- Due Process violations.

The requested documents are essential for judicial review of the emergency relief sought.

## IV. RESPONSE FORMAT

Please produce responsive documents electronically in searchable PDF format where possible.

Objections must comply with Federal Rule of Civil Procedure 34(b)(2).

Respectfully submitted,

SESON DEON TELEO ADAMS
Individually and as Beneficiary
SESON DEON TELEO ADAMS TRUST

c/o 818 Bullock Ave
[Lansdowne Pa., 19050]
917-528-6268
SADAMS1@SESONDEONTELEOADAMS.ORG

To: Philadelphia Department of Licenses & Inspections
Municipal Services Building
1401 JFK Blvd 5ᵗʰ Floor
Philadelphia, PA 19102Re: Adams v. City of Philadelphia, et al.
United States District Court
Eastern District of Pennsylvania
Civil Action No. 2:26-CV-01357-GAM

Date: March 18, 2026

**FORMAL REQUEST FOR PRODUCTION**

PURSUANT TO FED. R. CIV. P. 26(d) AND 34

To Defendants:

Plaintiff hereby serves this formal Request for Production of Documents pursuant to Federal Rules of Civil Procedure 26(d), 34, and 37.

Because an Emergency Motion for Temporary Restraining Order is pending and constitutional property rights are at risk, Plaintiff seeks limited early production directly related to the demolition and enforcement actions concerning:

2355 West Turner Street
Philadelphia, Pennsylvania 19121

## I. DOCUMENTS REQUESTED

You are requested to produce the following documents within fourteen (14) days:

### A. Demolition Records

1. All inspection reports related to the property.

2. All unsafe structure determinations.

3. Any emergency findings authorizing demolition without hearing.

4. Demolition permits.

5. Demolition contractor agreements.

6. Photographs taken prior to demolition.

7. Internal memoranda authorizing demolition.

### B. Notice and Service Documentation

8. Certified mail receipts.

9. USPS tracking confirmations.

10. Returned mail documentation.

11. Personal service affidavits.

12. Posting affidavits.

13. Internal logs reflecting service attempts.

### C. Tax and Payment Records

14. Full accounting of Plaintiff's $1.5 million payment.

15. Allocation of funds received.

16. Current tax balance calculations.

17. Sheriff sale scheduling documentation.

### D. Inter-Agency Communications

18. Emails referencing 2355 West Turner Street.

19. Communications between L&I and Department of Revenue.

20. Communications between the City and Sheriff's Office.

## II. LITIGATION HOLD NOTICE

PURSUANT TO FED. R. CIV. P. 26 & 37

You are hereby placed on formal notice of your obligation to preserve:

- All electronically stored information (ESI)
- Emails
- Internal memoranda
- Digital records
- Physical files

Failure to preserve responsive materials may result in spoliation sanctions.

## III. BASIS FOR EARLY DISCOVERY

This request is narrowly tailored and directly related to:

• Plaintiff's pending Emergency Motion for TRO;
• Constitutional claims under 42 U.S.C. §1983;
• Fifth Amendment Takings claim;
• Due Process violations.

The requested documents are essential for judicial review of the emergency relief sought.

## IV. RESPONSE FORMAT

Please produce responsive documents electronically in searchable PDF format where possible.

Objections must comply with Federal Rule of Civil Procedure 34(b)(2).

Respectfully submitted,

SESON DEON TELEO ADAMS
Individually and as Beneficiary
SESON DEON TELEO ADAMS TRUST

c/o 818 Bullock Ave
[Lansdowne Pa., 19050]
917-528-6268
SADAMS1@SESONDEONTELEOADAMS.ORG

To: Philadelphia Sheriff's Office
100 South Broad Street
Philadelphia, PA 19110

Re: Adams v. City of Philadelphia, et al.
United States District Court
Eastern District of Pennsylvania
Civil Action No. 2:26-CV-01357-GAM

Date: March 18 , 2026

**FORMAL REQUEST FOR PRODUCTION**

**PURSUANT TO FED. R. CIV. P. 26(d) AND 34**

To Defendants:

Plaintiff hereby serves this formal Request for Production of Documents pursuant to Federal Rules of Civil Procedure 26(d), 34, and 37.

Because an Emergency Motion for Temporary Restraining Order is pending and constitutional property rights are at risk, Plaintiff seeks limited early production directly related to the demolition and enforcement actions concerning:

2355 West Turner Street
Philadelphia, Pennsylvania 19121

## I. DOCUMENTS REQUESTED

You are requested to produce the following documents within fourteen (14) days:

### A. Demolition Records

1. All inspection reports related to the property.

2. All unsafe structure determinations.

3. Any emergency findings authorizing demolition without hearing.

4. Demolition permits.

5. Demolition contractor agreements.

6. Photographs taken prior to demolition.

7. Internal memoranda authorizing demolition.

## B. Notice and Service Documentation

8. Certified mail receipts.

9. USPS tracking confirmations.

10. Returned mail documentation.

11. Personal service affidavits.

12. Posting affidavits.

13. Internal logs reflecting service attempts.

## C. Tax and Payment Records

14. Full accounting of Plaintiff's $1.5 million payment.

15. Allocation of funds received.

16. Current tax balance calculations.

17. Sheriff sale scheduling documentation.

## D. Inter-Agency Communications

18. Emails referencing 2355 West Turner Street.

19. Communications between L&I and Department of Revenue.

20. Communications between the City and Sheriff's Office.

## II. LITIGATION HOLD NOTICE

PURSUANT TO FED. R. CIV. P. 26 & 37

You are hereby placed on formal notice of your obligation to preserve:

- All electronically stored information (ESI)
- Emails
- Internal memoranda
- Digital records
- Physical files

Failure to preserve responsive materials may result in spoliation sanctions.

## III. BASIS FOR EARLY DISCOVERY

This request is narrowly tailored and directly related to:

- Plaintiff's pending Emergency Motion for TRO;
- Constitutional claims under 42 U.S.C. §1983;
- Fifth Amendment Takings claim;
- Due Process violations.

The requested documents are essential for judicial review of the emergency relief sought.

"In addition to the above, please confirm in writing whether any sheriff sale is currently scheduled for 2355 West Turner Street and provide the date, docket reference, and legal authority relied upon."

## IV. RESPONSE FORMAT

Please produce responsive documents electronically in searchable PDF format where possible.

Objections must comply with Federal Rule of Civil Procedure 34(b)(2).

Respectfully submitted,

SESON DEON TELEO ADAMS
Individually and as Beneficiary
SESON DEON TELEO ADAMS TRUST

c/o 818 Bullock Ave
[Lansdowne Pa., 19050]
917-528-6268
SADAMS1@SESONDEONTELEOADAMS.ORG

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

SESON DEON TELEO ADAMS,
Individually and as Beneficiary of
SESON DEON TELEO ADAMS TRUST,

Civil Action No. 2:26-CV-01357-GAM

Plaintiff,

v.

CITY OF PHILADELPHIA;
PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS;
PHILADELPHIA SHERIFF'S OFFICE;
PHILADELPHIA DEPARTMENT OF REVENUE,

Defendants.

---

## CONSOLIDATED FILING INDEX

Plaintiff respectfully submits the following documents in support of this civil action and emergency request for injunctive relief:

## 1. Civil Cover Sheet (JS-44)

Filed pursuant to Local Civil Rule requirements and 28 U.S.C. §1331 (Federal Question Jurisdiction).

## 2. Verified Complaint

Filed pursuant to:

- 42 U.S.C. §1983
- 28 U.S.C. §§1331, 1343
- 28 U.S.C. §2201 (Declaratory Judgment Act)
- 28 U.S.C. §1367 (Supplemental Jurisdiction)

Claims asserted:

- Procedural Due Process
- Substantive Due Process
- Fifth Amendment Taking
- Inverse Condemnation
- Monell Municipal Liability
- Void Judgment (Lack of Personal Jurisdiction)

## 3. Emergency Motion for Temporary Restraining Order and Preliminary Injunction

Filed pursuant to:

- Federal Rule of Civil Procedure 65
- 28 U.S.C. §1651 (All Writs Act)
- 42 U.S.C. §1983

Relief requested:

- Immediate stay of sheriff sale
- Stay of February 5, 2026 decree
- Preservation of status quo

## 4. Memorandum of Law in Support of Verified Complaint and Emergency Motion

Supporting authority includes:

- Mullane v. Central Hanover Bank
- Jones v. Flowers
- Peralta v. Heights Medical Center
- Monell v. Department of Social Services
- U.S. Constitution Amendments V and XIV
- Pennsylvania Constitution Article I §§2, 8, 17

## 5. Affidavit of Damages

Detailing:

- Rebuild Value: $425,000.00
- Lost Rental Income (2018–2037): $638,400.00
- Total Economic Damages: $1,063,400.00

Submitted pursuant to 28 U.S.C. §1746.

## 6. Affidavit in Support of Permanent Injunction

Filed pursuant to:

- 28 U.S.C. §1651 (All Writs Act)
- Federal Rule of Civil Procedure 65

Addressing:

- Void judgment doctrine
- Estoppel by record
- Continuing constitutional injury
- Need to protect federal jurisdiction

## 7. Rule 65 Certification of Notice

Filed pursuant to Federal Rule of Civil Procedure 65(b).

## 8. Proposed Order

Requesting:

- Immediate stay of sheriff sale
- Stay of enforcement proceedings
- Response deadline for Defendants

## SUMMARY OF RELIEF SOUGHT

Plaintiff seeks:

- Temporary and permanent injunctive relief

- Declaratory judgment

- Just compensation for unconstitutional taking

- Compensatory damages exceeding $1,063,400.00

- Pre-judgment and post-judgment interest

- Attorney's fees under 42 U.S.C. §1988

- Jury trial

## CERTIFICATION

Plaintiff certifies that the above documents are filed contemporaneously and are intended to be read together as part of a consolidated constitutional challenge arising from demolition and enforcement actions affecting 2355 West Turner Street, Philadelphia, Pennsylvania.

Respectfully submitted,

/s/Seson Deon Teleo Adams                    Date: February 27, 2026

SESON DEON TELEO ADAMS
Individually and as Beneficiary
SESON DEON TELEO ADAMS TRUST

Seson Deon Teleo Adams, Beneficiary, Sui Juris
c/o 818 Bullock Ave Lansdowne, PA 19050
sadams1@sesondeonteleoadams.org

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Seson Deon Teleo Adams, Benficiary, sui juris

**(b)** County of Residence of First Listed Plaintiff ____Philadelphia____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

SESON DEON TELEO ADAMS c/o 818 Bullock Ave
Lansdowne, PA 19050 917-528-6268

## DEFENDANTS

City of Philadelphia et al

Philadelphia Department of Licenses & Inspections

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Francesco J. Grieco, Esq Deputy City Solicitor City of Philadelphia Law Department 1401 JFFK Boulevard, Suite

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / Personal Injury | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 370 Other Fraud | **LABOR** | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §1983

Brief description of cause:
Due Process, Takings Clause, Monell Liability

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 1,063,400.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
February 27, 2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ SESON DEON TELEO ADAMS

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SESON DEON TELEO ADAMS,
Individually and as Beneficiary of
SESON DEON TELEO ADAMS TRUST,

Plaintiff,

v.

CITY OF PHILADELPHIA;
PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS;
PHILADELPHIA SHERIFF'S OFFICE;
PHILADELPHIA DEPARTMENT OF REVENUE,

Defendants.

Civil Action No. _____

---

**VERIFIED COMPLAINT**

## I. INTRODUCTION

This action arises from the unconstitutional demolition of Plaintiff's fully owned three-story multi-use property located at:

2355 West Turner Street
Philadelphia, Pennsylvania 19121

The property:

• Purchased in 2007
• Mortgage satisfied in 2010 for $114,000.00
• Transferred into SESON DEON TELEO ADAMS TRUST on July 18, 2016
• Recorded under Doc ID 53088236
• Approximately 1,914 square feet

Despite full equity ownership, Defendants demolished the structure without constitutionally adequate notice, without hearing, and without just compensation.

## II. JURISDICTION

Jurisdiction arises under:

- 28 U.S.C. §1331
- 28 U.S.C. §1343
- 42 U.S.C. §1983
- 28 U.S.C. §2201
- 28 U.S.C. §1367

## III. FACTUAL ALLEGATIONS

1. Mortgage fully satisfied in 2010.

2. No mortgage default existed.

3. The Trust conveyance was recorded July 18, 2016.

4. In 2018, Defendants initiated enforcement actions.

5. No certified mail was received.

6. No personal service occurred.

7. No hearing preceded demolition.

8. No emergency judicial finding authorized demolition.

9. The structure was demolished.

10. Plaintiff later paid $1.5 million in reliance upon court direction.

11. February 5, 2026 decree to sell entered pursuant to 53 P.S. §7101.

## IV. CLAIMS FOR RELIEF

COUNT I – Procedural Due Process (42 U.S.C. §1983)
COUNT II – Substantive Due Process
COUNT III – Fifth Amendment Per Se Taking
COUNT IV – Inverse Condemnation
COUNT V – Monell Municipal Liability
COUNT VI – Void Judgment for Lack of Personal Jurisdiction

## V. DAMAGES

Rebuild Value (1,914 sq ft): $425,000.00
Lost Rental Income (2018–2037): $638,400.00

Total Economic Damages: $1,063,400.00

Exclusive of prejudgment interest, attorney's fees, and additional damages.

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests:

• Temporary Restraining Order
• Preliminary and Permanent Injunction
• Declaratory Judgment
• Just Compensation
• Compensatory Damages exceeding $1,063,400.00
• Pre-Judgment Interest
• Post-Judgment Interest pursuant to 28 U.S.C. §1961
• Attorney's Fees under 42 U.S.C. §1988
• Jury Trial

AFFIRMATION I, Seson Deon Teleo Adams, without the United States Respectfully submitted, Signed with explicit reservation of all Rights, and I waive none of my Rights at any time or for any reason, *Affidavit pursuant to 29,* United States Code, Title 1746 *See Dickerson vs. Wainwright,* 626 F.2d Title 1184, *held* affidavit sworn true and correct under penalty of perjury has full force of law and does not have to be verified by Notary Public to have same effect. Respectfully submitted,

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 27, 2026

/s/ SESON DEON TELEO ADAMS

Seson Deon Teleo Adams, Beneficiary, Sui Juris

c/o 818 Bullock Ave Lansdowne, PA 19050

sadams1@sesondeonteleoadams.org

## RULE 65 CERTIFICATION

Plaintiff certifies that immediate and irreparable harm will occur absent injunctive relief.

Notice of this motion will be provided to Defendants.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SESON DEON TELEO ADAMS,
Individually and as Beneficiary of
SESON DEON TELEO ADAMS TRUST,  Civil Action No. 2:26-CV-01357-GAM

Plaintiff,

v.

CITY OF PHILADELPHIA;
PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS;
PHILADELPHIA SHERIFF'S OFFICE;
PHILADELPHIA DEPARTMENT OF REVENUE,

Defendants.

---

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

Plaintiff moves pursuant to Federal Rule of Civil Procedure 65 for:

1. Immediate stay of any sheriff sale;

2. Stay of the February 5, 2026 decree;

3. Preservation of the status quo;

4. Protection of constitutional property rights.

Plaintiff demonstrates:

- Likelihood of success on the merits;
- Irreparable harm;
- Balance of equities favors Plaintiff;
- Public interest supports constitutional compliance.

Loss of real property constitutes irreparable harm.

### VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.
Date: February 27, 2026
/s/ SESON DEON TELEO ADAMS
Seson Deon Teleo Adams, Beneficiary, Sui Juris
c/o 818 Bullock Ave Lansdowne, PA 19050
sadams1@sesondeonteleoadams.org

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

SESON DEON TELEO ADAMS,
Individually and as Beneficiary of
SESON DEON TELEO ADAMS TRUST,

Civil Action No. 2:26-CV-01357-GAM

Plaintiff,

v.

CITY OF PHILADELPHIA;
PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS;
PHILADELPHIA SHERIFF'S OFFICE;
PHILADELPHIA DEPARTMENT OF REVENUE,

Defendants.

---

**MISCELLANEOUS FILING**

**AFFIDAVIT IN SUPPORT OF PERMANENT INJUNCTION**

**PURSUANT TO THE ALL WRITS ACT, 28 U.S.C. §1651**

**AND FEDERAL RULE OF CIVIL PROCEDURE 65**

I, Seson Deon Teleo Adams d.b.a. SESON DEON TELEO ADAMS, being of lawful age and competent to testify, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

## I. BASIS FOR EQUITABLE RELIEF

This Affidavit is submitted in support of Plaintiff's request for permanent injunctive relief pursuant to:

- 28 U.S.C. §1651 (All Writs Act);
- Federal Rule of Civil Procedure 65;
- 42 U.S.C. §1983;

- The Fifth and Fourteenth Amendments to the United States Constitution;

- Article I §§2, 8, and 17 of the Constitution of the Commonwealth of Pennsylvania.

The All Writs Act authorizes federal courts to issue all writs necessary or appropriate in aid of their jurisdiction.

Plaintiff seeks relief necessary to protect this Court's jurisdiction over federal constitutional claims arising from the demolition and attempted enforcement actions concerning 2355 West Turner Street, Philadelphia, Pennsylvania.

## II. FACTUAL FOUNDATION FOR INJUNCTION

1. Plaintiff was the equitable owner and beneficiary of record of 2355 West Turner Street through SESON DEON TELEO ADAMS TRUST.

2. The mortgage on the property was satisfied in 2010 in the amount of $114,000.00.

3. The property was lawfully conveyed into the Trust on July 18, 2016 and recorded under Doc ID 53088236.

4. No mortgage default existed at the time of demolition.

5. Defendants, acting under color of state law, demolished the structure without:

   o Verified personal service;

   o Confirmed certified mail receipt;

   o A pre-deprivation hearing;

   o A documented emergency judicial finding.

6. The demolition occurred prior to constitutionally adequate notice.

7. Plaintiff subsequently paid $1.5 million in reliance upon court instruction, yet enforcement actions continued.

8. On February 5, 2026, a decree to sell the property was entered pursuant to 53 P.S. §7101.

## III. ESTOPPEL BY RECORD AND VOID JURISDICTION

A judgment entered without constitutionally sufficient service violates due process and is void.

Under *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988), a judgment entered without proper service lacks personal jurisdiction and is void.

Under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), notice must be reasonably calculated to apprise interested parties.

Because constitutionally adequate service was not effectuated prior to demolition and enforcement proceedings, Defendants are estopped from relying upon any resulting judgment as a lawful basis for further enforcement.

A void judgment cannot serve as a valid foundation for sheriff sale or further deprivation of property rights.

## IV. CONTINUING CONSTITUTIONAL INJURY

Defendants' actions constitute:

- Procedural Due Process violations (Fourteenth Amendment);
- Substantive Due Process violations;
- A per se physical taking under the Fifth Amendment;
- Inverse condemnation under Pennsylvania law.

Absent injunctive relief, Plaintiff faces continued constitutional injury through:

- Sheriff sale;
- Transfer of title;
- Further enforcement under void jurisdiction.

## V. AUTHORITY UNDER THE ALL WRITS ACT

The All Writs Act permits this Court to issue orders necessary to:

- Protect its jurisdiction over pending §1983 claims;
- Prevent frustration of federal constitutional adjudication;
- Preserve the status quo while constitutional claims are litigated.

Plaintiff does not seek appellate review of state court decisions. Rather, Plaintiff seeks protection against ongoing enforcement actions grounded in constitutionally defective proceedings.

## VI. IRREPARABLE HARM

Real property is unique.

Loss of land rights and continued enforcement based on void proceedings constitutes irreparable injury.

Monetary damages alone cannot fully restore possessory or equitable interests.

## VII. REQUEST FOR PERMANENT INJUNCTION

Plaintiff respectfully requests that this Court:

1. Permanently enjoin Defendants from conducting any sheriff sale of 2355 West Turner Street pending resolution of constitutional claims;

2. Permanently stay enforcement of the February 5, 2026 decree if jurisdiction was constitutionally defective;

3. Order production of verified proof of service and demolition authorization;

4. Enjoin further enforcement actions absent constitutionally sufficient notice and process;

5. Grant such additional equitable relief as this Court deems just and proper.

## VIII. DECLARATION

I Seson Deon Teleo Adams d.b.a. SESON DEON TELEO ADAMS declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 27th day of February, 2026.

/s/ SESON DEON TELEO ADAMS
Seson Deon Teleo Adams, Beneficiary, Sui Juris
c/o 818 Bullock Ave Lansdowne, PA 19050
sadams1@sesondeonteleoadams.org

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

SESON DEON TELEO ADAMS,
Individually and as Beneficiary of
SESON DEON TELEO ADAMS TRUST,

Civil Action No. 2:26-CV-01357-GAM

Plaintiff,

v.

CITY OF PHILADELPHIA;
PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS;
PHILADELPHIA SHERIFF'S OFFICE;
PHILADELPHIA DEPARTMENT OF REVENUE,

Defendants.

---

**RULE 65 CERTIFICATION**

Plaintiff certifies that immediate and irreparable harm will occur absent injunctive relief.

Notice of this motion will be provided to Defendants.

Respectfully submitted,

/s/Seson Deon Teleo Adams          Date: February 27, 2026

SESON DEON TELEO ADAMS
Individually and as Beneficiary
SESON DEON TELEO ADAMS TRUST

Seson Deon Teleo Adams, Beneficiary, Sui Juris
c/o 818 Bullock Ave Lansdowne, PA 19050
sadams1@sesondeonteleoadams.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SESON DEON TELEO ADAMS,
Individually and as Beneficiary of
SESON DEON TELEO ADAMS TRUST,          Civil Action No. 2:26-01357-GAM

Plaintiff,

v.

CITY OF PHILADELPHIA;
PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS;
PHILADELPHIA SHERIFF'S OFFICE;
PHILADELPHIA DEPARTMENT OF REVENUE,

Defendants.

---

**PROPOSED ORDER**


AND NOW, this ___ day of _____, 2026, upon consideration of Plaintiff's Emergency
Motion, it is hereby ORDERED:

1. Sheriff sale of 2355 West Turner Street is STAYED.

2. Enforcement of the February 5, 2026 decree is STAYED.

3. Defendants shall respond within ___ days.

BY THE COURT:


United States District Judge

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

SESON DEON TELEO ADAMS,
Individually and as Beneficiary of
SESON DEON TELEO ADAMS TRUST,

Plaintiff,

v.

CITY OF PHILADELPHIA;
PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS;
PHILADELPHIA SHERIFF'S OFFICE;
PHILADELPHIA DEPARTMENT OF REVENUE,

Defendants.

Civil Action No. 2:26-CV-01357-GAM

# PLAINTIFF'S MOTION IN LIMINE

TO LIMIT EVIDENCE AND ARGUMENT
AT HEARING ON EMERGENCY INJUNCTIVE RELIEF

Plaintiff, SESON DEON TELEO ADAMS, respectfully moves this Court for an Order limiting certain evidence and arguments at any evidentiary hearing concerning Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

This Motion is made pursuant to the Court's inherent authority to control evidentiary proceedings and Federal Rules of Evidence 401, 402, and 403.

## I. PURPOSE OF THIS MOTION

The issues before the Court at the emergency stage are narrow:

1. Whether constitutionally adequate notice was provided prior to demolition;

2. Whether an emergency judicial finding justified demolition without hearing;

3. Whether enforcement proceedings are based on a void lack of service;

4. Whether irreparable harm exists.

Plaintiff seeks to prevent Defendants from introducing speculative, post-hoc, or irrelevant material unrelated to these issues.

## II. UNDISPUTED FACTS

The following facts are not reasonably disputable based on record documentation:

1. The mortgage on 2355 West Turner Street was satisfied in 2010 in the amount of $114,000.00.

2. The property was transferred into SESON DEON TELEO ADAMS TRUST on July 18, 2016 (Doc ID 53088236).

3. The structure consisted of approximately 1,914 square feet.

4. The structure was demolished.

5. Plaintiff did not receive verified personal service prior to demolition.

6. Plaintiff did not receive certified mail notice.

These facts form the baseline for constitutional analysis.

## III. EVIDENCE TO BE EXCLUDED

Plaintiff respectfully requests that the Court preclude:

### A. Post-Hoc Emergency Justifications

Any emergency justification not supported by contemporaneous written emergency findings created prior to demolition.

### B. Undocumented Service Claims

Any assertion that service was made without documentary proof, including:

- Certified mail receipts
- USPS tracking
- Personal service affidavits
- Posting affidavits

Under *Mullane v. Central Hanover Bank* and *Jones v. Flowers*, due process requires more than mere internal mailing assertions.

### C. Irrelevant Character or Collateral Matters

Any evidence or argument unrelated to:

- Notice
- Service
- Demolition authorization
- Constitutional due process

Evidence intended to distract from the constitutional analysis should be excluded under Federal Rule of Evidence 403.

## IV. VOID JUDGMENT LIMITATION

Plaintiff further moves that Defendants be precluded from relying upon any state court judgment as conclusive evidence of validity if service was constitutionally deficient.

Under *Peralta v. Heights Medical Center, Inc.*, a judgment entered without proper service is void and cannot establish jurisdiction.

## V. RELEVANCE STANDARD

At this stage, the Court is evaluating:

- Likelihood of success on the merits;
- Irreparable harm;
- Balance of equities;
- Public interest.

Evidence unrelated to these factors should be excluded.

## VI. CONCLUSION

Plaintiff respectfully requests that this Court enter an Order:

1. Limiting evidence to issues directly related to notice, service, demolition authorization, and constitutional compliance;

2. Precluding post-hoc rationalizations unsupported by contemporaneous documentation;

3. Excluding irrelevant or prejudicial material.

Respectfully submitted,

SESON DEON TELEO ADAMS
Individually and as Beneficiary
SESON DEON TELEO ADAMS TRUST      Date: 03/18/2026

c/o 818 Bullock Ave
[Lansdowne Pa., 19050]
917-528-6268
SADAMS1@SESONDEONTELEOADAMS.ORG

# SECURITY AGREEMENT

TRUSTEE/SECURED PARTY.

---

TRUST hereby confirms that this Security Agreement is a duly executed, signed, and sealed private contract entered into knowingly, intentionally, and voluntarily by TRUST and TRUSTEE/SECURED PARTY, wherein and whereby TRUST:

<u>SESON DEON TELEO    ADAMS</u> ©
TRUST SIGNATURE

## NOTICE OF LIEN

This agreement constitutes an International Commercial Lien on all property (in each of their individual capacity/form/item) of TRUST (indemnitor) on behalf of, and for the benefit of, TRUSTEE/SECURED PARTY CREDITOR (indemnitee) in the amount of $100,000,000.00 (ONE HUNDRED MILLION), in silver dollars, fiat money, or money of account/credit, at par value. This lien will expire at the moment that the indemnitee expires or when this lien is satisfied by any Third Party Interloper who seeks to take/seize any of said property, or upon fulfillment of trusts purpose in distribution to beneficiaries and trust dissolution in proper due course.

# SECURITY AGREEMENT

Non-Negotiable <u>Private</u> Agreement

TRUST SIGNATURE

    Party of the First Part

    U.C.C. § 1-201(39)

    Common Law Copyright 2006

    **Trustee/Secured Party's** Signature Party of the Second Part  Authorized

Representative,

    U.C.C. § 1-201(35)

    All Rights Reserved

    STATE OF <u>NEW YORK</u>)

                ) Scilicet

County of <u>New York</u> )

SUBSCRIBED TO before me this _____ day of _____, A.D. 2024, Ivy Soto a Notary/Commissioner of deeds, that Seson-Deon Teleo: Adams, personally appeared and known to me to be the man whose name subscribed to the within instrument and acknowledged to be the same.

NS: _____

Signature of Notary Public

Seal:

IVYSOTO
Commissioner of Deeds, City of New York
No. 1-7061
Cert. Flied In New York County,
Commission Expires May 1, 2025

To avert losses of vested rights in the present or future collateral that is the subject of the attached Security Agreement, TRUST agrees to make available to TRUSTEE/SECURED PARTY, such accounts established by intent of the parties, by operation of law, and/or as constructive trusts, to hold proceeds arising from assets belonging to TRUST, and administered by the UNITED STATES or its subdivisions, agents, or affiliates. Pursuant to existing laws of the UNITED STATES and the agreement of the parties of this Security Agreement, TRUSTEE/SECURED PARTY is authorized to assign such funds from said accounts as are necessary to settle all past, present, and future public debts and obligations incurred by TRUST on behalf of

# SECURITY AGREEMENT

Non-Negotiable _Private_ Agreement

**Note**: TRUSTEE/SECURED PARTY reserves the right to satisfy any judgment, lien, levy, debt, or obligation, whether secured, unsecured, or purported to be secured, against TRUST by acceptance for value and return for adjustment, settlement and closure, executing a Bill of Exchange, or against the Fidelity Bond registered herewith under necessity, as the TRUSTEE/SECURED PARTY may select.

## SIGNATURES
### Applicable to all Successors and Assigns

TRUSTEE/SECURED PARTY executes this Security Agreement certified and sworn on TRUST'S unlimited liability true, correct, and complete, and accepts all signatures in accord with UCC § 3-419 INSTRUMENTS SIGNED

_SESON DEON TELEO   ADAMS_©

# SECURITY AGREEMENT

Non-Negotiable _Private_ Agreement

## Related Documents

The phrase "related documents" means all promissory notes, credit agreements, loan agreements, guaranties, Security Agreements, mortgages, deeds of trust, applications, accounts, licenses, policies, permits, identification cards, account cards, receipts, forms, and all other documents and instruments that TRUST or its previous surety has or will execute in connection with TRUST'S total indebtedness.

The term _inter alia_ may be used to include "related documents". It literally means 'among other things'.

## Notices

All notices required to be given by either party under this agreement, shall be in writing or Proof of Email or Fax and shall be effective when actually delivered, when deposited with the United States Post Office or a nationally recognized delivery service that both parties agree to. Notice must to be given to SECURED PARTY at the address shown on this Agreement or to such other address as designated to the other in writing.

## Severability

If one or more provisions of this agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a qualified court finds that one or more provisions of this agreement is invalid or unenforceable, but that by limiting such provision(s) it would become valid or enforceable, such provision(s) shall be deemed to be written, construed, and enforced as so limited. In the event that such a finding and limitation causes damage or hardship to either party, the agreement shall be amended in a lawful manner to make all parties whole.

## Waiver of Contractual Right

The failure of either party to enforce one or more provisions of this agreement shall not be construed as a waiver or limitation of that PARTY'S right to subsequently enforce and compel strict compliance with every provision of this agreement. TRUSTEE/SECURED PARTY shall not be deemed to have waived any rights under this agreement unless such waiver is given in writing and signed by TRUSTEE/SECURED PARTY under voluntary, noticed, informed consent. No delay, error or omission on the part of TRUSTEE/SECURED PARTY in exercising a right or option shall operate as a waiver of such right or any other right. A waiver by TRUSTEE/SECURED PARTY of a provision of this agreement shall not prejudice or constitute a waiver of TRUSTEE/SECURED PARTY'S right otherwise to demand strict compliance with that provision or any other provision of this agreement. No prior waiver by TRUSTEE/SECURED PARTY, nor any course of dealing between TRUSTEE/SECURED PARTY and TRUST, shall constitute a waiver of TRUSTEE/SECURED PARTY'S rights or of TRUST'S obligations under this agreement as to future transactions. Whenever the consent of TRUSTEE/SECURED PARTY is required under this agreement, the granting of such consent by TRUSTEE/SECURED PARTY in one instance shall not constitute consent over the whole or any portion therefrom.

## Ambiguities and Interpretation

Each party acknowledges receipt of this agreement and has had the opportunity to have counsel and/or anyone they chose review it. Any rule of construction claiming ambiguities is to be resolved against the drafting party and shall not apply in the interpretation of this agreement or its amendments. All statements in this instrument are important to the parties. Misunderstandings have been resolved prior to execution.

## Authority to Represent

A signer of this agreement on behalf of a legal entity certifies that he/she has the authority to sign this agreement and that this transaction has been duly authorized by such entity.

## Gender

All references within this agreement to a specific gender include the other.

# SECURITY AGREEMENT
or jointly and in all venues and jurisdictions concurrently at the sole discretion and election of TRUSTEE/SECURED PARTY. The TRUST will bear all costs and liability to all actions.

## MISCELLANEOUS PROVISIONS
### Amendments
This agreement and the related documents established mutual assent and a meeting of the minds. No alteration of, set-off or amendment to this agreement shall be effective unless expressed in writing under voluntary, noticed, informed consent of the TRUSTEE/SECURED PARTY.

### Applicable Law.
The Contract and Security Agreement is the law, and the law is the Contract and Security Agreement. The guidelines for the laws of the Contract and this Security Agreement, is the mutual assent and agreement of the Parties, expressed by the Contract and Security Agreement. It was modeled after, created from, and is supported by Private International Law, in accord with the Laws of Nations, International and Domestic Laws, supported by the Administrative Procedures Act, the Civil Procedure

Act, and the Uniform Commercial Code as adopted by International and state legislation of all U.S. States, and unwritten by Common Law, Contract Law, Cannon Law, Constitutional Law, Merchant Law, Property and Estate Law, Statutory Law, Civil Law, Tort Law, Commercial Law, Trade Law, Judiciary Laws Securities Law and Legislative Law, Executive Law, and most other forms of law in almost all jurisdictions and venues. It conforms to almost all other ABC organizations and agencies including GAAT, UNCITRAL, UNIDROIT, and CIGS. Case Law, aka, stare decisis, supports this Contract and Security Agreement, but is not ever cited for good cause. Common Law is only superseded by Equity Law when the Common Law does not provide for remedy.

It is impossible, and always will be, to address all the "Policies", "Signing Statements", and/or other unknown, undisclosed trickery, lies, deceptions and forms of fraud, embezzlement, organized crime, and RICO actions, used to override law and justice in today's world

### Expenses
TRUST agrees to pay for all losses, costs, fees, time, taxes, expenses, and professional fees, incurred by TRUSTEE/SECURED PARTY to collect or enforce the provisions of this agreement

## STANDARD TERMS AND CONDITIONS
All of the STANDARD TERMS AND CONDITIONS as set forth in "ATTACHMENTS 'A' – DEFINITIONS" Document Item Number: 06021979-SDTA-AA apply hereto, plus all incidentals, some duplicated or left in the Security Agreement, for the purpose of convenience and/or comprehension. They shall not be considered in bad faith, unclean hands, misleading or nondisclosure as there is no intent of such by the TRUST or TRUSTEE/SECURED PARTY. Errors and Omissions are consistent with intent.

## Indebtedness
Debt is that which is owed; usually referencing assets owed. The word "indebtedness" means the debt evidenced by this Security Agreement, or a claim against TRUST, and all TRUST'S present and future possessions identified in this agreement as collateral; and all public obligations and debts ascribed to TRUST through contracts and agreements, whether expressed or implied, known or unknown, or actual or constructive. All claims made by TRUSTEE/SECURED PARTY against TRUST, whether existing now or in the future, whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or not, regardless of whether TRUST is or may be individually or jointly, obligated as, or beneficiary of, a surety or accommodation party are the collateral for the debt owed.

# SECURITY AGREEMENT

c. Any breach of any warranty or guarantees by TRUST contained in this Security Agreement.

d. Any breach, loss, damage, expense, fee, custom, duty, or injury to TRUSTEE/SECURED PARTY by virtue of the Private Contract, or included on PRICE LIST.

e. Failure to report any income or precedes accruing from any principles, interests, or transactions.

f. Evidence that a statement, warranty, guarantee or representation made or implied, at any time, in this or other Agreements by TRUST, is false, misleading, or incomplete in any material respect made or furnished.

Dissolution or termination of TRUST'S existence as a legal entity or the insolvency of TRUST, upon the appointment of a receiver, for all or any portion of TRUST'S property, an assignment for the benefit of inferior CREDITORS, or the commencement of proceedings under bankruptcy or insolvency laws by or against TRUST.

Commencement of foreclosure by any other CREDITOR against TRUST or the collateral, garnishments or other attachments from obligations or debts due to TRUST from all accounts receivable, and/or other funds due and payable to TRUST at any time;

Any violation of this agreement will constitute a penalty in accordance with and outlined in the "Legal Notice and Demand".

TRUSTEE/SECURED PARTY now holds all interests in any and all property belonging to, in possession, use or control of TRUST.

## Cure of Breach
If a breach under this agreement is curable through an account held by TRUST but managed by the UNITED STATES or one of its subdivisions, agents, officers, or affiliates, such breach may be cured by TRUST with express consent and voluntary agreement by TRUSTEE/SECURED PARTY; and upon advice by the Fiduciary that the breach has been cured and no event of breach will be acted upon. A breach under this agreement, initiated by third party intervention, will not be considered a breach if such intervention is challenged by TRUST, in a good faith effort to confirm or disprove the validity or reasonableness of the public claim which is the basis of the public CREDITOR'S proceeding; but TRUST must, in that event, deposit such surety with TRUSTEE/SECURED PARTY as is necessary to indemnify TRUSTEE/SECURED PARTY from loss.

## Acceleration
In the event of breach, TRUSTEE/SECURED PARTY may declare any/entire indebtedness immediately due and payable without notice.

## Liquidation of Collateral
In the event of breach, TRUSTEE/SECURED PARTY shall have full power to privately or publicly sell, lease, transfer, trade, rent, exchange, or otherwise deal with the collateral, products or proceeds, in his own name, in the name of TRUST or other nominee. All expenses related to the liquidation of collateral shall become a part of TRUST'S indebtedness. TRUSTEE/SECURED PARTY may, at his discretion, transfer part or all of the collateral to his/her own name or to the name of nominee for the protection of trust property and the heirs and assigns as beneficiaries.

## Rights and Remedies
TRUSTEE/SECURED PARTY holds all rights and remedies of a Secured CREDITOR under the provisions of the Uniform Commercial Code (UCC), as the UCC has been adopted in the state where part or all of the collateral is located or presumed to be located, or internationally as elected by TRUSTEE/SECURED PARTY. TRUSTEE/SECURED PARTY holds the right to proceed in Universal jurisdictions and venues, by self-help, or with or without a public court, tribunal, collection or enforcement agencies. Rights and remedies available to TRUSTEE/SECURED PARTY may be exercised singularly

# SECURITY AGREEMENT
Non-Negotiable Private Agreement

72. All telephone numbers, and contacts;
73. Any property not specifically listed, named, or specified by make, model, serial number, etc., is expressly herewith included as collateral of TRUST. This as it applies to any and all 'property' as described in detail and registered and filed under necessity in the exercise of the right of Redemption by TRUSTEE/SECURED PARTY and/or CREDITOR.
74. Proceeds from BENEFICIARY'S property, labor and intellectual contributions from every source;
75. TRUST'S CERTIFICATION OF BIRTH and including Application for Birth Certificate and File Number, and all other Certificates of Birth, Certificates of Living Birth, Notifications of Registration of Birth, or Certificates of Registration of Birth, or otherwise entitled documents of birth whether county, state, federal, or other either ascribed to or derived from the name of TRUST identified above, or based upon the above described birth document.
76. All Immigration and legalization papers
77. All Social Security BENEFITS
78. All Driver Licenses # driver license number
79. All UCC Filings and Number UCC File # plus all addendums
80. All property listed on Legal Notices and Demands that are filed in TRUST'S county, state, and nation.
81. All registration in county, state, national and international registries
NOTE: TRUSTEE/SECURED PARTY reserves the right to add or amend this private Security Agreement as needed or as necessary by TRUSTEE/SECURED PARTY or expressly authorized representative.
82. building materials and prefabricated buildings, and all components or materials pertaining thereto, before or during manufacture, transportation, storage, building, erection, or vacancy while awaiting occupancy thereof;
83. All construction machinery, equipment, supplies, resources, tools, vehicles and all ancillary equipment, supplies, materials, fuels, fuel additives, supplies, materials, and service equipment pertaining thereto;

## ADVISORY

All instruments and documents referenced/itemized above are accepted for value, with all related endorsements, front and back, in accordance with UCC § 3-419 and per intent of House Joint Resolution 192 of June 5, 1933. This Security Agreement is accepted for value, property of TRUSTEE/SECURED PARTY, and not dischargeable in bankruptcy court as TRUST is exempt from third-party levy. This Security Agreement supersedes all previous contracts or Security Agreements between TRUST and TRUSTEE/SECURED PARTY except for Contracts included.

TRUST agrees to notify all of TRUST'S former CREDITORS, future CREDITORS, and any possible purchasers of the herein-described Collateral status, of this Security Agreement.

This Security Agreement devolves on BENEFICIARIES and ASSIGNS, who take title to this Security Agreement, as TRUSTEE/SECURED PARTY to hold and enforce interests by CONSENSUAL AGREEMENT and Private Contract in deed and stead of BENEFICIARY.

TRUSTEE/SECURED PARTY maintains the right to sign for TRUST when and wherever the signature of TRUST will be required and necessary. TRUSTEE/SECURED PARTY signs for TRUST as 'agent' and/or 'AUTHORIZED REPRESENTATIVE' of TRUST. TRUSTEE/SECURED PARTY reserves the right to make sufficient claims to secure such indebtedness until satisfied in whole.

TRUSTEE/SECURED PARTY maintains all options and rights of transfer, and may issue an assignment of the complete Security Agreement or any division of parts therefrom. In the event of dishonor by TRUST, or difficulties in collection, TRUSTEE/SECURED PARTY has full authority and agreement to take all actions deemed necessary for acquisition of remedy and receivables by any means.

## BREACH OF CONTRACT

1.     Any of the following events will establish a breach:
   a. Failure by TRUST to pay TRUSTEE/SECURED PARTY any secured debts when due.
   b. Failure by TRUST to perform any secured obligations when required to be performed.

# SECURITY AGREEMENT

and records and records numbers, and the like;

46. All library cards and rights;
47. All credit, charge, and debit cards, mortgages, notes, applications, card numbers, and associated records and information;
48. All court cases and judgments, past, present, and future, in any court whatsoever, and all bonds, orders, warrants, and other matters attached thereto or derived there from;
49. All jewelry, heirlooms, precious metals, bullion, coins, precious jewels, semi-precious stones, mounts, and any storage boxes within which said items are stored;
50. All tax correspondence, filings, notices, coding, record numbers, and any information contained therein, wherever and however located, and no matter by whom said information was obtained, compiled, codified, recorded, stored, analyzed, processed, communicated, or utilized;
51. All lotteries, overpayments, prepayments, prizes, rebates, refunds, returns, Treasury Direct Accounts, claimed and unclaimed funds, and all records and records numbers, correspondence, and information pertaining thereto or derived there from;
52. All agricultural crops, includes herbs, cultivated plants, growing plants, inventory, ancillary equipment, supplies, propagation plants, and seeds, and all related storage facilities, greenhouses, products of and for and all equipment, inventories, tools, supplies, contracts, accoutrements involved in the planting, tilling, harvesting, processing, preservation, and storage of all products of agriculture;
53. All farm, lawn, and irrigation equipment, accessories, attachments, hand-tools, implements, service equipment, parts, and supplies, and storage sheds and contents;
54. All fuel, fuel tanks, containers, and involved or related delivery systems;
55. All leisure and professional hobby, metal-working, woodworking, and other such machinery, and all ancillary equipment, accessories, consumables, power tools, hand tools, inventories, storage cabinets, toolboxes, work benches, shops, and facilities;
56. All leisure and sporting, fishing, hunting, and camping equipment, and all special clothing, materials, supplies, boats, Jet Ski's, trailers, snowmobiles, ATV's equipment, RV's, camping equipment of any kind and baggage related thereto;
57. All rifles, guns and related accessories, ammunition and the integral components thereof;
58. All radios, televisions, communication equipment, receivers, transceivers, transmitters, antennas, and towers, and all ancillary equipment, supplies, computers, software programs, wiring, and related accoutrements and devices;
59. All power-generating and/or transforming machines or devices, and all storage, conditioning, control, distribution, wiring, and ancillary equipment pertaining or attached thereto;
60. All hot tubs, Jacuzzis, and pools;
61. All personal and professional construction tools, equipment and supplies including water wells and well-drilling equipment, and all ancillary equipment, chemicals, tools, and supplies;
62. All shipping, storing, and cargo containers, and all chassis, truck trailers, vans, and the contents thereof; whether on-site, in transit, or in storage anywhere;
63. All building and development plans, permits, licenses, bonds, and insurances.
64. All communications and data, and the methods, devices, and forms of information storage and retrieval, and the products of any such stored information;
65. All books, drawings, magazines, manuals, and reference materials regardless of physical form;
66. All artwork, paintings, etchings, photographic art, lithographs, and serigraphs, and all frames and mounts pertaining or affixed thereto;
67. All food, and all devices, tools, equipment, vehicles, machines, and related accoutrements involved in food preservation, preparation, growth, transport, and storage;
68. All wedding bands and rings, watches, wardrobe, and toiletries;
69. All household goods and appliances, linens, furniture, kitchen utensils, cutlery, tableware, cooking utensils, pottery, antiques;
70. All businesses, corporations, companies, trusts, partnerships, limited partnerships, organizations, proprietorships, and the like, now owned or hereafter acquired, and all books and records thereof and there from, all income there from, and all accessories, accounts, trash, equipment, information, inventory, money, spare parts, and computer software pertaining thereto;
71. All packages, parcels, envelopes, or labels of any kind whatsoever which are addressed to, or intended to be addressed to, TRUST, whether received or not received by TRUST;

# SECURITY AGREEMENT

and/or reproduction systems and peripherals, films, tapes, sound tracks, compact discs, phonographs, jukeboxes, records, film, cameras, projectors, and televisions for all uses;

21. All musical instruments;
22. All manuscripts, booklets, pamphlets, treatises, treatments, monographs, stories, written material, libraries, plays, screenplays, lyrics, songs, music;
23. All books and manuals;
24. All aliases, identities, D/B/A and nicknames;
25. All Trademarks, Registered Marks, copyrights, patents, proprietary data and technology, inventions, royalties, good will;
26. All credentials, scholastic degrees, diplomas, honors, awards, meritorious citations;
27. All records, diaries, journals, photographs, negatives, transparencies, images, video footage, film footage, drawings, sound records, audio tapes, video tapes, computer production or storage of all kinds whatsoever;
28. All live scans and corporal identification factors, including RNA, DNA, gene bank information, blood and blood fractions, biopsies, tissue, body parts, organs, hair, teeth, nails, semen, eggs, urine, fluids or matter, voice-print, retinal image, fingerprints, footprints, palm prints, thumbprints, and said factors' physical counterparts, in any form, and all records, BEAST numbers, record numbers, and information pertaining thereto and the descriptions therefrom;
29. All biometrics data, records, information, patents, copyrights, and trademark and processes not elsewhere described, the use and proceeds thereof; and the use of the information contained therein or pertaining thereto;
30. All Rights to obtain, use, request, or refuse or authorize the administration of, any food, beverage, nourishment, or water, or any substance to be infused, ingested, injected into, or affecting the body by any means whatsoever;
31. All Rights to request, refuse, or authorize the administration of; any drug, manipulation, material, process, procedure, ray, or wave which alters, or might alter the present or future state of the body, mind, spirit, or will by any means, method, or process whatsoever;
32. All keys, locks, lock combinations, encryption codes or keys, safes, secured places, and security devices, security programs, and any software, machinery, or devices related thereto;
33. All Rights to access and use utilities upon payment of the same unit costs as the comparable units of usage offered to most-favored customers, *inter alia*, cable, electricity, garbage, gas, internet, satellite, sewage, telephone, water, www, and all other methods of communication, energy transmission, and food water and/or sustenance distribution;
34. All Rights to barter, buy, contract, sell, or trade ideas, products, services, or work;
35. All suppliers, manufactures, shippers, consultants, resources, employees, professionals, contractors, subcontractors, mailing lists, data bases, and customers;
36. All Names, Nominees, DBAs and Corporate Soles used and/or executed, registered, claimed, assumed, presumed, and/or filed, and the right to be executed and filed, under said names;
37. All intellectual property, goods, and services;
38. All signatures, signs and seals;
39. All insurance policies including life, health care, unemployment, workman's compensation, malpractice, risk, disability, homeowner's, automobile, business, license, renter's, hazard, and those against losses, damages, injuries and the like professional and private.
40. All present and future retirement incomes;
41. All nest eggs and hidden money in antiques, old vehicles and the like;
42. All survivorship rights and benefits;
43. All inheritances prior, present and future;
44. All prepaid burial plots, funeral expenses and services;
45. All applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records and records numbers held by any entity, for any purpose, however acquired, as well as the analyses and uses thereof, and any use of any information and images contained therein, regardless of creator, method, location, process, or storage form, *inter alia*, all processed algorithms analyzing, classifying, comparing, compressing, displaying, identifying, processing, storing, or transmitting said applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations,

# SECURITY AGREEMENT

agreements, grants, acquisitions, assumptions, conveyors, utilities, transmitters, accounts receivable, write-offs, and set-offs.

- All collateral includes all assets including all gains, proceeds, equity, capital, accounts receivable, derivatives, depreciations, inventory, materials, products, goods, and services.
- All collateral includes agricultural assets including all livestock, chattels, and crops.
- All fixtures includes all attachments;
- All derivatives include all futures.
- All machinery, equipment, vessels, vehicles, crafts, and the like include all fixtures, accoutrements, baggage, and cargo affixed or pertaining thereto or stowed therein, _inter alia_: all motors, engines, ancillary equipment, accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants, and fuels and fuel additives;
- All collateral includes the transfer of all Rights to buy, sell, trade, grow, raise, gather, hunt, trap, angle, and store food, fiber, and raw materials for shelter, clothing, survival and commercial and/or personal gain;
- All collateral may be used for any purpose or use TRUSTEE/SECURED PARTY elects;
- All collateral includes to all income, principle, interest, benefits and gifts from every source;

TRUSTEE/SECURED PARTY herein claims all collateral and rights of TRUST(s) attached to:

1. All assets, including accounts, principle, interest, capital, proceeds, products, inventory, accounts, cases, papers, documents, contracts, receipts, fixtures, derivatives and proof of Owner's Equity;
2. All rents, leases, sales, salaries, wages, gains, and income;
3. All land, water, mineral, and air rights including rights;
   a. All land includes, residential, commercial, agricultural, forestry, parks and recreation, waterfront and beach, islands, atolls, and mining claims, leased, rented, or owned, developed and undeveloped;
   b. All water includes all alluvial flow, lakes, rivers, oceans, aquifers, levies, banks, shores, streams, creeks, springs, ponds, reservoirs, contributories, beds, bars, deltas, swaps, pools, wells, irrigation, rain, snow, runoff, condensation, catches, basins, ditches, and troughs;
   c. All mineral rights include all minerals, metals, and mining and extraction right;
   d. All air rights include the air itself and the space it exists in, plus all rights of marketing and extraction;
4. All accounts, bank and otherwise, including "safety deposit" boxes and the contents therein, credit card accounts, mutual fund, money markets, investment, portfolios, trust accounts, certificates of deposit, checking, savings, retirement plans, deposits, escrow, mortgage, college fund, stocks, bonds, securities, certificates on deposit, bonds, vacation, time share, certificates of deposit, drafts, futures, notes, options, puts, calls, pension plans, warrants, 401-K's, and the like;
5. All cash, coins, money, Federal Reserve Notes, and Silver Certificates;
6. All benefits from all tertiary or subsequent trust account;
7. All inventory and raw materials;
8. All machinery;
9. All equipment;
10. All vessels, including all boats, yachts, ships, and water craft;
11. All vehicles including autos, trucks, four-wheel vehicles, trailers, wagons, motorcycles, bicycles, tricycles, wheeled conveyances;
12. All crafts;
13. All aircraft, including gliders, balloons;
14. All motor homes, trailers, mobile homes, recreational vehicles, house, cargo, and travel trailers;
15. All fixtures, accoutrements, baggage, and cargo;
16. All agricultural assets including livestock, chattels, food, supplies, seeds, plants, chemicals, crops;
17. All computers, computer-related equipment and accessories, stored files and data and peripherals for all uses;
18. All office equipment including communications equipment, computers, printers, scanners, office copiers and office machines;
19. All electronics and equipment, including hobby, computers, printers, recreational and business applications and uses;
20. All aural/audio and/or video capturing, production, video recorders, cam recorders, voice recorders

# SECURITY AGREEMENT
Non-Negotiable Private Agreement
## INDEMNITY CLAUSE

TRUST, without the benefit of discussion or division, does hereby agree, covenant, and undertake to indemnify, defend, and hold TRUSTEE/SECURED PARTY harmless from and against all claims, losses, liabilities, costs, interests, and expenses, hereinafter referred to as "Claims" or "Claim". Claims include, without restriction, all legal costs, interests, penalties, fees and fines suffered or incurred by TRUST, in accordance with TRUSTEE/SECURED PARTY'S personal guarantee with respect to any loan or indebtedness of TRUST or collateral, including any amount TRUST might be deemed to owe to any CREDITOR for any reason whatsoever.

## OBLIGATIONS SECURED

The security interest granted herein secures all indebtedness and liability whatsoever of TRUST to TRUSTEE/SECURED PARTY, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and however evidenced.

## COLLATERAL

The collateral to which this Security Agreement pertains to, inter alia, is herein described below as personal and real property of TRUST. The collateral is now owned or possessed, and includes property hereafter acquired, by TRUST, in which TRUSTEE/SECURED PARTY now holds all security interests. TRUSTEE/SECURED PARTY retains all rights of use, including but not limited to, all principle, interests, proceeds, products, accounts, fixtures, and the Orders there from. All claims of TRUST are security interests released to TRUSTEE/SECURED PARTY for management thereof.

Before any of the herein itemized property can be disbursed, exchanged, sold, tendered, forfeited, gifted, transferred, surrendered, conveyed, destroyed, disposed of, or otherwise removed from TRUST'S possession, settlement with TRUSTEE/SECURED PARTY must be satisfied in full and acknowledgment of the same completed to the satisfaction of TRUSTEE/SECURED PARTY.

## COLLATERAL CLARIFICATIONS

- All collateral includes all contracts include all attachments, fixtures, agreements, addendums, derivatives, proceeds, products, goods, and services.
- All collateral includes all assets and equity.
- All collateral includes: institutional, industrial, manufacturing, educational, agricultural, social, and cultural and purposes and uses;
- All collateral includes all structures and fixtures above and below ground including: cottages, cabins, houses, barns, sheds, warehouses, greenhouses, penitentiaries, stores, markets, facilities, stations, fences, corrals, docks, arenas, theaters, halls, clubhouses, offices, chambers, and buildings for any use or purpose;
- All collateral includes all infrastructure including all roads, driveways, sewers, plumbing, electricity, communications, networks, plants, facilities, septic, sanitation, irrigation, drainage, walkways, paths, tunnels, chambers, power and energy sources, and waste management for all uses and purposes;
- All collateral includes all property developed and undeveloped.
- All collateral includes all receipts and proof of purchase, registrations, products, goods, services, and proof of clear title and ownership.
- All collateral includes crops, the host that the crops are harvested from and all harvested and un-harvested crops.
- All collateral includes materials processed, unprocessed, and raw materials and everything in between.
- All collateral includes all inventory harvested, un-harvested, pasteurized, unpasteurized, raw, unprocessed, processed, and produced and everything in between.
- All collateral includes inventory, products, goods and services;
- All collateral includes potential.
- All collateral accounts include all assets and rights, for all purposes and uses, from accounts, fixtures, cases, liens, levies, instruments, documents, contracts, bonds, stock, certificates,

# SECURITY AGREEMENT
Non-Negotiable Private Agreement
## PARTIES:

Party of the First Part: SESON DEON TELEO ADAMS" the COPYHOLD TRUST/Estate/Bailor also under any and all derivatives and variations in the spelling thereof, with the exception of "Seson-Deon Teleo: Adams". Under account No. 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 or EIN No.:82-2391236, with all property Lawfully part of the TRUST held as a foreign Trust Estate 28 U.S.C. 1603(b)(3); 8 U.S.C. 1101(a)(14); 26 U.S.C. 7701(a)(31).

Party of the Second Part: "Seson-Deon Teleo: Adams" (as "Trustee/Secured Party/Bailee") a Live Natural Man a flesh- and-blood Almighty God-created private Christian American sui juris sentient being; and an Ambassador of God Almighty (2nd Corinthians 5:20) Domiciled in New York State Republic and on religious sojourn through the UNITED STATES; One, who is as a "Non-resident alien" as defined within 26 U.S.C. 7701(b)(1)(B)], [ ]sic, in regards the UNITED STATES [28 U.S.C. 3002(15)(A); U.C.C. 9-307(h)] with express, explicit, irrevocable reservation of all natural God-given & unalienable Rights; including but not limited by F.S.I.A. without prejudice U.C.C. 1-207;
U.C.C. 1-308, U.C.C. 1-103.6 (Anderson's UCC) reserved ab initio, nunc pro tunc:

Beneficiaries: named in ADDENDUM TO MINUTES OF INITIAL MEETING OF TRUST, in which the trust is to the ultimate benefit for. Interest and use hereinafter held in trust and administered as trustee by: Seson-Deon Teleo: Adams; hereinafter: real party authorized representative of the SESON DEON TELEO ADAMS ° TRUST/Estate.

## CAUSE:

This Security Agreement is made and entered into by and between TRUST and TRUSTEE/Secured Party Creditor respectively.

PERFORMANCE SECURITY  
PAYMENT SECURITY  
NEGOTIABLE DRAFT  

RECEIVABLE SECURITY  
NEGOTIABLE SECURITY  
SECURED BY COLLATERAL  

If any part or portion of this Security Agreement is found to be invalid or unenforceable, such part or portion shall not void any other part or portion as reasonably severable from said parts or portions, and does not affect the remaindered of the agreements.

## AGREEMENT

IN CONSIDERATION, TRUST grants all interests to Secured party in exchange for Secured Party, acting to manage, protect and defend all interests of TRUST, to create additional value, and to manage in the personal capacity to transmit business in the private or public capacity as necessary.

The collateral is described herein:
- All Schedules.
- All filings.
- All accounts.
- All fixtures.
- All derivatives.
- All registries.
- All certifications.
- All licenses.
- All bonds.
- All charters
- All treaties.
- All obligations due.
- All duties charged.
- All Articles of Incorporation.
- All Oaths.

- All applications.
- All acceptances.
- All insurances.
- All intellect.
- All beneficial interests including mutual funds, retirement funds, severance pay, college education funds, pension funds, well fare, charity, food stamps, Social Security.
- All UCC filings, in the nominee of BENEFICIARY as CREDITOR and all property referred as 'collateral' or 'surety'.
- All UCC filings in the nominee TRUST herein, as CREDITOR and all property referred as 'collateral' or 'surety'.

# SCHEDULE "A"
### List of Additional Property, Documents & Assets Belonging to
### SESON DEON TELEO   ADAMS. Trust

1. Private Security agreement under Item No. 060219798604-SDTA-SA and all other documents referenced therein creating a collateral security interest and listing general allocable property. Additional Specific property listed as follows:

2. Birth Certificate PA State File# 072936-1979 County of Philadelphia

3. New York State UCC File #202404218204763

4. 060219798604-SDTA- Hold Harmless Indemnity Agreement

5. 060219798604-SDTA-W8BEN AFFIDAVIT

6. 060219798604-SDTA-F56-PR

7. 060219798604-SDTA-OFD ORDER FOR DEPOSIT MANAGEMENT & INVESTMENT

8. 060219798604-SDTA-AA DEFINITIONS

9. 060219798604-SDTA-LND LEGAL NOTICE AND DEMAND

10. 060219798604-SDTA-PSQLND

11. 060219798604-SDTA-NOR-ECCM

12. AFFIDAVIT NOTICE OF LIABILITY REGARDING TRESPASS FEE SCHEDULE AND REMEDY

13. TRANSAMERICA LIFE INSURANCE POLICY CERTIFICATE No.: 444052309

14. NYS ENHANCED DRIVERS LICENSE 450 879 971

15. 2355 West Turner Street Private Life Estate Doc Id: 53086236,

# Continuation from "16. Additional Collateral Description"
## #06219798604-SDTA-CAD

1. All Comprehensive Annual Financial Reports. All Comprehensive Revenues. All Fiscal and Calendar Accounts, Proceeds, Products, Fixtures, Service of:
   a. All Organic Codification National and Regional Constitutional Trust, Indenture Organizations and Their Political Subdivisions;
   b. All Organic Uncodification National and Regional Constitutional Trust Indentures Organizations And their Political Subdivisions;
   c. All Religious government Trust Indentures Organizations and their Ecclesiastical Provinces, Metropolitans.

2. All Sworn Oaths, All Sworn Affirmations, All Sworn Insurance Providers for All Agents, Employees, And Officers of the above list of Organizations.

3. All Annual Financial Reports, All Comprehensive Net Revenues, All Fiscal and Calendar Accounts, Proceeds, Products, Fixtures, and Service of all Adverse, Belligerent, and/or Combatant Participant Non Political Entities such as a Corporation(s), and voluntary Associations, whether Incorporated or Not, whether by, Licenses, Registrations, Records, Permits, or Certification;
   a. All Adverse, Belligerent, and/or Combatant Participants, Non-Political Entities Licenses, Registrations, Records, Permits, Memorandums, and ARTICLES OF ASSOCIATIONS.

4. Entire List of Securities is in the Individual Organization's Public Record; Registrations, Library Catalogs, and other data depositories and Repositories.

Collateral Security list shall hold the Trustee/Secured Party as Priority, Primary, and/or True Legal and Lawful filer as Trustee/Secured Party as Evidence in Fact by Secretary of State according to him/her authority grants truth by his/her witness to this Security List:

Secretary Of State Recording Number: **202404218204763**
Washington D.C. Secretary of Treasury by Certified Mail No.: **7012 1640 0002 3782 1853**
Puerto Rico, Secretary of Treasury by Certified Mail No. **7022 1670 0002 3465 7088**
Enterprise Computing Center, by Certified Mail No. **7021 0950 0001 5335 9862**
**U.S. Secretary** Notification of record, by **Registered** Mail No. **RF444 7692 09 US**

Collateral Security List herein is with acceptance and return for full legal and lawful Exchange all value is Legally and Lawfully Exempt from Levy. UCC-1 Collateral Statement for SESON DEON DELEO ADAMS' Trust

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME
**SESON DEON TELEO ADAMS TRUST**

OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME SUFFIX

10. MISCELLANEOUS:

fictional entity including fictional Federal geometric plane(s). Trespass by any agent(s) foreign or domestic, by such in any scheme or artifice to defraud. Full reverence and by ALL AGENTS and Corporations is unambiguously demanded and required. Culpa est immiscere se rel ad se non pertienti. All property currently held are outstanding belongs to the Trust administered by Trustee/Secured Party, Title 46 USC 31343 and Article 1 and 5 of the International Convention on Maritime Liens and Mortgages 1993, Held at the Palis Des Nations. Geneva. From April 19 to May 5.1992 United Nations (UN). This Maritime Lien is under safe harbor and sinking

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing

14. Description of real estate:

16. Additional collateral description:
funds provisions through the prescription of Law of Necessity and the doctrines of unconscionably and La Mort Saisit Le Vif in accordance with Applicable Law, Cardinal Orders. Ordinal Orders. and Commercial Standards. Continued on 060219798604-SDTA-CAD)

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☑ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☑ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

International Association of Commercial Administrators (IACA)

0419002　　　2024 April 21 PM06:39

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Seson-Deon Teleo: Adams
c/o 818 Bullock Ave
Lansdowne, Pennsylvania [ 19050]
Non-Domestic / Non-Assumpsit

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

SESON DEON TELEO ADAMS TRUST

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 108 W 141ST STREET APT 3G | NEW YORK | NY | 10030 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| XXX-XX-8604 | | TRUST | PRIVATE | 072936-1979 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

SESON DEON TELEO ADAMS; NON-ADVERSE; NON-BELLIGERENT; NON-COMBATANT PRIVATE FOUNDATION

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 108 W 141ST STREET APT 3G | NEW YORK | NY | 10030 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | TRUST | PRIVATE | 072936-1979 | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Adams | Seson-Deon Teleo: | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o 818 Bullock Ave | Lansdowne | PA | [ 19050 ] | USA |

4. This FINANCING STATEMENT covers the following collateral:

This is the entry of collateral by Trustee/Secured Party on behalf of the Trust/Estate: SESON DEON TELEO ADAMS TRUST in the Commercial Chamber under necessity to secure the rights, title(s), interest and value therefrom, in and of the Root of Title from inception, as well as all property held in trust including but not limited to DNA, cDNA, cell lines, retina scans, fingerprints and all Debentures, Indentures, Accounts, and all the Pledges represented by same included but not limited to the pignus, hypotheca, hereditments, res, the energy and all products derived therefrom nunc pro tunc, contracts, agreements, and signatures and/or endorsements, facsimiles, printed, typed or photocopied of owner's name predicated on the 'Straw-man,' Ens legis/Trust/Estate described as the debtor and all property is accepted for value and is Exempt from levy. Lien places on debtor entities is for all outstanding property still owed but not yet returned to trust from entities such as municipalities, governments and the like , not on trust entity itself. Trustee is not surety to any account by explicit reservation/indemnification. The following property is hereby registered and liened in the same: All Certificates of Birth Document 072936-1979, SSN/UCC Contract Trust Account-prepaid account Number: 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: Exemption Identification Number: 181608604, is herein liened and claimed at a sum certain $100,000,000.00, also registered: Driver License 450879971, Security Agreement No. 060619798604-SDTA-SA, Power of Attorney No. 060619798604-SDTA-POA, Hold Harmless & Indemnity Agreement No. 060619798604-SDTA-HHIA, Copyright under item no.: 060619798604-SDTA-CLC Adjustment of this filing is in accord with both public policy and the national Uniform Commercial Code. Trustee/Secured Party, Seson-Deon Teleo: Adams, is living flesh and blood sojourning upon the soil of the land known as Pennsylvania living in New York, and not within fictional boundaries, territories nor jurisdiction of any

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☑ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable)　　7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]　☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

Date: 04/21/2024　　　Signature: 12 USC Sec 411 © Seson Deon Teleo Adams

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV 05/22/02)　International Association of Commercial Administrators (IACA)

File Number-202404218204763

THE CITY OF NEW YORK
OFFICE OF THE CITY CLERK

2645954

# Certificate of Marriage Officiant Registration

SESON DEON TELEO ADAMS

108 W 141ST ST Apartment # 3G, NEW YORK, NY 10030

## Was Registered

September 25, 2019

by the City Clerk to perform marriages in the City of New York, pursuant to Section 11-B of the Domestic Relations Law.

Michael M. McSweeney

# DECLARATION OF THE ESTABLISHMENT OF A FREE CHURCH

## I. PURPOSE

The purpose of this document is to establish a free church for the purpose of worshipping, serving, loving, and glorifying God as our Law giver, judge, and King, pursuant to the following;

*"For God is the King of all the Earth; Sings praises with understanding."* [Psalm 47:7, Bible, NKJV]
*"For the lord is our Judge, the lord is our law giver, the lord is our King; He will save [and protect] us."*
*[Isaiah 33:22 Bible, NKJV]*

We hold these truths self-evident, that we may establish said church and record the documents which establish it within any place where its buildings and officers may be found and yet not seek any form of government enumeration, registration, or recognition. We also hold it self-evident that any efforts to force registration, enumeration, or recognition from the government of said entity within the jurisdiction of any government law shall render said Church no longer a Church whose sole head is God, but instead a church that is serving two masters in violation of our principles:

*"You shall have no other God [including governments or earthly laws] before me [or my commandments]"[Exodus 20:3, Bible, NKJV]*
*"Do not walk in the statues of your fathers, nor observe their judgments, nor defile yourselves with their idols. I am the lord your God: Walk in my statutes, keep my judgments, and do them: hallow my sabbath, and they will be a sign between me and you, that you may know that I am the lord your God."*
*[Ezekiel 20:10-20, Bible, NKJV]*

The association and church established by the sovereign authority of God's holy laws, which is a covenant, a contract, and a trust indenture that makes all those believers who are party to into stewards, trustee, and fiduciaries of the heavenly father.

*"And we have known and believed the love that Gods has for us. God is love, and he who abides in love (obedience to Gods Laws) abides in God and God in him"*
*[1 John 4:16, Bible, NKJV]*
*"Now by this we know that we know Him [God], if we keep his commandments. He who says, "I know Him" and does not keep His commandments, is a liar, and the truth is not in him. But whoever keeps His word, truly the love of God is perfected in him. By this we know that we are in him. He who says he abides in Him ought himself also to walk just as he walked."*
**[1 John 2:2-6, Bible NKJV]**
*"It is not for you to know times or seasons which the father has put in his own authority. But you shall receive power when the holy spirit has come upon you; and you shall be witnesses to me in Jerusalem, and in all Judea and Samaria, and to the end of the earth."*
[Acts 1:7-8, Bible, NKJV]

I Minister Seson Deon Teleo of the Family of Adams a citizen of heaven and a non-citizen national temporarily present within the Republic of New York, upon land within the exclusive jurisdiction of the State; the undersigned spiritual believer, on this **2nd** day of **June** in the year of our lord 2019, desiring to form a congregation of the Church under the sovereignty and Government of God the Highest of all and the final authority, hereby declare our establishment according to the following articles of formation.

## 2. CHURCH NAME

This church congregation's name is SESON DEON TELEO     ADAMS, A Free Church, Predestined by God and established in Heaven to minister on Earth; hereafter referred to as SESON DEON TELEO     ADAMS.

## 3. DEFINITIONS

**Church and Congregation:** The word "Church" in this document and other Governing Documents is defined as it is used in the Bible and also as defined at law, below, to designate the body of God, which is the diverse body of all believers doing the work of God throughout the world.

**Church:** a body or organization of religious believers:

**Congregation:** The word 'congregation' as used in this document and is used synonymously to designate an assembly of two or more believers who follow the teachings of God.

*"Again, I say to you that if two of you agree on earth concerning anything that they ask, it will be done for them by My Father [God] in heaven. For where two or three are gathered together in My name [God], I am there in the midst of them."*
**[Matthew 18:19-21, Bible, NKJV]**

## 4. Legal Status of Church Formed

A. Church is an "Establishment of Religion" in terms of the constitution of the United States of America. Therefore, SESON DEON TELEO     ADAMS and all of the members individually shall have legal status described below:

1. We are fiduciaries [Children] of God, who is a "nontaxpayer", and therefore we ae "nontaxpayers". Our legal status takes on the character of God, who is sovereign, and who we represent. Therefore, we become "foreign diplomats".
*"God the Sovereign Savior"*
**[Psalm 18:1, Bible, NKJV]**
*"The Sovereignty of the Lord in Creation and History"*
**[Psalm 33:1, Bible, NKJV]**

2. The laws which apply to all civil litigation relating to us are from the domicile of the heavenly sovereign we represent, which are the also pursuant to:

a) **Federal Rule of Civil Procedure 17(b)**

Declaration of the Establishment of a Free Church

Capacity to Sue or Be Sued. Capacity to sue or be sued is determined as follows:

(1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

(2) for a corporation, by the law under which is was organized; and

(3) for all other parties, by the law of the state where the court is located, except that:

(A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and

(B) 28 U.S.C. §§754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

**b)  Federal Rule of Civil Procedure 44.1**
Rule 44.1 – Determining Foreign Law

A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

3.  Our "domicile" is the Kingdom of God on Earth, and not within the jurisdiction of any man-made government. We can have a domicile on earth and yet not be in the jurisdiction of any government because God, and not man, owns the whole earth and all of creation. We are therefore "transient foreigners" and "stateless persons" in respect to ever man-made government on earth.

4.  We are "nationals" but not "citizens" under federal law. The reason this must be so is that a "citizens of the United States" [who are all born in and resident within exclusive federal jurisdiction under 8 U.S.C. §1401] may not be classified as an instrumentality of a foreign state under 28 U.S.C. §1332(c) and (d) and 28 U.S.C. §1603(b).

5.  We are not and cannot be "residents" of any earthly jurisdiction without having a conflict of interest and violating the first four Commandments of the Ten Commandments found in Exodus 20. Heaven is our exclusive legal "domicile", and our "permanent place of abode", and the source of ALL of our permanent protection and security. We cannot and should not rely upon man's vain earthly laws as an idolatrous substitute for Gods laws found in the. Instead, only God's laws and the Common law, which is derived from God's law, are suitable protection for our God-given rights.

*And God spoke all these words, saying: "I am the Lord your God, who brought you out of the land*

Declaration of the Establishment of a Free Church

*of Egypt, out of the house of bondage. "You shall have no other gods before me [ruler or Government]. "You shall not make for yourself a varved image – any likeness of anything that is in heaven above, or that is in the earth beneath, or that is in the water under the earth;* [Exodus 20:1-4, Bible, NKJV]

6. We are "Foreign Ambassadors" and "Minsters of a Foreign State" called heaven. The U.S. Supreme Court said in U.S. v. Wong Kim Ark below that "ministers of a foreign state" may not be statutory "citizens of the United States".

7. Our dwelling is a "Foreign Embassy" and not a "residence", because only "residents" can have a "residence".

8. We are protected from federal government persecution by 18 U.S.C. §112 and the Foreign Sovereign Immunities Act of 1976. We are a "stateless person" within the meaning of 28 U.S.C. §1332(a) immune from the jurisdiction of the federal courts, which are all Article IV, legislative, territorial courts. We are "stateless" because we do not maintain a domicile Within the "state" defined in 28 U.S.C. §1332(d), which is a federal territory and excludes states of the Union.

**Any other status imputed or assumed by the government other than "foreign" and "sovereign" amounts to "compelled association" in violation of the US Constitution's First Amendment.** We must surrender our sovereignty to God and become his fiduciaries in order to be granted sovereignty over our government and our own affairs, because ALL SOVEREIGNTY ultimately comes from God.

Church Is an 'Establishment of Religion' in terms of the Constitution of the United State of America, "AMENDMENT 1 – Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (US. Constitution, Amendment 1]

## 5. CHURCH IS A FREE CHURCH

- A free church is a church that is intrinsically separated from any government (as opposed to a theocracy, or an "established" or state church).
- A free church does not define government policy, nor have governments define church policy or theology, nor seeks or receives government endorsement or funding for its general mission.
- This is historically what the Christian church was before Emperor Constantine, and did not appear again until the Protestant Reformation.
- This Church shall not seek nor accept government registration under I.R.C. §501(c)(3). If necessary be recognized as a 26 U.S.C. Section 6033 section (3) (a)(i)
- Any real estate held by the Church shall be held in a trust using a foreign trust.
- Proverbs 4:20-22

  My son, be attentive to my words; incline your ear to my sayings.

  Let them not escape from your sight; keep them within your heart.

  For they are life to those who find them, and Healing to all their flesh.

- Universal Life Church, Inc. vs. United States, 372 F. Supp. 770, 776 (E.D. Cal 1974)

  "...neither this court nor any branch of this government will consider the merits or fallacies of a religion. Nor will the court compare the beliefs, dogmas, and practices of a newly organized religion with those of an older, more established religion. Nor will the court praise or condemn a religion, however excellent or fanatical or preposterous it may seem. Were the court to do so, it would impinge upon the guarantee of the First Amendment."
  [and create a state Church]

## 6. NON-SECTARIAN AND NON-DENOMINATIONAL

The SESON DEON TELEO ADAMS name was chosen as a name of reference only - not to create a sect or denomination in any way. SESON DEON TELEO ADAMS is not affiliated with any religious party or denomination. The church is private, not public, though all are invited to attend the congregation's meetings for their stated purposes. One does not need to be part of the SESON DEON TELEO ADAMS to attend the SESON DEON TELEO ADAMS. The term 'Christian Church' is used to describe the teachings and practices of the SESON DEON TELEO ADAMS are based upon the Christian Faith and doctrines as found in the Bible. SESON DEON TELEO ADAMS does not have any organizational ties with other 'Christian Church' groups, but recognizes that, spiritually, all believers are part of the one Church that belongs to Christ (Rom 16:16) and God (Acts 20:28; 1 Cor. 1:2; 10:3; 11:16; 15:9; 2 Cor. 1:1; Gal. 1:13; 1 Thes. 2:14; 2 Thes. 1:4; 1 Tim. 3:5). The Bible teaches that a church will not be judged by it's name, but by it's works (Rev. 2-3).

## 7. MEMBERS

The signer(s) of this document is/are the initial covenant member(s) of SESON DEON TELEO ADAMS. Member(s) may primarily be added or removed in accordance with the governing document and their covenants.

## 8. GOVERNING DOCUMENTS

The primary Governing Document of SESON DEON TELEO ADAMS is the Holy Bible. Additional Governing Documents are required to cover issues not specifically answered in the Bible and to establish principles and methods specific to SESON DEON TELEO ADAMS. These additional Governing Documents of SESON DEON TELEO ADAMS are maintained by the SESON DEON TELEO ADAMS Scribe.

## 9. SCOPE OF POWERS

SESON DEON TELEO ADAMS Church, deriving its power from the Almighty Creator God and acting through its members in accordance with its governing documents, is authorized to conduct Church functions it determines to be necessary. Such activities may include, but are not limited to: Conducting Church Services and other worship activities; establishing a witness to the local neighbors and all who come to visit; educating people in spiritual basics; preparing them for Federation in their marriage, family, church, community, government; helping and teaching the brethren to the fruitful individuals in spite of personal difficulties and limitations; serving as a repository of spiritual study literature and disseminate it as God makes it possible; writing the experiences of the community in word, song or other media, to be an inspiration and an encouragement to others for similar communities and local church congregations; opening financial accounts such as bank accounts, brokerage accounts or other investment accounts; the purchase, lease or rental of congregational

meeting facilities and work facilities for ministries; the purchase, lease or rental of necessary equipment, musical instruments, vehicles, supplies, implements or tools, and any and all other forms of property, both real and personal; the care, remuneration and/or compensation of those laboring in church service; the distribution of tangible and intangible gifts or benevolent charities; as well as any other necessary and appropriate financial transactions of SESON DEON TELEO ADAMS, acting through its governing body, for the initiation, promotion, expansion and continuation of its activities.

## 10. Authorization

The written organization and operation of SESON DEON TELEO ADAMS is hereby petitioned for and authorized by us, the members by our own signature(s) hereunto:

*Seson Deon Teleo; Adams*
Minister Seson Deon Teleo Adams, Overseer  EIN 98-6086324
All Rights Reserved  18 U.S.C. Sec. 112 (a)
Without Prejudice, 12 U.S.C. Sec.411

STATE OF __New York__

COUNTY OF __New York__

On __June 02, 2023__ before me, __Ivy Soto__, personally appeared Seson Deon Teleo Adams, who proved to me on this basis of satisfactory evidence to be the person(s) whose name(s) is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity(ies), and that by his signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of New York that the foregoing paragraph is true and correct.

Witness my hand and Office Seal:

Signature of Notary Public: _____

IVY SOTO
Commissioner of Deeds, City of New York
No. 1-7061
Cert. Filed in New York County
Commission Expires May 1, 20__

Declaration of the Establishment of a Free Church

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI   OH   45999-0023

Date of this notice:   05-22-2012

Employer Identification Number:
45-6947089

Form:   SS-4

Number of this notice:   CP 575 B

SESON DEON TELEO ADAMS-TRUST
SESON DEON TELEO ADAMS-ALI TTEE
530 MANHATTAN AVE APT 59
NEW YORK, NY   10027

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.


WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

        Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 45-6947089.   This EIN will identify your estate or trust.  If you are not the
applicant, please contact the individual who is handling the estate or trust for you.
Please keep this notice in your permanent records.

        When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.   If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

        Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

                 Form 1041                      05/15/2013

        If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
Accounting Periods and Methods.

        We assigned you a tax classification based on information obtained from you or your
representative.   It is not a legal determination of your tax classification, and is not
binding on the IRS.   If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).   Note:
Certain tax classification elections can be requested by filing Form 8832, Entity
Classification Election.   See Form 8832 and its instructions for additional information.

        To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

(IRS USE ONLY)    575B                05-22-2012  SESO  B  9999999999  SS-4

IMPORTANT REMINDERS:

* Keep a copy of this notice in your permanent records. This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice. If you write, please tear off the stub at the bottom of this notice and send it along with your letter. If you do not need to write us, do not complete and return the stub. Thank you for your cooperation.

Keep this part for your records.          CP 575 B (Rev. 7-2007)

-------------------------------------------------------------------------------

Return this part with any correspondence so we may identify your account. Please correct any errors in your name or address.

CP 575 B

9999999999

Your Telephone Number  Best Time to Call    DATE OF THIS NOTICE:  05-22-2012
(    )        -                              EMPLOYER IDENTIFICATION NUMBER:  45-6947089
                                             FORM:  SS-4                NOBOD

INTERNAL REVENUE SERVICE                     SESON DEON TELEO ADAMS-TRUST
CINCINNATI  OH   45999-0023                  SESON DEON TELEO ADAMS-ALI TTEE
|ı|ıı|ı|ı|ı|ı|ıı|ı|ıı|ı|ı|ıı|ıı|ıını|ı|ıı|ı|ı|ıı|              530 MANHATTAN AVE APT 59
                                             NEW YORK, NY  10027

# Private Life Estate Deed

THIS INDENTURE, Made this 8th day of July in the year of our lord two thousand and sixteen (2016)

BETWEEN

Seson Adams (Hereinafter called the Grantor) 2355 West Turner Street Philadelphia, PA 19121, Lex loci Domicilii of the first party and

Seson Deon Teleo Adams-Ali d.b.a. SESON DEON TELEO ADAMS-Estate/Trust (Hereinafter Grantee) 108 West 141st Street Apt. 3G New York, NY 10030, Lex loci Domicilii of the other part,

WITNESSETH, That the said Grantor, for and in valuable consideration of the sum of TWENTY TWO (22) one ounce silver dollar coins of lawful money of the United States of America paid by the Grantee, unto it well and truly by the said Grantee, at or before the sealing an delivery thereof, the receipt whereof is hereby acknowledged, does grant, sell and convey unto the said Grantee, and to its heirs, successors and assigns forever. All the rights, title(s), interest, Bond(s), claim(s) or demand(s) that the Grantor may have nunc pro tunc in the following described real, and chattel property:

ALL THIS CERTAIN PROPERTY: 2355 West Turner Street Philadelphia, Pennsylvania 19121, UNITED STATES CITIZEN Pennsylvania Certificate of Birth File Number 072936-1979 file date June 08,1979, U.S. Department of State Full Faith and Credit Number 16032860-5, and all derivative accounts with said property name, lot or piece of ground. Properties with buildings and improvements thereon erected.

Legal Description: Property is described as; Pennsylvania Certificate of Birth File Number 072936-1979 file date June 08, 1979, including the Common Law description of said property, and homestead allodial land title, charter, etc. all derivative accounts with said property name. Document ID# 50421127 including the Common Law description of said property having land fixed upon latitude 39.979960 longitude -75.174145, and homestead allodial land title, charter, etc. All that certain lot or piece of ground with the buildings and improvements thereon erected. Situated on the northwest corner of Turner Street and Twenty-Fourth Street in the Twenty-ninth Ward of the City of Philadelphia, fixed upon Aboriginal Indigenous Native American land under the laws of Rights of Indigenous People, containing in the front or breadth on the said Turner Street fifteen feet eight inches and extending of that width in length or depth Northward along the East side of said Twenty-fourth Street fifty-nine feet to a certain four foot wide alley extending from the said Twenty-Fourth Street to Twenty-Third Street. Bounded Eastward by now or late J. Clifford Scoch, West Ward by said Twenty-fourth street, Northward by said four feet wide alley and southward by Turner Street aforesaid.

Seson Adams also being known as SESON DEON TELEO ADAMS Pennsylvania Certificate of Birth File Number 072936-1979 file date June 08, 1979; 2355 West Turner Street.

Being the same first born son of ELLAMEADS COLE and RONALD ADAMS;

Being the same premises which Edwin O Lewis, Trustee for Jean W. Lewis, Leroy M. Lewis Jr., and Mayone Lewis Elky, late minors, by Deed Book D.W.H. No. 1057 page 169&c., granted and conveyed unto the said Edwin o. Lewis and his heirs and assigns.

This Document Recorded      Doc Id: 53086236  Doc Code: D
07/18/2016  09:44 AM    Receipt #:16-69900
Rec Fee: $252.00  State RTT: $0.00  Local RTT: $0.00
Records Department, City of Philadelphia      MB

(IRS USE ONLY)     575B                05-22-2012   SESO   B   9999999999   SS-4

IMPORTANT REMINDERS:

* Keep a copy of this notice in your permanent records. This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice. If you write, please tear off the stub at the bottom of this notice and send it along with your letter. If you do not need to write us, do not complete and return the stub. Thank you for your cooperation.

Keep this part for your records.        CP 575 B (Rev. 7-2007)

--------------------------------------------------------------------------------

Return this part with any correspondence                          CP 575 B
so we may identify your account. Please
correct any errors in your name or address.                    9999999999

Your Telephone Number   Best Time to Call    DATE OF THIS NOTICE:  05-22-2012
(    )        -                               EMPLOYER IDENTIFICATION NUMBER:  45-6947089
                                              FORM:  SS-4              NOBOD

INTERNAL REVENUE SERVICE                      SESON DEON TELEO ADAMS-TRUST
CINCINNATI  OH   45999-0023                   SESON DEON TELEO ADAMS-ALI TTEE
|ı|ıı|ı|ı|ı|ıı|ı|ı|ıı|ı|ı|ıı|ı|ıı|ıı|ı|ıı|ı|ıı|ı|ı|ıı|   530 MANHATTAN AVE APT 59
                                              NEW YORK, NY  10027

# Private Life Estate Deed

ADDITIONAL Chattel Property DESCRIPTION (not all inclusive)

A) All Deeds, Mortgages, Satisfaction of Mortgages, Escrows, Accounts, Assets, UCC filings, Trusts, Animals, Trees, Factory, Certificate of Authority, Treaty, Federal Employer Identification Numbers, Tax Identification Numbers, D-U-N-S NUMBERS, Business Certificate No. 14-25638, Affidavit of Public Notice BK 14170 PG492-505, Bond(s), Gold, Silver, all precious metals, and stones;

B) Inventory and Warehouse Receipts of GRANTOR's assets; ALL right, title and interest in any all indenture, debentures and bonds of GRANTOR, nunc pro tunc to the date of inception Grantee further claims all right, title and interest in all of GRANTOR's titled and non-titled interests in assets, including Twenty Two (22) one ounce .999 silver dollar coins, an all other possessions, property, resources and licenses, etc., and including, but not limited to;

   a). All Warehouse Receipts.
   b). Interests in Warehouse Receipts.
   c). All Personal Properties.
   d). All Bonds.
   e). All Offices.
   f). All Titles
   g). All Financial Instruments held now and future holdings.
   h). Income from every source

Adjustment with this Filing is in accord UCC section 1-103 and 101; House Joint Resolution 192 of June 05, 1933; Public Law: Chapter 48, Stat. 112; (see attachment Addendum) Secured Party accepts GRANTOR signature in accordance with UCC section 1-201 (39), 2-401. NON-NEGOTIABLE-PRIVATE BETWEEN THE PARTIES, EXEMPT FROM LEVY. Without prejudice UCC 1-207 and 1-308.

The Secured Party Creditor holds the superior claim, security interest and International Maritime lien for One Hundred Billion $100,000,000,000 U.S.D. on ALL of the property of the GRANTOR; holds DROIT-DROIT (double right) to ALL of the property, rights titles, and interests above all others, including the "STATE"; and ALL of the property thereof. Furthermore, the Secured Party Creditor is ACCEPTED FOR VALUE and, EXEMPT FROM LEVY (Fines, Fees, taxes, etc.) in all forums pursuant to HJR-192, Public Law 95-147, 91 Stat. 1227, UCC 1-104 & 10-104, via 31 u.s.c. 5118; 22 U.S.C 2281, U.S. Constitution. Art. 1V, Cl. 1-(1791). Public Notice of UNIDROIT applicability "Without Prejudice."

# In the Court of Common Pleas of Philadelphia County

No. 14-27543

## Commonwealth of Pennsylvania

County of Philadelphia, ss.

I, ERIC FEDER, Director of Office of Judicial Records of said county, which is a Court of Record having an official seal, being the officer authorized by the laws of the Commonwealth of Pennsylvania to make the following Certificate,

do Certify, that _Judith P. Lawrence_ Esquire, whose name is sub-scribed to the certificate of acknowledgement of the annexed instrument and thereon written, or before whom the annexed affidavit was made was at the time of so doing or at the time of such acknowledgment a NOTARY PUBLIC for the Commonwealth of Pennsylvania, residing in the County of Philadelphia aforesaid, duly commissioned and qualified to admister oaths and affirmations and to take acknowledgments and proofs of Deeds or Conveyances for lands, tenements and hereditaments to be recorded in said Commonwealth of Pennsylvania, and to all whose acts, as such, full faith and credit are and ought to be given, as well in Courts of Judicature as elsewhere; and that I am well acquainted with the handwriting of the said NOTARY PUBLIC and verily believe the signature thereto is genuine, and I further certify that the said instrument is executed and acknowledged in conformity with the laws of the Commonwealth of Pennsylvania or that said oath or affirmation purports to be taken in all respects as required by the laws of the Commonwealth of Pennsylvania.

The impression of the seal of the Notary Public is not required by law to be filed in this office.

In Testimony Whereof, I have hereunto set my hand and affixed the seal of the Court this JUL 1 4 2016 day of _____ in the year 20____



10-213 (Rev. 11/14)

By _____ STEVEN WULKO, DEPUTY DIRECTOR

ERIC FEDER, Director, Office of Judicial Records

Director, Office of Judicial Records

# Private Life Estate Deed

I Seson Deon Teleo Adams, accept the oaths of all public officers and bind them to it. This public record under the seal of a competent court is guaranteed full faith and credit per Article 4 Section 1 of the U.S. Constitution.

EXPRESSLY RESERVING Life Estate Deed in the above described property unto the Grantee and its heirs, successors, and assigns. The Grantee shall have full ownership, possession and use of the property, as well as all the rents, revenues, interest, and profits generated by the property during the term of the Grantor's natural life.

Upon the expiration of the Grantor's natural life, the ownership, possession, use, rents, revenues and profits of the above described property shall revert to the Grantee's will and Testament.

EXECUTED this 8th day of July, 2016.

Grantor Name: <u>Seson Deon Teleo Adams</u>

X Grantor Signature: _Seson Deon Teleo Adams_

X Grantee Name: _Seson Deon Teleo Adams-Ali_

Owner, Seson Deon Teleo Adams-Ali

d.b.a. SESON DEON TELEO ADAMS

X Grantee Signature: _Seson Deon Teleo Adams-Ali_

STATE OF Pennsylvania

COUNTY OF Philadelphia

On this day, personally appeared before me, Seson Deon Teleo Adams, to me known to be the person(s) described in and who executed the within instrument, and acknowledged that he/she signed the same as his/her voluntary act and deed, for the uses and purposes therein mentioned.

Witness my hand and official seal hereto affixed on this 8th day of July, 2016.

Notary's Public Signature: _Judith G. Lawrence_

My commission expires ___4/17/20___ .

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JUDITH P. LAWRENCE, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 17, 2020

October 22, 2010

SESON ADAMS
530 MANHATTAN AVE APT 59
NEW YORK, NY 10027

Loan No. 0158554535  R92001 /

Dear Sir / Madam,

We have enclosed the documents in connection with the payoff of the above referenced loan.

Please keep these document(s) for your records.

If we can be of further assistance, please call our Customer Service department at the number listed above.

Thank you,

Lien Release Department

Enclosure(s)

Prepared By:
Angelina Serrano,
WELLS FARGO HOME MORTGAGE
X0501-022
1003 E BRIER DR
San Bernardino, CA  92408
800-572-3358

When Recorded Return To:
LIEN RELEASE DEPT.
WELLS FARGO HOME MORTGAGE
1003 E BRIER DR
MAC X0501-022
SAN BERNARDINO, CA  92408



**52258592**
Page: 1 of 2
09/14/2010 12:59PM

This Document Recorded
09/14/2010
12:59PM
Doc Code: S       Commissioner of Records, City of Philadelphia

Doc Id: 52258592
Receipt #: 937185
Rec Fee: 168.00

## SATISFACTION OF MORTGAGE

WFHM - CLIENT 708 #:0158554535 "ADAMS"  Lender ID:R92001   Philadelphia, Pennsylvania
KNOW ALL MEN BY THESE PRESENTS;

That present mortgage-holder Wells Fargo Bank, N.A. does hereby certify that a certain Indenture of Mortgage bearing date of 03/28/2007 , made and executed by SESON ADAMS to secure payment of the principal sum of $114,000.00 dollars and duly recorded in the Department of Records of the City of Philadelphia,  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument/Document: 51677960 on 04/24/2007  and secured upon property described below, has been paid, and that upon the recording of this instrument the said mortgage shall be and is hereby forever discharged.  The mortgage has not been assigned, except as shown below.

Property Address:  2355 TURNER ST, PHILADELPHIA, PA  19121  in the City of Philadelphia

The undersigned hereby certifies that the debt secured by the above-mentioned Mortgage has been paid or otherwise discharged and that upon the recording hereof said Mortgage shall be and is hereby satisfied and discharged, as to that certain part of the property security for said mortgage, fully described above, and only as to that certain part of said property.

The undersigned hereby authorizes and empowers the recorder of said county to enter this satisfaction piece and to cause said mortgage to be satisfied of record.  Witness the due execution hereof with the intent to be legally bound.

WITNESS the hand and seal below.  Signed, sealed and delivered;

*AS*ASWFMF*08/30/2010 12:35:48 PM* WFMC04WFMM00000000000000001602592* PAPHILA*
0158554535 PAPHILA_MORT_REL *AS1*AS3WFMB*

Wells Fargo Bank, N.A.
On August 30th, 2010

By: _____
VERONICA ROJAS, Vice
President Loan Documentation


STATE OF California
COUNTY OF San Bernardino

On August 30th, 2010 before me,  ANGIE SERRANO, Notary Public, personally appeared VERONICA
ROJAS , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized  capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal,


_____
ANGIE SERRANO
Notary Expires: 08/02/2014  #1898209

ANGIE SERRANO
COMM. #1898209
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Aug. 2, 2014

(This area for notarial seal)

*AS*ASWFMF*08/30/2010 12:35:48 PM* WFMC04WFMM00000000000000001602592* PAPHILA*
0158554535 PAPHILA_MORT_REL *AS1*AS3WFMB*

Bank, N.A.
Operations
14411
Moines, IA 50306-3411

OMB No.1545-1424 | 04/16/11
**2010** Substitute Form 1099-C | Cancellation of Debt

1MB    4257/000069/004257 003 01 ACNVF3 708

SESON ADAMS
530 MANHATTAN AVE APT 59
NEW YORK NY 10027-5223

MTDIS-City Of Philadelphia Vs Seson Deon Teleo Adams-Ali [JYM]



25050006904008

☐ CORRECTED

| CREDITOR'S name, street address, city, state, ZIP code, and telephone no. | 1 Date canceled 12/31/10 | OMB No. 1545-1424 | 04/16/11 |
|---|---|---|---|
| WELLS FARGO BANK, N A<br>1 HOME CAMPUS X2401-049<br>DES MOINES IA 50328-0001<br><br>800-868-0043 | 2 Amount of debt canceled $120,576.94 | **2010** | Cancellation of Debt |
| | 3 Interest if included in box 2 $0.00 | Substitute Form 1099-C | |

| CREDITOR'S federal identification number | DEBTOR'S identification number | 4 Debt description | |
|---|---|---|---|
| 94-1347393 | XXX-XX-8604 | 2355 TURNER ST<br>PHILADELP PA 19121 | **Copy B**<br>For Borrower |

DEBTOR'S name, street address (including apt. no.), city, state, ZIP code

SESON ADAMS
530 MANHATTAN AVE APT 59
NEW YORK NY 10027-5223

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income result from this transaction and the IRS determines that has not been report

5 Was borrower personally liable for repayment of the debt?
[X] Yes   ☐ No

| Account number (see instructions) 0158554535 | 6 Bankruptcy (if checked) ☐ | 7 Fair market value of property $20,000.00 | |
|---|---|---|---|

Substitute Form **1099-C**          (Keep for your records.)          Department of the Treasury - Internal Revenue Se

## Instructions for Debtor

**Note.** You may not have to include in income all or a portion of certain qualified principal residence indebtedness canceled in 2010. See Pub. 4681, Canceled Debts, Foreclosures, Repossessions, and Abandonments (for individuals), for more information.

If a federal government agency, certain agencies connected with the Federal Government, financial institution, credit union, or an organization having a significant trade or business of lending money (such as a finance or credit card company) cancels or forgives a debt you owe of $600 or more, this form must be provided to you. Generally, if you are an individual, you must include all canceled amounts, even if less than $600, on the "Other income" line of Form 1040. If you are a corporation, partnership, or other entity, report the canceled debt on your tax return. See the tax return instructions.

However, some canceled debts are not includible, or fully includible, in your income, such as certain student loans, certain debts reduced by the seller after purchase, qualified farm debt, qualified real property business debt, qualified principal residence indebtedness, or debts canceled in bankruptcy. See Pub. 4681. Do not report a canceled debt as income if you did not deduct it but would have been able to do so on your tax return if you had paid it. Also, do not include canceled debts in your income to the extent you were insolvent immediately before the cancellation of the debt. If you exclude a canceled debt from your income, file Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment).

**Debtor's identification number.** For your protection, this form may show only the last four digits of your social security number (SSN), individual taxpayer identification number (ITIN), or adoption taxpayer identification number (ATIN). However, the issuer reported your complete identification number to the IRS and, where applicable, to and/or local governments.

**Account number.** May show an account or other unique number assigned to distinguished your account.

**Box 1.** Shows the date the debt was canceled.

**Box 2.** Shows the amount of debt canceled. **Note:** If you do not agree with the amount, contact your creditor.

**Box 3.** Shows interest if included in the canceled debt in box 2. See Pub. 525, and Nontaxable Income, to see if you must include the interest in gross income

**Box 4.** Shows a description of the debt. If box 7 is completed, box 4 show a description of the property.

**Box 5.** Shows whether borrower is personally liable for repayment of the debt. See Pub. 4681 for reporting instructions.

**Box 6.** If the box is marked, the creditor has indicated the debt was canceled in a bankruptcy proceeding.

**Box 7.** If, in the same calendar year, a foreclosure or abandonment of property occurred in connection with the cancellation of the debt, the fair market value (FMV) of the property will be shown, or you will receive a separate Form 1099-A, Acquisition or Abandonment of Secured Property. Generally, the gross foreclosure bid price is considered to be the FMV. For an abandonment or voluntary conveyance in lieu of foreclosure, the FMV is generally the appraised value of the property. You may have income or loss because of the acquisition or abandonment. If the property was your main home, see Pub. 523, Selling Your Home, to figure any taxable gain or ordinary income. See Pub. 4681, for information about foreclosures and abandonments.

# AFFIDAVIT OF COMMISSIONER OF DEEDS PRESENTMENT

## CERTIFICATION OF MAILING

Republic of **New York** )

Subscribed and Affirmed )

County of **New York** )

I, _____, the undersigned mailer/server, being of sound mind and under no duress, do hereby certify, attest and affirm that the following facts are true and correct, to wit:

1. That, at the city of **New York**, County of **Manhattan** and the Republic of **New York**, on the **17th** day of **October**, 20**18**, that, on behalf of Seson Deon Teleo Adams, a natural person, the undersigned personally deposited the following documents (listed below) inside the envelope,

| Item # | Document Description | Number of pages |
|---|---|---|
| 1 | LETTER OF INSTRUCTIONS 100101 | 1 |
| 2 | MEMORANDUM OF LAW AND POINTS, AND AUTHORITY | 28 |
| 3 | UCC-3 | 2 |
| 4 | ORIGINAL BILL Accepted and Returned For Value | 3 |
| 5 | IBoE Document # 100101 | 1 |

Total of **Five** ( **5** ) documents with combined total of **Thirty Five** (**35**) pages.

2. That I personally placed said documents in the envelope and mailed said documents via United States Post Office Registered Mail receipt number RE **739 669 081** US, Return Receipt Requested and addressed to:

TO: CITY OF PHILADELPHIA
ATTN: William Fernandez
City Solicitor
1515 ARCH STREET 15th FL
Philadelphia PA. 19107

# 2017 Form 1040-V



## Department of the Treasury
## Internal Revenue Service

## What Is Form 1040-V

It's a statement you send with your check or money order for any balance due on the "Amount you owe" line of your 2017 Form 1040, Form 1040A, Form 1040EZ, or Form 1040NR.

## Consider Making Your Tax Payment Electronically—It's Easy

You can make electronic payments online, by phone, or from a mobile device. Paying electronically is safe and secure. When you schedule your payment you will receive immediate confirmation from the IRS. Go to *www.irs.gov/Payments* to see all your electronic payment options.

## How To Fill In Form 1040-V

**Line 1.** Enter your social security number (SSN).

If you are filing a joint return, enter the SSN shown first on your return.

**Line 2.** If you are filing a joint return, enter the SSN shown second on your return.

**Line 3.** Enter the amount you are paying by check or money order. If paying at IRS.gov don't complete this form.

**Line 4.** Enter your name(s) and address exactly as shown on your return. Please print clearly.

## How To Prepare Your Payment

• Make your check or money order payable to "**United States Treasury.**" Don't send cash. If you want to pay in cash, in person, see *Pay by cash.*

• Make sure your name and address appear on your check or money order.

• Enter your daytime phone number and your SSN on your check or money order. If you have an Individual Taxpayer Identification Number (ITIN), enter it wherever your SSN is requested. If you are filing a joint return, enter the SSN shown first on your return. Also enter "2017 Form 1040," "2017 Form 1040A," "2017 Form 1040EZ," or "2017 Form 1040NR," whichever is appropriate.

• To help us process your payment, enter the amount on the right side of your check like this: $ XXX.XX. Don't use dashes or lines (for example, don't enter "$ XXX—" or "$ XXX ˣˣ/₁₀₀").

**No checks of $100 million or more accepted.** The IRS can't accept a single check (including a cashier's check) for amounts of $100,000,000 ($100 million) or more. If you are sending $100 million or more by check, you will need to spread the payments over two or more checks, with each check made out for an amount less than $100 million.

**Pay by cash.** This is an in-person payment option for individuals provided through retail partners with a maximum of $1,000 per day per transaction. To make a cash payment, you must first be registered online at *www.officialpayments.com/fed*, our Official Payment provider.

## How To Send In Your 2017 Tax Return, Payment, and Form 1040-V

• Don't staple or otherwise attach your payment or Form 1040-V to your return. Instead, just put them loose in the envelope.

• Mail your 2017 tax return, payment, and Form 1040-V to the address shown on the back that applies to you.

## How To Pay Electronically

### Pay Online

Paying online is convenient, secure, and helps make sure we get your payments on time. You can pay using either of the following electronic payment methods. To pay your taxes online or for more information, go to *www.irs.gov/Payments.*

### Direct Pay

Pay your taxes directly from your checking or savings account at no cost to you. You receive instant confirmation that your payment has been made, and you can schedule your payment up to 30 days in advance.

### Debit or Credit Card

The IRS doesn't charge a fee for this service; the card processors do. The authorized card processors and their phone numbers are all on *www.irs.gov/Payments.*

Form **1040-V** (2017)

Cat. No. 20975C

▼ Detach Here and Mail With Your Payment and Return ▼

---

DATE: 9/ /2018

PAY TO THE ORDER OF

## Form 1040-V
Department of the Treasury
Internal Revenue Service (99)

## Payment Voucher

▶ Do not staple or attach this voucher to your payment or return.

OMB No. 1545-0074

**2017**

| | 1 Your social security number (SSN) (if a joint return, SSN shown first on your return) | 2 If a joint return, SSN shown second on your return | 3 Amount you are paying by check or money order. Make your check or money order payable to "United States Treasury" | Dollars | Cents |
|---|---|---|---|---|---|
| | 181 60 8604 | | | 1,500,000 | 00 |

| Print or type | 4 Your first name and initial | Last name |
|---|---|---|
| | SESON D | ADAMS |
| | If a joint return, spouse's first name and initial | Last name |
| | | |

| | Home address (number and street) | Apt. no. | City, town or post office, state, and ZIP code (if a foreign address, also complete spaces below.) | |
|---|---|---|---|---|
| | 108 WEST 141ST STREET | 3G | NEW YORK, NEW YORK 10030 | |
| | Foreign country name | | Foreign province/state/county | Foreign postal code |

Cat. No. 20975C

For Paperwork Reduction Act Notice, see your tax return instructions.

3. That I am at least 18 years of age;

4. That I am not related to Seson Deon Teleo   Adams by blood, marriage, adoption, or employment, but serve as a "disinterested third party" (herein "Server"); and further,

5. That I am in no way connected to, or involved in or with, the person and/or matter at issue in this instant action.

I now affix my signature to these affirmations.

(Signature): *Seson Deon Teleo Adams* _____ , Mailer/Server

(Printed name): SESON DEON TELEO ADAMS

WITNESS my hand and official seal.

_____    10/17/18    (Seal)
COMMISSIONER OF DEEDS       DATE

My commission expires: May 1 , 20 19

IVY SOTO
Commissioner of Deeds, City of New York
No. 1-7061
Cert. Filed in New York County
Commission Expires May 1, 20__

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Seson Deon Teleo Adams 9173458979

B. E-MAIL CONTACT AT FILER (optional)
info@adamsengineering.org

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

SESON DEON TELEO ADAMS
108 WEST 141ST STREET
3G
NEW YORK NY USA 10030

Date of Filing : 10/16/2018
Time of Filing : 09:43:00 PM
File Number : 2018-289-1271-5
Lapse Date : NONE

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2010-132-4791-2

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer, attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
**CITY OF PHILADELPHIA**

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Philadelphia City Hall Chestnut Street | Philadelphia | PA | 19107 | USA |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

ORIGINAL DOCUMENTARY BANK DRAFT GUARANTEED LEGAL TENDER BY THE UNITED STATES OF AMERICA PRESENT DIRECTLY TO THE COLLECTING PARTY WITH DOCUMENTS. ACCEPTANCE FOR HONOR TO CREDIT UPON SIGHT.
Legal Tender for All Debts, Public Charges, Taxes and Dues payable without Deductions for and Free of any Levy, Duties, or Impost of any nature in UNITED STATES DOLLARS (USD). Special Instructions (Treasury Control System (offset payments))

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
**SESON DEON TELEO ADAMS**

9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
12 USC SECTION 411 BY, *Seson Deon Teleo Adams*

8. AMENDMENT (COLLATERAL CHANGE):

Direct Obligation of the United States Government is considered Cash Money for discharge of any private or public contractual claim / offer to include those that are verbal. This valuable document written in Good Faith under the Doctrine of Necessity and Tendered for Transfer by Assignment of Account to the Drawee to Render Settlement in Full Satisfaction and Closure of Claim / Account No.18302451 (none) by the transfer of credit for credit on account.
3. See enclosed Document # 100101A, and Memorandum of Law and Points and Authorities.
4. Accepted for Value invoice / demand instrument and UCC3 form are enclosed with this instrument.
UNITED STATES REGISTERED MAIL# RE 739 669 081 US

#21

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

CITY OF PHILADELPHIA
Plaintiff,

vs.

SESON DEON TELEO ADAMS, ET AL

:
:
:
:
:
:
:
:

COURT OF COMMON PLEAS
CIVIL TRIAL DIVISION

MARCH TERM, 20

NO. 2451

City Of Philadelphia Vs-ORDRF



18030245100024

### INJUNCTION & ORDER AUTHORIZING CITY DEMOLITION

AND NOW this 30th day of August, 2018, upon consideration of the Complaint, and the hearing held on August 30, 2018, this Court **FINDS** that:

1. Defendants SESON DEON TELEO ADAMS and SESON DEON TELEO ADAMS- ESTATE/TRUST are the owners of the property and structure located at 2355 Turner Street, Philadelphia, PA ("subject premises").

2. The subject premises was designated as unsafe by the City of Philadelphia ("City") Department of Licenses and Inspections ("Department") on May 1, 2017. Notice of Violation Case # 581214 was issued on that date and attached to the Complaint as Exhibit "A".

3. At the hearing(s) held on August 30, 2018 the City presented the credible evidence and testimony of Inspector Victor Collins.

4. To date, Defendant has failed to obtain the necessary permits and/or make the necessary repairs to correct the unsafe conditions at the subject premises.

5. The subject premises poses a threat to the health safety and welfare of the neighboring properties, first responders, and the general public.

Title/Position:                 Executor

Print Window

Create New, Blank Form ID       Create New, Pre-filled Form ID

Exit Window

# Form ID Application Acknowledgment

**Your Form ID was successfully submitted. Your accession number for this submission is 9999999996-18-007006.**

After Filer Support has reviewed your application you will receive an e-mail informing you that your request was either accepted (and include your new CIK), or rejected (and include the reason why).

If you have any questions regarding the status of your Form ID application, please contact Filer Support at (202) 551-8900.

## Application for EDGAR Access (Form ID)

| | |
|---|---|
| Applicant Type: | Filer |
| Company/Individual: | Company |
| Draft Registration: | Foreign Private Issuer Policy |
| Draft Offering: | |
| Conformed Name of Applicant: | SESON DEON TELEO ADAMS |
| Mailing Address: | C/O 108 WEST 141ST STREET APT. 3G NEW YORK, NY 10030 |
| Phone: | 917-345-8979 |
| Tax Identification Number: | 98-6086324 |

### Filer Information

| | |
|---|---|
| "Doing Business As" Name: | SESON DEON TELEO ADAMS |
| Foreign Name: | |
| Business Address: | 3500 DUPONT HIGHWAY SUITE DS-100 DOVER, DE 19901 |
| State of Incorporation: | XX |
| Fiscal Year End: | 12/31 |

### Contact for EDGAR Information, Inquiries and Access Codes

| | |
|---|---|
| Contact Name: | SESON DEON TELEO ADAMS |
| Contact Address: | C/O 108 WEST 141ST STREET APT. 3G NEW YORK, NY 10030 |
| Contact Phone: | 917-345-8979 |
| E-mail Address: | INFO@ADAMSENGINEERING.ORG |

### Contact for SEC Account Information and Billing Invoices

| | |
|---|---|
| Contact Name: | SESON DEON TELEO ADAMS |
| Contact Address: | C/O 108 WEST 141ST STREET APT. 3G NEW YORK, NY 10030 |
| Contact Phone: | 917-345-8979 |

### Signature Information

| | |
|---|---|
| Signature: | Seson Deon Teleo Adams |
| Date: | 2/16/2018 |

| eRecorded in Philadelphia, PA | Doc Id: 51677960 |
| 04/24/2007 09:24A | Receipt #: 593801 |
| Page: 1 of 25 | Rec Fee: $126.50 |
| Commissioner of Records | Doc Code: M |

Prepared by:

SUZETTE A. COBIAN
WELLS FARGO BANK, N.A.
5540 FERMI CT #200
CARLSBAD, CA 92008-

Return To:

WELLS FARGO BANK, N.A.
FINAL DOCUMENTS X899
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121-1663

Premises:

2355 TURNER ST
PHILADELPHIA, PA 19121

Parcel Number:

49-00447649

49-53654

——————— Space Above This Line For Recording Data ———————

# MORTGAGE

0158554535

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 18.

(A) "Security Instrument" means this document, which is dated MARCH 28, 2007 together with all Riders to this document.

(B) "Borrower" is

SESON ADAMS

Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a National Association
organized and existing under the laws of THE UNITED STATES OF AMERICA

PENNSYLVANIA- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        FORM 3039    1/01

Page 1 of 18        Initials: SA                                               SPA01A    Rev 05/21/06

## ADJUSTABLE RATE/BALLOON NOTE

(6-Month LIBOR Index-Rate Caps)
(Assumable during Life of Loan)
(First Business Day of Preceding Month Lookback)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| MARCH 20, 2007 | CHULA VISTA | CALIFORNIA |
|---|---|---|
| Date | City | State |

2355 TURNER ST, PHILADELPHIA, PA  19121
(Property Address)

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $   114,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____
WELLS FARGO BANK, N.A.                                         .

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of  11.750%.

The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on    MAY 1, 2007    .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.

If, on   APRIL 1, 2037   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make my monthly payments at WELLS FARGO BANK, N.A.   _____
P.O. BOX 11701, NEWARK, NJ  07101-4701
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $   1,126.74 , which is based on a 40 year amortization ("Initial Amortization Period"). This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of  APRIL, 2009    ,
and may change on that day every  6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

ADJUSTABLE RATE/BALLOON NOTE-6-Month LIBOR Index (Assumable during the Life of Loan)

Initials _____

1 of 6                                   P-102A          REV. 11/7/31

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six-month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in "The Wall Street Journal." The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding <u>six and one-half percentage point(s) ( 6.500%)</u> to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full based on the remaining term in my Initial Amortization Period at my new interest rate in substantially equal payments. The results of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than <u>14.750</u>% or less than <u>8.750</u>%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than <u>one percentage point(s) ( 1.000%)</u> from the rate of interest I have been paying for the preceding <u>6</u> months. My interest rate will never be greater than <u>17.750</u>%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

 

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Initials: _SA_

5 of 5

10005E REV. 03/02/03

This space intentionally left blank

## Tranfer of the Property or a Beneficial Interest in Borrower. As used in this section 18,

"Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
SESON ADAMS                              -Borrower

## ADDENDUM TO NOTE
### (Prepayment)

0158554535

THIS ADDENDUM is made this ..28th...... day of ..MARCH........ 2007 ......... and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1. The Note is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first ..two.... (.2...) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge as follows:

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount. If within the third year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to one percent (1%) of the original principal amount.

.X... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount.

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount.

2. In the event the maturity of the Note is accelerated for any reason during the applicable period of the prepayment charge, then the prepayment charge set forth herein shall be due and payable.

3. All interest, fees and other amounts charged or accruing in connection with the Note which are considered "interest" within the meaning of section 85 of the National Bank Act (12 USC & 85; 12 C.F.R. & 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, the Note and all related documents, as well as the rights, remedies, and duties of the Lender and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located.

4. All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: 3/20/07 _____ _Seson Adams_ _____(Seal)
 SESON ADAMS                              -Borrower

EXHIBIT "A"

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND
IMPROVEMENTS. THEREON ERECTED, IN THE CITY OF PHILADELPHIA,
COUNTY OF PHILADELPHIA, STATE OF PENNSYLVANIA BEING DESCRIBED AS
FOLLOWS:

SITUATE ON THE NORTHWEST CORNER OF TURNER STREET AND TWENTY-
FOURTH STREET IN THE TWENTY-NINTH WARD OF THE CITY OF
PHILADELPHIA, CONTAINING IN THE FRONT OR BREADTH ON THE SAID
TURNER STREET FIFTEEN FEET EIGHT INCHES AND EXTENDING OF THAT
WIDTH IN LENGTH OR DEPTH NORTHWARD ALONG THE EAST SIDE OF SAID
TWENTY-FOURTH STREET FIFTY -NINE FEET TO A CERTAIN FOUR FEET WIDE
ALLEY EXTENDING FROM THE SAID TWENTY-FOURTH STREET TO TWENTY-
THIRD STREET. BOUNDED EASTWARD BY NEW OR LATE OF J. CLIFFORD
SCOCH, WESTWARD BY SAID TWENTY-FOURTH STREET, NORTHWARD BY SAID
FOUR FEET WIDE ALLEY AND SOUTHWARD BY TURNER STREET AFORESAID.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 931037-865170; SOURCE OF TITLE IS BOOK 5042, PAGE
1127 (RECORDED 03/15/02)

'', Prepared by:

SUZETTE A. COBIAN
WELLS FARGO BANK, N.A.
5540 FERMI CT #200
CARLSBAD, CA 92008-

Return To:

WELLS FARGO BANK, N.A.
FINAL DOCUMENTS X999
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121-1663

Premises:

2355 TURNER ST
PHILADELPHIA, PA 19121

Parcel Number:

———————————————— Space Above This Line For Recording Data ————————————————

# MORTGAGE

0158554535

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated MARCH 28, 2007
together with all Riders to this document.
(B) "Borrower" is
SESON ADAMS

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a National Association
organized and existing under the laws of THE UNITED STATES OF AMERICA

PENNSYLVANIA- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

FORM 3039 1/01

Page 1 of 18      Initials: _SA_

SPA01A   Rev 06/21/05

Lender's address is
P. O. BOX 5137, DES MOINES, IA 50306-5137
Lender is the mortgagee under this Security Instrument.
(D) "Note " means the promissory note signed by Borrower and dated MARCH 28, 2007 .
The Note states that Borrower owes Lender ONE HUNDRED FOURTEEN THOUSAND AND
NO/100                                                                      Dollars
(U.S. $ .....114,000.00............) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  APRIL 1, 2037 .
(E) "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider         ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider              ☐ Biweekly Payment Rider     ☒ Other(s) [specify]

Prepayment Rider / Adj. Rate/Balloon Rider

(H) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of,
or default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

SPA02   Rev 12/18/00              Page 2 of 18      Initials: _BA_           FORM 3039   1/01

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the     County                    of        PHILADELPHIA                    :
    [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]


LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.




which currently has the address of
2355 TURNER ST                                                                            [Street]
PHILADELPHIA                              [City], Pennsylvania     19121     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

SPA03    Rev  11/03/00                    Page 3 of 10         Initials: _____         FORM 3039    1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal

balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the

maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration

in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the

Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost

substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact the the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designed payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designed payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain

cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument,

whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the

Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of a fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of

acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The

preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____   _____ (Seal)
               SESON ADAMS      Borrower

Certificate of Residence

I, , do hereby certify that
the correct address of the within-named Mortgagee is
P. O. BOX 5137, DES MOINES, IA 50306-5137

    Witness my hand this  28TH  day of  MARCH, 2007

_____
                                 Agent of Mortgagee


COMMONWEALTH OF PENNSYLVANIA, PHILADELPHIA        County ss:

    On this, the  28TH  day of  MARCH, 2007      , before me, the undersigned
officer, personally appeared

SESON ADAMS

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged that he/she/they executed the same for the
purposes herein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires: 5/30/09

_____

_____
NOTARY
Title of Officer

```
+-----------------------------------------+
|            NOTARIAL SEAL                 |
| WILLIAM J. PHELAN, III, Notary Public    |
|  City of Philadelphia, Phila. County     |
| My Commission Expires May 30, 2009       |
+-----------------------------------------+
```

SPA18   Rev 12/27/00         Page 18 of 18    · Initials:          FORM 3039   1/01

## ADJUSTABLE RATE/BALLOON RIDER

0158554535

(6-Month LIBOR Index-Rate Caps)
(Assumable during Life of Loan)
(First Business Day of Preceding Month Lookback)

This Adjustable Rate Rider is made this 28th day of MARCH, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to WELLS FARGO BANK, N.A. (the "Lender") of the same date and covering the property described in the Security Instrument and located at: 2355 TURNER ST, PHILADELPHIA, PA 19121
(Property Address)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an Initial Interest Rate of 11.750 %. The Note provides for changes in the interest rate and the monthly payments as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The interest rate I will pay may change on the first day of APRIL, 2008 and may change on that day every _6_th month thereafter. Each date on which my interest rate could change is called a " Change Date."

#### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six-month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in 'The Wall Street Journal." The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the 'Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

ADJUSTABLE RATE/BALLOON RIDER-6-Month LIBOR Index (Assumable during the Life of Loan)

<em>page 1</em>

P1136A Rev. 10/11/06

## (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six and one-half percentage point(s) ( 6.500%)** .............................................................................................to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full based on the remaining term in my initial amortization period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

## (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **14.750** % or less than **8.750** % . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **one percentage point(s) ( 1.000%)** from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **17.750** %.

## (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

## (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

# ADJUSTABLE RATE/BALLOON NOTE

0158554535

(6-Month LIBOR Index-Rate Caps)
(Assumable during Life of Loan)
(First Business Day of Preceding Month Lookback)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| MARCH 28, 2007 | CHULA VISTA | CALIFORNIA |
|---|---|---|
| Date | City | State |

2355 TURNER ST, PHILADELPHIA, PA   19121
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   114,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____
WELLS FARGO BANK, N.A. 

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.   I will pay interest at a yearly rate of __11.750%.

The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on   MAY 1, 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.

If, on   APRIL 1, 2037     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make my monthly payments at
WELLS FARGO BANK, N.A. 
P.O. BOX 11701, NEWARK, NJ   07101-4701
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    1,126.74 , which is based on a 40 year amortization ("Initial Amortization Period"). This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates

The interest rate I will pay may change on the first day of APRIL, 2009     ,
and may change on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

ADJUSTABLE RATE/BALLOON NOTE-6-Month LIBOR Index (Assumable during the Life of Loan)

Initials _____

PH09A   REV. 11/7/05

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six-month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in "The Wall Street Journal." The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
six and one-half percentage point(s) ( 6.500% )
to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full based on the remaining term in my Initial Amortization Period at my new interest rate in substantially equal payments. The results of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than
14.750 % or less than 6.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) ( 1.000% ) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 17.750%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Initials:

2 of 5

PKC9C

REV. 11/7/05

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Initials: _BA_

3 of 5

IOXXXE REV. 01/02/01

This space intentionally left blank

### Tranfer of the Property or a Beneficial Interest in Borrower.
As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _____

4 of 5

IP11000

REV. 02/04/05

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

This space intentionally left blank

**Transfer of the Property or a Beneficial Interest in Borrower.**

As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

page 3                                   P1135E        REV 10/17/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
SESON ADAMS                                          -Borrower

100363  Rev. 03/30/05

# PREPAYMENT RIDER

0158554535

THIS PREPAYMENT RIDER is made this ...28th...... day of ...MARCH........ ..2007...... , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to ............................................... ....WELLS FARGO BANK, N.A............................................................................................of the same date and covering the Property described in the Security Instrument and located at: 2355 TURNER ST. PHILADELPHIA, PA 19121
.........................................................................
(Property Address)

PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first .two...... (..2..) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge as follows:

...... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount. If within the third year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to one percent (1%) of the original principal amount.

(Page 1 of 2)
PP010A Rev. 09/13/05

Prepayment Rider

X   If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount.

.....   If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount.

In the event the maturity of the Note is accelerated for any reason during the applicable period of the prepayment charge, then the prepayment charge set forth herein shall be due and payable.

All interest, fees and other amounts charged or accruing in connection with the Note which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC 85; 12 C.F.R. & 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, the Note and all related documents, as well as the rights, remedies, and duties of the Lender and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____(Seal)
SESON ADAMS                           -Borrower

# ADDENDUM TO NOTE
## (Prepayment)

0158554535

THIS ADDENDUM is made this ..29th...... day of ..MARCH........ .2007... and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1. The Note is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first ..two.... (..2..) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge as follows:

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount. If within the third year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to one percent (1%) of the original principal amount.

.X.. If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount.

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount.

2. In the event the maturity of the Note is accelerated for any reason during the applicable period of the prepayment charge, then the prepayment charge set forth herein shall be due and payable.

3. All interest, fees and other amounts charged or accruing in connection with the Note which are considered "interest" within the meaning of section 85 of the National Bank Act (12 USC & 85; 12 C.F.R. & 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, the Note and all related documents, as well as the rights, remedies, and duties of the Lender and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located.

4. All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated:__3/28/07__    _____SESON ADAMS_____(Seal)
                                                    -Borrower

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
SESON ADAMS                                    -Borrower

CITY OF PHILADELPHIA,
By: JAMES ZWOLAK
Attorney Identification No. 57408
1401 John F. Kennedy Blv.-5th Floor
Philadelphia, PA 19102
and
CITYOF PHILADELPHIA

v.

SESON DEON TELEO ADAMS-
ESTATE/TRUST
and
SESON DEON TELEO ADAMS- ALI
108 W 141ST STREET APT. 3G
NEW YORK, NEW YORK 10030
Alleged Defendant.

Adams, Seson Deon Teleo,
Real Interest Party In Equity
3rd Party Interested Intervenor

Case ID: MAY 2025 T0069

Filing No.: 2505023040

AFFIDAVIT OF ORIGINAL ISSUE;

NOTICE OF ALLEGED DEFENDANT'S ACCEPTANCE OF CLAIM;

NOTICE OF COURT'S ABANDONMENT OF CLAIM;

MOTION AND ORDER TO DISMISS

*Notice of Special Appearance*

... ust 19, 2025 time 9:00am

RESPONSE DATE

SEP 08 2025

OFFICE OF JUDICIAL RECORDS

MTDIS-City Of Philadelphia Vs Seson Deon Teleo Adams-Ali [JYM]

25050006904008

087308

## SWORN AFFIDAVIT OF FACT

I, Seso Deon Teleo, family of Adams, the Undersigned Affiant, hereinafter "Affiant," does hereby solemnly swear (or affirm), declare, and state as follows:

1. Affiant is competent to state the matters set forth herewith.

2. Affiant has personal first-hand knowledge of the facts stated herein.

3. All the facts stated herein are true, correct, and complete in accordance with Affiant's best firsthand knowledge and understanding, and if called upon to testify as a witness Affiant shall so state.

4. **Notice of Estoppel and Stipulation of Constitutional Challenge** to the CITYOF PHILADELPHIA Commonwealth of Pennsylvania State Statutes where no ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed. And Motion to Intervene with an Injunction for the name SESON DEON TELEO ADAMS

(please see "Exhibit B") to provide the assessed Statute value of the taxes owed in all Taxable matters with the CITY OF PHILADELPHIA for Case ID: May 2025 T0069 e-filing No.: 2505023040. In consideration of the fact that no lawful money of account exists in circulation, and in consideration if the fact that I have suffered dishonor regarding the matter of Case ID: 180302451 Control No.: 18032942 and associated account(s), I underwrite with my private exemption # 181608604, regarding any and all obligations of performance/loss/costs sustained by the United States of America or State of Pennsylvania; **31 U.S. Code § 3113** (see Exhibit C) and the respectful citizens thereof regarding said matter.

11. There being no unauthorized Estate Administration controversy in the COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY on Case ID: May 2025 T0069 e-filing No.: 2505023040, this court does not have subject matter jurisdiction and must vacate any order(s) or judgment(s) made.

12. COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY has abandoned the claim (attached hereto and stated herein as alleged Defendants "Exhibit B").

13. COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY is in receipt of the proper Internal Revenue Service Forms 1099-A Bill of Exchange and Memorandum of law points and authorities (attached hereto and stated herein as alleged Defendant's "Exhibits B") for the abandonment of the Tax in this Case ID: 180302451 Control No.: 18032942.

14. CITY OF PHILADELPHIA, LAW DEPARTMENT William Fernandez Commonwealth of Pennsylvania unknown BAR card Assistant City Solicitor Attorney Identification No. 317133 and , a corporation doing business under an unknown tax identification number located at Philadelphia City Hall, Chestnut Street, Philadelphia PA 19107, is in violation of United States Code Title 26 for Tax Fraud.

**Wherefore the undersigned hereby moves the Court to dismiss the Plaintiff's complaint of MAY 12, 2025 T0069 with prejudice and to place ALL documents relating to this matter under seal. The undersigned is not a lawyer.**

Dated this 19th day of August_____, 2025.

SESON DEON TELEO ADAMS©,

alleged Defendant

By: 12 usc sec 411@ by SESON DEON TELEO ADAMS

Seson Deon Teleo, Adams, a living man
Principal, Executor, Power of Attorney-in-Fact
Third party Intervener No liability assumed
Always with all God-given rights, waiving none ever

JURAT

State of Pennsylvania)

) ss.

County of Philadelphia)

## AFFIRMATION

15. I, Seson Deon Teleo Adams, without the United States Respectfully submitted, Signed with explicit reservation of all Rights, and I waive none of my Rights at any time or for any reason, *Affidavit pursuant to 29,* United States Code, Title 1746 *See Dickerson vs. Wainwright,* 626 F.2d Title 1184, *held* affidavit sworn true and correct under penalty of perjury has full force of law and does not have to be verified by Notary Public to have same effect. Respectfully submitted, Seson Deon Teleo Adams

---

## ORDER

IT IS HEREBY ORDERED that the above captioned case, and the Complaint of the Plaintiff be dismissed with prejudice and any Notice(s) of Lis Pendens be removed from record and to place ALL documents relating to this matter under seal.

Dated: _____, 2025.

_____
Presiding Judge:

Page 4 of 6 – AFFIDAVIT OF ORIGINAL ISSUE; NOTICE; MOTION AND ORDER TO DISMISS

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

CITY OF PHILADELPHIA, LAW DEPARTMENT
By: William Fernandez
Assistant City Solicitor
Attorney Identification No. 317133
1515 Arch Street-15th Floor
Philadelphia, PA 19102-1595
    and
CITY OF PHILADELPHIA
       v.

SESON DEON TELEO ADAMS-ESTATE/TRUST
    and
SESON DEON TELEO ADAMS-ALI
2355 W
       Alleged Defendant.

Adams, Seson Deon Teleo,
Real Interest Party In Equity
3rd Party Interested Intervenor

Case ID: MAY 2025 T0069

e-filing No.: 2505023040

**AFFIDAVIT OF ORIGINAL ISSUE;**

**NOTICE OF ALLEGED DEFENDANT'S ACCEPTANCE OF CLAIM;**

**NOTICE OF COURT'S ABANDONMENT OF CLAIM;**

**MOTION AND ORDER TO DISMISS**

*Notice of Special Appearance*

## Notice of Spcial Appearance

**Date: 08/19/2025**

I am <u>Seson Deon Teleo Adams</u> hereby certify that this day August 19, 2025 making a special appearance over a matter of claim to title to property serving a Notice of Trespass and Fee Schedule with remedy to cure, a true correct copy of 1099A, Bill of Exchange memorandum of law points and authorities for the Alleged Defendant. Pursuant to Federal rules of civil procedure Title II. Commencing an action: Service of Process, Pleading, Motions, and Orders. Pursuant to Federal rules of civil procedure rule 24: Intervener Rule 5. Serving and Filing Pleadings and Other papers by Certified Mail Return Receipt to COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, Philadelphia City Hall, Chestnut Street, Philadelphia PA 19107, registered mail to the Secretary of the Treasury, and certified mail to CITY OF PHILADELPHIA, LAW DEPARTMENT c/o William Fernandez, Assistant City Solicitor Attorney Identification No. 317133; on behalf of the plaintiff.

By: <u>12 USC sec 411@ bySESON DEON TELEO ADAMS</u>
Seson Deon Teleo, Adams, a living being
UCC 1-308 All Rights Reserved Without Recourse
Principal, Executor, Power of Attorney-in-Fact
No liability assumed
Always with all God-given rights, waiving none ever

C/o 818 Bullock Ave Lansdowne, PA 19050

**Page 5 of 6 – AFFIDAVIT OF ORIGINAL ISSUE; NOTICE; MOTION AND ORDER TO DISMISS**

<u>ACKNOWLEDGMENT</u>

JURAT

State of Commonwealth of Pennsylvania)
                                  ) scilicet
County of Philadelphia)

**16. AFFIRMATION**

17. I, Seson Deon Teleo Adams, without the United States Respectfully submitted, Signed with explicit reservation of all Rights, and I waive none of my Rights at any time or for any reason, *Affidavit pursuant to 29,* United States Code, Title 1746 *See Dickerson vs. Wainwright,* 626 F.2d Title 1184, *held* affidavit sworn true and correct under penalty of perjury has full force of law and does not have to be verified by Notary Public to have same effect. Respectfully submitted,

By: _12USC Sec 411 ⓔ by SESON DEON TELEO ADAMS_
Seson Deon Teleo, Adams, a living being
UCC 1-308 All Rights Reserved Without Recourse
Principal, Executor, Power of Attorney-in-Fact
No liability assumed
Always with all God-given rights, waiving none ever

C/o 818 Bullock Ave Lansdowne, PA 19050

Estate/Trust© et. al.

## DECLARATION OF NATIONALITY

5. " ' I Seson Deon Teleo Adams a living man of the age of majority being duly sworn hereby declare my intention to be a Pennsylvanian national but not a citizen of the United States.' " Sections 301 & 302

### Plain Statement of Facts

6. Affiant is the agent for alleged Defendant SESON DEON TELEO ADAMS-ALI© (see Exhibit A).

7. Alleged Defendant SESON DEON TELEO ADAMS Estate/Trust© is the "Original Issuer" of the credit on the debt instrument commonly known and identified as Case ID: 180302451 Control No.: 18032942 in the COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY.

8. COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY is a Corporation Doing Business under an Unknown Tax Identification Number Also Known as COURT OF COMMON PLEAS CIVIL TRIAL DIVISION OF PHILADELPHIA COUNTY located Philadelphia City Hall, Chestnut St, Philadelphia, PA 19107

9. The Original Issue tax forms for Case ID: 180302451 Control No.: 18032942 was sent on October 17th, 2018 to the CITY OF PHILADELPHIA, LAW DEPT., and COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY and is filed on Internal Revenue Service Form 1099A, 1099-OID, Form 56 and Form 8281 (attached hereto and stated herein as alleged Defendant's "Exhibit B").

10. Creditor SESON DEON TELEO ADAMS© accepted the Case ID: 180302451 Control No.: 18032942 on the attached Internal Revenue Service Form 1099A and

# Act of Expatriation and Oath of Allegiance

Whereas "SESON DEON TELEO ADAMS, SESON DEON ADAMS, SESON ADAMS" is a naturalized "citizen of the United States" under the Diversity Clause of the Constitution(s) and is the age of majority and whereas such "citizenship" was never desired nor intended nor willingly nor voluntarily entered into, "SESON DEON TELEO ADAMS,SESON DEON ADAMS, SESON ADAMS" willingly and purposefully renounces all citizenship or other assumed political status related to the United States defined as "the territories and District of Columbia" (13 Stat. 223, 306, ch. 173, sec. 182, June 30, 1864) and its government, a corporation doing business variously as the UNITED STATES, U.S. Corp, US, Inc., etc. formed under the Act of 1877, and does repatriate to the land of HIS birth known as Commonwealth of Pennsylvania and does freely affirm HIS allegiance to the same actual and organic state of the Union and does accept HIS true Nationality as an American State National and an American State Vessel in all international commerce owned and operated by Adams, Seson Deon Teleo of 108 W 141st Street Apt. 3G New York, New York, 10030, mailing % 818 Bullock Avenue Lansdowne, PA Near 19050.

This do I certify, Witness and confirm this 16th day of October, 2023.

12USC Sec.411@ _____ by Seson Deon Teleo Adams, all rights reserved.

County of New York

State of New York

Before me Ivy Soto this 16th day of October 2023 did appear one SESON DEON TELEO ADAMS and he did establish this Act of Expatriation and Oath of Allegiance freely and without coercion, in Witness whereof I set my sign and seal.

_____ Notary Witness

IVY SOTO
Commissioner of Deeds, City of New York
No. 1-7061
Cert. Flied In New York County,
Commission Expires May 1, 2025

# INTERNATIONAL BILL OF EXCHANGE (UNCITRAL Convention)

No. 100101

PURSUANT TO AND IN ACCORDANCE WITH FINAL ARTICLES OF THE UNCITRAL CONVENTION IN EFFECT ON THE DATE HEREOF.

REF: Ratified Convention Articles 1-7, 11 12, 13, 46-3, 47-4(c), 51

For International / Interstate and Cross-Border Transactions.

## ORIGINAL DOCUMENTARY BANK DRAFT

### GUARANTEED LEGAL TENDER BY THE UNITED STATES OF AMERICA

PRESENT DIRECTLY TO THE COLLECTING PARTY WITH DOCUMENTS. ACCEPTANCE FOR HONOR TO CREDIT UPON SIGHT.

Legal Tender for All Debts, Public Charges, Taxes and Dues payable without Deductions for and Free of any Levy, Duties, or Impost of any nature in UNITED STATES DOLLARS (USD)

RECORDED / REGISTERED / CERTIFIED FUNDS No. UCC3 No. 2018-289-1271-5       DOCUMENT No. 100101

PER GUARANTEE OF U.C.C. CONTRACT UNITED STATES TREASURY PRIORITY PREPAID EXEMPT ACCOUNT / BOND No. F44867077

CREDIT UPON SIGHT TO PAYEE:  CITY OF PHILADELPHIA VS SESON DEON TELEO ADAMS EST CASE ID: 180302451
1515 ARCH STREET 15TH FLOOR
PHILADELPHIA, PA 19102-1595

DRAWEE:                         SECRETARY OF THE TREASURY OF THE UNITED STATES -STEVEN MUNCHIN
OR OTHER AUTHORIZED REPRESENTATIVE OF THE UNITED STATES

THROUGH ENS LEGIS UNITED STATES CITIZEN-TRUST   ADAMS, SESON DEON TELEO. 181608604
108 WEST 141ST STREET APT 3G
New York, NY 00000

BILL OF EXCHANGE
(an obligation of the United States)                                          Presented For Acceptance On Demand

CREDIT UNCONDITIONALLY                                                        REMIT AT PAR VIA FEDWIRE

TO THE ORDER OF          CITY OF PHILADELPHIA                                 US$1,500,000.00USD

IN THE SUM CERTAIN AMOUNT OF: One Million Five Hundred Thousand and 00/100-----------------------------------------------------DOLLARS.

Drawer:                   Seson Deon Teleol Adams, Receiving post at
private banker            c/o 108 West 141st Street Apt 3G
New York, New York by rule of lex domicilii
united States of America 1776

Signature By _Seson Deon Teleo Adams_____ , agent, U.C.C. 3-402(b)(1)  10/16/2018
"As good as Aval"        Authorized Representative,                Date
As holder in due course of the account

On this 17th day of October, A.D., Two Thousand Eighteen, before me, a Commissioner of Deeds of the state of New York, came a man personally known by me (or who proved to me on the basis of satisfactory evidence) to be the man whose signature is subscribed hereon. The said man solemnly swore under oath that he has first hand knowledge of the facts contained herein and that they are true, correct and complete to the best of his knowledge, understanding and belief.

Signature By _____
Commissioner of Deeds

IVY SOTO
Commissioner of Deeds, City of New York
No. 1-7061
Cert. Filed in New York County
Commission Expires May 1, 20_1_

Special Instructions (Treasury Control System (offset payments))
1. Noncash Item-Prepaid Electronic Funds Transfer Only.
2. This Sight Draft of Bankable Paper Guaranteed as a Direct Obligation of the United States Government is considered Cash Money for discharge of any private or public contractual claim / offer to include those that are verbal. This valuable document written in Good Faith under the Doctrine of Necessity and Tendered for Transfer by Assignment of Account to the Drawee to Render Settlement in Full Satisfaction and Closure of Claim / Account No. 18302451 (none) by the transfer of credit for credit on account.
3. See enclosed Document # 100101A, and Memorandum of Law and Points and Authorities.
4. Accepted for Value invoice / demand instrument and UCC3 form are enclosed with this instrument.

ACCOUNT DOMAIN:
PAYOR:          SECRETARY OF THE TREASURY OF THE UNITED STATES  / U.S. SECRETARY OF TRANPORTATION
Bank            UNITED STATES DEPARTMENT OF THE TREASURY – Treasury Control System (offset payments)
TOCS, P.O. BOX 1686, BIRMINGHAM, AL 35201-1686

C100101C   A062736011A  44867077C

Seson Deon Teleo Adams, Secured Party – Creditor
 c/o Shanelle Washington, Notary Presenter
108 West 141st Street Apt 3G
New York, New York [ 10030 ] .

Document No. 100101
October 17, 2018

WILLIAM FERNANDEZ
d.b.a. ASSISTANT CITY SOCLICITOR –
CITY OF PHILADELPHIA
CASE ID: 180302451
PHILADELPHIA CITY HALL, CHESTNUT STREET ATTN: LEGAL DEPARTMENT
PHILADELPHIA, PA 19102-1595

And

FEDERAL RESERVE BANK OF ATLANTA
ATTN: LEGAL DEPARTMENT
1000 PEACHTREE ST. NE.
ATLANTA, GA 30309

BILLS OF EXCHANGE (BOE), NEGOTIABLE INSTRUMENTS & LEGAL TENDER

TO   OF PHILADELPHIA and others:

This document with attachments is not a commercial offer to contract, but is only a guide to help CITY OF PHILADELPHIA employees and FEDERAL RESERVE BANK OF ATLANTA employees working in the Discount Window and their attorneys to understand the laws and statutes behind an International Bills of Exchange under the UNCITRAL Convention submitted to obtain credit by monetizing these negotiable instruments. The question to be answered is what was actually tendered to discharge the debt incurred by the Trust/Drawee (private unincorporated national banking association) of the bill of exchange, which is not a check to be processed as such in that it is not drawn against an account, but to-be considered as cash security issued by the Authorized Representative of one of the sovereign people of the several states of the Union and a sovereign people of Pennsylvania who is a private banker?

**The one (1) International Bill of Exchange (hereinafter "IBOE") is a private Banker's Note received by CITY OF PHILADELPHIA, N.A. (hereinafter "COP") for SESON DEON TELEO ADAMS ESTATE TRUST /Payee for credit for credit on account CASE ID: 180302451 in the amount of $1,500,000.00.**

**IBOE are drawn pursuant to the UNCITRAL Convention (1988) with jurisdiction over the Drawer/Private Banker of the Negotiable Instrument who is the Holder-In-Due-Course, as Secured Party-Creditor of the Drawee a private trust. Trust is under the jurisdiction of the international court of THE HAGUE in Brussels, Belgium. If the IBOE is dishonored for some unforeseen reason COP and/or Fed will provide reason per a notice of dishonor pursuant to UCC 3-601 to 3-603 and return IBOE to the Indorser Seson Deon Teleo Adams See attached copy of UNCITRAL Convention or www.un.org/documents/ga/res/43/a43r165.htm**

Please read the descriptive language on the front of the IBOE before proceeding.

If COP with ABA Transit Routing # <u>061000146</u> forwards the IBOE to the Discount Window at the FEDERAL RESERVE BANK OF ATLANTA for monetizing for credit for credit pursuant to **12 CFR 201.108(b)** and **210.11** on ADAMSs Savings Account # <u>F44867077</u> all these documents should follow to prove the legality of this rarely used archaic method of creating credit funds pursuant to Public Policy as provided pursuant to many Federal statutes.

Title 12: Banks and Banking
PART 201—EXTENSIONS OF CREDIT BY FEDERAL RESERVE BANKS (REGULATION A)
Interpretations
**§ 201.108 <u>Obligations eligible as collateral for advances.</u>**
(a) Section 3(a) of Pub. L. 90–505, approved September 21, 1968, amended the eighth paragraph of section 13 of the Federal Reserve Act (12 U.S.C. 347) to authorize advances thereunder to member banks "secured by such obligations as are eligible for purchase under section 14(b) of this Act." The relevant part of such paragraph had previously referred only to "notes * * * eligible * * * for purchase", which the Board had construed as not including obligations generally regarded as securities. (See 1962 Federal Reserve Bulletin 690, §201.103(d).)
(b) <u>Under section 14(b) direct obligations of, and obligations fully guaranteed as to principal and interest by, the United States are eligible for purchase by Reserve Banks</u>. Such obligations include certificates issued by the trustees of Penn Central Transportation Co. that are fully guaranteed by the Secretary of Transportation. <u>Under section 14(b) direct obligations of, and obligations fully guaranteed as to principal and interest by, any agency of the United States are also eligible for purchase by Reserve Banks</u>.
Title 12: Banks and Banking
PART 210—COLLECTION OF CHECKS AND OTHER ITEMS BY FEDERAL RESERVE BANKS AND FUNDS TRANSFERS THROUGH FEDWIRE (REGULATION J)
Subpart A—Collection of Checks and Other Items By Federal Reserve Banks
**§ 210.11   Availability of proceeds of noncash items; time schedule.**
(a) *Availability of credit.* <u>A Reserve Bank shall give credit to the sender for the proceeds of a noncash item when it receives payment in actually and finally collected funds (or advice from another Reserve Bank of such payment to it). The amount of the item is counted as reserve for purposes of part 204 of this chapter (Regulation D) and becomes available for use by the sender when the Reserve Bank receives the payment or advice, except as provided in paragraph (b) of this section.</u>
(b) *Time schedule.* <u>A Reserve Bank may give credit for the proceeds of a noncash item subject to payment in actually and finally collected funds in accordance with a time schedule included in its operating circulars. The time schedule shall indicate when the proceeds of the noncash item will be counted as reserve for purposes of part 204 of this chapter (Regulation D) and become available for use by the sender. A Reserve Bank may, however, refuse at any time to permit the use of credit given by it for a noncash item for which the Reserve Bank has not yet received payment in actually and finally collected funds.</u>
(c) *Handling of payment.* <u>If a Reserve Bank receives, in payment for a noncash item, a bank draft or other form of payment that it elects to handle as a noncash item, the Reserve Bank shall neither count the proceeds as reserve for purposes of part 204 of this chapter (Regulation D) nor make the proceeds available for use until it receives payment in actually and finally collected funds.</u>

## <u>IBOE PROCESSED AS NON-CASH ITEM NOT AS A CHECK FOR COLLECTION AGAINST AN ACCOUNT</u>

The following will show no lawful grounds for a State/Federal commercial chartered bank under the Federal Reserve System to refuse to receive for deposit and monetization these IBOE, which are classified in banking by the term "non-cash item" pursuant to Federal statutes, as issued by a Private Banker, as a cash security by drawer's bank an Iowa/United States private trust, as a private unincorporated National Banking Association. The IBOE in United States dollars are for settlement of contract offer(s) or claim(s) of indebtedness and are an obligation of debt to the United States Government pursuant to (USC) United States Code Title 12 Section 411.

The IBOE do not fall under the (UCC) Uniform Commercial Code or Federal and State statutes governing checks, but under:

**12CFR229.2**
(u) <u>Noncash item means an item that would otherwise be a check, except that- -</u>
(1) A passbook, certificate, or other document is attached;
**(2)** It is <u>accompanied by special instructions, such as a request for special advise of payment or dishonor;</u>
(3) <u>It consists of more than a single thickness of paper</u>, except a check that qualifies for handling by automated check processing equipment; or
(4) <u>It has not been preprinted or post-encoded in magnetic ink with the routing number of the paying bank.</u>

Any instructions for settlement drawn from law governing procedure or time frames for checks is misapplied and would immediately invalidate the instrument as a matter of law if it ever had to be defended.

Unlike checks, which are paid by the receiving bank provisionally into a customer's bank account until shown to be no-good. Non-cash items are not required to be provisionally credited into the account if drawn on an account. <u>These IBOE however are not drawn on an account, so the funds are not provisional, but are actually considered as legal tender, as cash currency by being a Banker's Note with the document to be treated for processing not unlike a promissory note on a mortgage backed promissory note security for monetizing to create the credit.</u> The funds on the IBOE are derived by obligation of the United States to discharge a debt by providing the credit necessary under Federal Public Policy of (HJR) House Joint Resolution 192 (1933) when United States dollars are involved. In the case of a check, if you don't hear back in so many days it has been dishonored by the paying bank it is considered finally settled.

**CLAUSE. JUNE 5, 1933**
**H.J.192 73rd Cong. 1st Sess.**

Joint resolution to assure uniform value to the coins and currencies of the United States.
Whereas the holding of or dealing in gold affect the public interest, and therefore subject to proper regulation and restriction; and
Whereas the existing emergency has disclosed that provisions of obligations which purport to give the obligee a right to require payment in gold or a particular kind of coin or currency of the United States, or in an amount of money of the United States measured thereby, obstruct the power of the Congress to regulate the value of money of the United

States, and are inconsistent with the declared policy of the Congress to maintain at all times the equal power of every dollar, coined or issued by the United States, in the markets and in payment of debts. Now, therefore, be it

Resolved by the Senate and House of Representatives of the United States of America in Congress assembled. That (a) every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount of money of the United States measured thereby, is declared to be against public policy; and no such provision contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provisions is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any such coin or currency which at the time is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

(b) As used in the resolution, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term "coin or currency" means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations. SEC. 2. The last sentence of paragraph (1) of subsection (b) of section 43 of the Act entitled "An Act to relieve the existing national economic emergency by increasing agricultural purchasing power, to raise revenue for extraordinary expenses incurred by reason of such emergency, to provide emergency relief with respect to agricultural indebtedness, to provide for the orderly liquidation of joint-stock land banks, and for other purposes", approved May 12, 1933, is amended to read as follows:

"All coins and currencies of the United States (including Federal reserve notes andcirculating notes of Federal Reserve banks and national banking associations) hereunto and hereafter coined or issued, shall be legal tender for all debts, for public and private, public charges, taxes, duties, and dues, except gold coins, when below the standard weight and limit of tolerance provided by law for the single piece, shall be legal tender only at valuation in proportion to their actual weight." Approved June 55,1933, 4:30 p.m.

**Legal definition from Black's Law Dictionary Fourth Edition:**

**BILL OF EXCHANGE.** A "check" differs from a "bill of exchange" in that it is always drawn on a deposit whereas a bill is not. Wilson v. Buchenau D.C.Cal., 43 F.Supp. 272, 275.

But the law governing these items says:

**Title 12 Sect 210(9)**

(c) Noncash items. A Reserve Bank may require the paying or collecting bank to which it has presented or sent a noncash item to pay for the item in cash, but the Reserve Bank may permit payment by a debit to an account maintained or used by the paying or collecting bank on a Reserve Bank's books or by any of the following that is in a form acceptable to the collecting Reserve Bank: bank draft, transfer of funds or bank credit, or any other form of payment authorized by State law.

**12 CFR Sec 210**

Sec. 210.11 Availability of proceeds of noncash items; time schedule.

(a) Availability of credit. A Reserve Bank shall give credit to the sender for the proceeds of a noncash item when it receives payment in actually and finally collected funds (or advice from another Reserve Bank of such payment to it). The amount of the item is counted as reserve for purposes of part 204 of this chapter (Regulation D) and becomes available for use by the sender when the Reserve Bank receives the payment or advice, except as provided in paragraph (b) of this section.

(b) Time schedule. A Reserve Bank may give credit for the proceeds of a noncash item subject to payment in actually and finally collected funds in accordance with a time schedule included in its operating circulars. The time schedule shall indicate when the proceeds of the noncash item will be counted as reserve for purposes of part 204 of this chapter (Regulation D) and become available for use by the sender. A Reserve Bank may, however, refuse at any time to permit the use of credit given by it for a noncash item for which the Reserve Bank has not yet received payment in actually and finally collected funds.

Pre settlement credit is optional not a lawful right of such an instrument. The problem is as we know, the item cannot be paid in anything that the surety for the United States is carrying the obligation to make good so there is nothing to pay it with it can only be honored as an obligation of the United States as Federal Reserve Notes (FRNs) are. Likewise FRNs are debt instruments not payable in anything of value either.

Federal reserve notes are not lawful money but legal tender under color of law according to the Federal Reserve Act of 1913 and the attached court Minnesota court case of JUSTICE V. MAHONEY RE: First National Bank of Montgomery vs. Jerome Daly (1968) - See: www.worldnewsstand.net/money/the-mahoney-case.html and MARTIN V. MAHONEY JUSTICE OF THE PEACE CREDIT RIVER TOWNSHIP SCOTT COUNTY, MINNESOTA – See: http://usa-the-republic.com/banks/banks_1.html

So if the bank ever does send it for collection withholding credit until paid in actually and finally collected funds it will never happen and the creditor could lawfully sue for nonpayment with the IBOE appearing for all intents and purposes to be no-good.

The instrument clearly is not offering payment in money in the normal sense but is to be accepted as an obligation of the United States for the holder's obligations to be adjusted and setoff against it would normally cease to be a negotiable instrument under commercial law. **This IBOE however is money pursuant to:**

## UCC 1-201. General Definitions.

(24) **"Money"** means a medium of exchange authorized or adopted by a domestic or foreign government and includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more nations.

A check is not money as defined in the attached North Dakota Supreme Court Decision of Midwest Federal Savings & Loan Association of Minot v. Kouba, 335 N.W.2d 780 (N.D. 1983). Midwest Federal relies upon two sections, of the Uniform Commercial Code [U.C.C.] to defend its refusal to accept the check offered by Mr. Kouba. U.C.C. § 3-107(1) [codified as § 41-03-07(1), N.D.C.C.] provides that negotiable instruments are payable in "money". "Money", for the purposes of the Uniform Commercial Code, is defined in UCC § 1-201(24) [codified as Â§ 41-01-11(24), N.D.C.C,] as a medium of exchange authorized or adopted by a, domestic or foreign government as a part of its currency". A check is not included in this definition of money. See Anderson, Uniform Commercial Code § 1-201:363 (3d ed.1981).

This type of IBOE is to be accepted and considered as money equal to cash legal tender for which a check is not. A check must always be drawn on an account. Bills of exchange (hereinafter "BOE") are not to be always considered to be like and processed for collection like checks all the time. There are exceptions which the IBOE to be processed fall under the exception. BOE can fall under either the jurisdiction of domestic or international courts. The IBOE fall under the UNCITRAL Convention (1988) with the laws governing the IBOE stated under the title heading of said commercial instrument. See attached document of UNCITRAL Convention statutes.

## UCC 3-104. NEGOTIABLE INSTRUMENT.

(a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money,

This of course means also there can be no conditions in it; otherwise it is an offer of performance not a negotiable instrument.

Remedy instruments are not to be tendered therefore as 'negotiable instruments' by the legal meaning of this term but are themselves legal tender and payment in themselves.

Here is how to describe the IBOE that your bank has received for deposit:

What is tendered in discharge of this debt from a contract offer is a statutory legal tender obligation of THE UNITED STATES, and is issued in accordance with (See the following listed statutes below:) U.C.C. 4-105, 12 CFR 229.2 (See 1st paragraph of this document) and 210.2, 12 USC 1813, 31 USC 3123, 31 USC 462(392); 463 and 5103 and HJR-192 (1933); which establish and provide for its issuance as "Public Policy" in remedy for discharge of equity interest recovery on that portion of the public debt to its Principals, and Sureties bearing the Obligations of THE UNITED STATES, and is fully tenderable, negotiable and exchangeable in commerce as a legal tender obligation of the United States.

**U.C.C. - ARTICLE 4 - BANK DEPOSITS AND COLLECTIONS**
**PART 1. GENERAL PROVISIONS AND DEFINITIONS**
**§ 4-105. "BANK"; "DEPOSITARY BANK"; "PAYOR BANK"; "INTERMEDIARY BANK"; "COLLECTING BANK"; "PRESENTING BANK".**
**In this Article :**
- (1) "Bank" means a person engaged in the business of banking, including a savings bank, savings and loan association, credit union, or trust company.
- (2) "Depositary bank" means the first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter;
- (3) "Payor bank" means a bank that is the drawee of a draft;
- (4) "Intermediary bank" means a bank to which an item is transferred in course of collection except the depositary or payor bank;
- (5) "Collecting bank" means a bank handling an item for collection except the payor bank;
- (6) "Presenting bank" means a bank presenting an item except a payor bank.

**Regulation J**
**Subpart A--Collection of Checks and Other Items By Federal Reserve Banks**

**Sec. 210.2 Definitions.**

As used in this subpart, unless the context otherwise requires:
(g) *Cash item* means —
(2) Any other item payable on demand and collectible at par that the Reserve Bank that receives the item is willing to accept as a cash item. *Cash item* does not include a returned check.
(h) *Check* means a draft, as defined in the Uniform Commercial Code, that is drawn on a bank and payable on demand. Check as defined in 12 CFR 229.2(k) means an item defined as a check in 12 CFR 229.2(k) for purposes of subparts C and D of part 229.
(i) Item and electronic item.
(1) Item means--
(i) An instrument or a promise or order to pay money, whether negotiable or not, that is--
(A) Payable in a Federal Reserve District \1\ (District);
------------------------------------------------------------------
(B) Sent by a sender to a Reserve Bank for handling under this subpart; and
(C) Collectible in funds acceptable to the Reserve Bank of the District in which the instrument is payable; and
(k) *Noncash item* means an item that a receiving Reserve Bank classifies in its operating circulars as requiring special handling. The term also means an item normally received as a

**cash item if a Reserve Bank decides that special conditions require that it handle the item as a noncash item.**

---

USC>TITLE 12 > CHAPTER 16 > § 1813

§ 1813. Definitions

Release date: 2004-03-18

As used in this chapter—
(a) **Definitions of Bank and Related Terms.—**
(1) **Bank.—** The term "bank"—
 (e) **Definitions Relating to Nonmember Banks.—**
(1) **National nonmember bank.—** The term "national nonmember bank" means any national bank which—
(A) is located in any territory of the United States, Puerto Rico, Guam, American Samoa, the Virgin Islands, or the Northern Mariana Islands; and
(B) is not a member of the Federal Reserve System.
(2) **State nonmember bank.—** The term "State nonmember bank" means any State bank which is not a member of the Federal Reserve System.
(1) The term "deposit" means—
 (3) **money** received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association, in the usual course of business for a special or specific purpose, regardless of the legal relationship thereby established, including without being limited to, escrow funds, funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association, funds deposited by a debtor to meet maturing obligations, funds deposited as advance payment on subscriptions to United States Government securities, funds held for distribution or purchase of securities, funds held to meet its acceptances or letters of credit, and withheld taxes: Provided, That there shall not be included funds which are received by the bank or savings association for immediate application to the reduction of an indebtedness to the receiving bank or savings association, or under condition that the receipt thereof immediately reduces or extinguishes such an indebtedness.
 (5) such other obligations of a bank or savings association as the Board of Directors, after consultation with the Comptroller of the Currency, Director of the Office of Thrift Supervision, and the Board of Governors of the Federal Reserve System, shall

find and prescribe by regulation to be deposit liabilities by
general usage, except that the following shall not be a deposit
for any of the purposes of this chapter or be included as part
of the total deposits or of an insured deposit:
(A) any obligation of a depository institution which is carried
on the books and records of an office of such bank or savings
association located outside of any State, unless—
  (i)   such obligation would be a deposit if it were carried on the books and records of the
depository institution, and would be payable at, an office located in any State; and
  (ii)   the contract evidencing the obligation provides by express terms, and not by
implication, for payment at an office of the depository institution located in any State;
    (v)  **Violation.**— The term "violation" includes any action (alone or with another or
others) for or toward causing, bringing about, participating in, counseling, or aiding or abetting
a violation.

NOTES:

**Source**
(Pub. L. 97–258, Sept. 13, 1982, 96 Stat. 945.)

Historical and Revision Notes

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 3123(a) | 31:731. | R.S. § 3693. |
| | 31:753(d)(2d sentence). | Sept. 24, 1917, ch. 56, 40 Stat. 288, § 18(d)(2d sentence); added Mar. 3, 1919, ch. 100, § 1, 40 Stat. 1310. |
| | 31:768(words before semicolon). | Feb. 4, 1910, ch. 25, § 1(words before semicolon), 36 Stat. 192. |
| 3123(b) | 31:732. | R.S. § 3698. |
| | 31:733(words before semicolon). | R.S. § 3699(words before semicolon); restated Jan. 30, 1934, ch. 6, § 9, 48 Stat. 341. |
| 3123(c) | 31:766. | Sept. 24, 1917, ch. 56, 40 Stat. 288, § 16; added Apr. 4, 1918, ch. 44, § 6, 40 |

| | | Stat. 505; Nov. 13, 1966, Pub. L. 89-809, § 401, 80 Stat. 1590. |
|---|---|---|

In subsection (a), the words "legal tender" are substituted for "in coin or its equivalent" in 31:731 and "gold coin of the present standard of value" in section 1 of the Act of Feb. 1, 1910, and section 18 (d)(2d sentence) of the Second Liberty Bond Act because of section 1 of the Act of June 5, 1933 (ch. 48, 48 Stat. 113). The words **"obligations of the Government"** are substituted for 31:731(1st sentence 18th–last words), "thereof" in 31:753(d), and 31:768(1st 17 words) for clarity and consistency and to eliminate unnecessary words. The text of 31:731(last sentence) is omitted as executed. In subsection (b), the words "cause to be", "out of any money in the Treasury not otherwise appropriated", "falling", "any portion of", and "authorized by law" in 31:732 are omitted as surplus. The text of 31:733(words between semicolon and colon) is omitted as unnecessary because of chapter 53 of the revised title. The text of 31:733(words after colon) **is omitted as superseded by the Bretton Woods Agreement Act** (22 U.S.C. 286 et seq.) and sections 6 and 9 of the Act of Oct. 19, 1976 (Pub. L. 94–564, 90 Stat. 2661), repealing 31:449 **that provided for parity of the dollar on terms of gold and special drawing rights.**
In subsection (c), the word "currency" is substituted for "moneys" for clarity and because of 1:1. . "money or .
In subsection (c)(1), the words "but not also in United States gold coin" and "in such manner" are omitted as surplus.
In subsection (c)(2), the words "dollar" before "amount", and "value", are added for clarity. The words "estimated by the Director of the Mint, and" are omitted because of the source provisions restated in section 321(c) of the revised title. The word "published" is substituted for "proclaimed" for clarity.
In subsection (c)(3), the words "as he may determine" are omitted as surplus.

**Congress has said all Coins and Currencies shall be a legal tender, and a tender in any Coins and Currencies shall, dollar for dollar at their nominal value, satisfy that debt** (31 USC 462(392); 463).

**Gold Notes**
Source: Encyclopedia of Banking & Finance (9h Edition) by Charles J Woelfel

Notes payable in gold coin of the present standard of weight and fineness, if demanded, in the same manner as GOLD BONDS.
The Joint Resolution of Congress of June 5, 1933, which was upheld by the U.S. Supreme Court in the GOLD CLAUSE CASES, declared it to be against public policy for any obligation to give the obligee the right to require payment in gold or a particular kind of coin or currency. All obligations were thereby made dischargeable by payment in legal tender, which this Joint Resolution and the Emergency Banking Act of 1933 provided should be "all coins and currencies of the United States."
Public Law 89-81 (the Coinage Act of 1965), approved July 23, 1965, repealed the provisions of law formerly contained in Section 43(b)(1) of the Act of May 12, 1933 as amended (31 U.S.C. 462), popularly known as the AAA Farm Relief and Inflation Act, with respect to the legal tender status of coins and currencies of the U.S., including Federal Reserve notes, but added a new provision of law to the same effect, codified in 31 U.S.C. 392.

§ 5103. Legal tender

Release date: 2003-05-15

United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for debts.

**To my knowledge, this is a statutory remedy for equity interest recovery due the principles and sureties of the United States for lawful discharge of debts in commerce in conjunction with U.S. obligations to that portion of the public debt to these it is intended to reduce.**

Those who constitute an association nationwide of private, unincorporated people engaged in the business of banking to issue notes against these obligations of the United States due them; whose private property is at risk to collateralize the government's debt and currency, by legal definitions, a "national banking association"; such notes, issued against these obligations of the United States to [that part of] the public debt due its Principles and Sureties; such notes are required by law to be accepted as "legal tender" of payment for all debts public and private, and are defined in law as "obligations of the United States", on the same category with Federal Reserve Notes.

One of the purposes for enacting the Federal Reserve Act was: (3) to authorize "hypothecation" of obligations including "United States bonds or other securities which Federal Reserve Banks are authorized to hold" under Section 14(a);

12 USC, ch. 6, 38 Stat. 251 Sect 14(a)

The term "hypothecation" as stated in Section 14(a) of the Act is defined:

"1. Banking. Offer of stocks, bonds, or other assets owned by a party other than the borrower as collateral for a loan, without transferring title. If the borrower turns the property over to the lender who holds it for safekeeping, the action is referred to as a pledge. If the borrower retains possession, but gives the lender the right to sell the property in event of default, it is a true hypothecation.
2. Securities. The pledging of negotiable securities to collateralize a broker's margin loan. Of the broker pledges the same securities to a bank as collateral for a broker's loan, the process is referred to as rehypothecation."

[Dictionary of Banking Terms, Fitch, pg. 228 (1997)]

As seen from the definitions, in hypothecation there is equitable risk to the actual owner.
Section 16 of the current Federal Reserve Act, which is codified at 12 USC 411, declares the "Federal Reserve Notes" are "obligations of the United States".

So we see the "full faith and credit" of the United States: which is the substance of the American citizenry: their real property, wealth, assets and productivity that belongs to them, is thereby hypothecated and rehypothecated by the United States to its obligations as well as to the Federal Reserve for the issuance and backing of Federal Reserve Notes as legal tender "for all taxes, customs, and other public dues".

TITLE 12 CHAPTER 3 SUBCHAPTER XII Sec. 411.

Sec. 411. – Issuance to reserve banks; nature of obligation; redemption
Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues.

The commerce and credit of the nation continues on today under financial reorganization as it has since 1933, still backed by the assets and wealth of the American citizenry: at risk for the government's obligations and currency.

Under the 14th amendment and numerous Supreme Court precedents, as well as in equity, Private property cannot be taken or pledged for public use without just compensation, or due process of law. The United States cannot pledge or risk the property and wealth of its private citizens, for any government purpose without legally providing them remedy to recover what is due them on their risk.

This principle is so well established in English common law and in the history of American jurisprudence it hardly needs to be stated.

The 14th amendment provides: "no person shall be deprived of...property without due process of law".
And Courts have long ruled to have one's property legally held as collateral or surety for a debt even when he still owns it and still has it is to deprive him of it since it is at risk and could be lost for the debt at any time.

The United States Supreme Court said, in United States v. Russell [13 Wall, 623, 627] "Private property, the Constitution provides, shall not be taken for public use without just compensation."
The right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." Memphis & L. R. R. Co. v. Dow, 120 U.S. 287, 301-302 (1887).

The rights of a surety to recovery on his risk or loss when standing for the debts of another was reaffirmed again as late as 1962 in Pearlman v. Reliance Ins. Co., 371 U.S. 132 when the Court said:
..."sureties compelled to pay debts for their principal have been deemed entitled to reimbursement, even without a contractual promise...And probably there are few doctrines better established..."

Black's Law Dictionary 5th Edition, defines "surety":
"One who undertakes to pay or to do any other act in event that his principal fails therein. Everyone who incurs a liability in person or estate for the benefit of another, without sharing in the consideration, stands in the position of a "surety."

So we see, Constitutionally and in the laws of equity, the United States could not borrow or pledge the property and wealth of its private citizens, put at risk as collateral for its currency and credit without legally providing them equitable remedy for recovery of what is due them.

The United States government, of course, did not violate the law or the constitution in this way, in order to collateralize its financial reorganization, but did, in fact, provide such a legal remedy so that it has been able to continue on since 1933 to hypothecate the private wealth and assets of those classes of persons by whom it is owned at the risk of backing the government's obligations and currency, by their implied consent, through the government having provided such remedy, as defined and codified above, for recovery of what is due them on their assets and wealth at risk.

The provisions for this are found in the same act of "Public Policy" HJR-192, Public Law 73-10 that suspended the gold standard for our currency, abrogated the right to demand payment in gold, and made Federal reserve notes for the first time legal tender, "backed by the substance or "credit of the nation".

All US currency since that time is only credit against the real property, wealth and assets belonging to the private sovereign American people, taken and/or 'pledged' by THE UNITED STATES to its secondary creditors (shareholders of the FEDERAL RESERVE) as security for its obligations. Consequently, those backing the nation's credit and currency could not recover what was due them by anything drawn on Federal Reserve notes without expanding their risk and obligation to their own selves. Any recovery payments backed by this currency would only increase the public debt its citizens were collateral for, which an equitable remedy was intended to reduce, and in equity would not satisfy anything. And there was no longer actual money of substance to pay anybody.

Further, there are other serious limitations on our present system. Since the institution of these events, for practical purposes of commercial exchange, there has been no actual money in circulation by which debt owed from one party to another can actually be repaid.

Federal Reserve Notes, although made legal tender for all debts public and private in the reorganization, can only discharge a debt. Debt must be "paid" with value or substance (i.e. gold, silver, barter or a commodity).
For this reason HJR-192 (1933), which established the "public policy" of our current monetary system, repeatedly uses the technical term of "discharge" in conjunction with "payment" in laying out public policy for the new system.
A debt currency system cannot pay debt.

So from that time to the present, commerce in the corporate UNITED STATES and among sub-corporate subject entities has had only debt note instruments by which debt can be discharged and transferred in different forms. The unpaid debt, created and/or expanded by the plan now carries a public liability for collection in that when debt is discharged with debt instruments, (i.e.

Federal Reserve Notes included), by our commerce, debt is inadvertently being expanded instead of being cancelled, thus increasing the pubic debt. A situation potentially fatal to any economy.

It seems Congress and government officials who orchestrated the public laws and regulations that made the financial reorganization anticipated the long term effect of a debt based financial system which many in government feared, and which we face today in servicing the interest on trillions upon trillions of dollars in US Corporate public debt and in this same act made provision not only for the recovery remedy to satisfy equity to its Sureties, but to simultaneously resolve this problem as well.

Since it is, in fact, the real property, wealth and assets of that class of persons that is the substance backing all the other obligations, currency and credit of THE UNITED STATES and such currencies could not be used to reduce its obligations for equity interest recovery to these Principals and Sureties, HJR-192 further made the "notes of national banks" and "national banking associations" on a par with its other currency and legal tender obligations.

Now TITLE 31, SUBTITLE IV, CHAPTER 51, SUBCHAPTER I, Sec. 5103. says,
**Legal tender** – <u>United States coins and currency (including Federal reserve notes and circulating notes of</u> Federal reserve banks and <u>national banks) are legal tender for all debts, public charges, taxes, and dues.</u> (emphasis added)

But this official definition for 'legal tender' was first established in HJR-192 (1933) in the same act that made federal reserve notes and notes of national banking associations legal tender.

Public Policy HJR-192
JOINT RESOLUTION TO SUSPEND THE GOLD
STANDARD AND ABROBATE THE GOLD CLAUSE,
JUNE 5, 1933
H.J. Res. 192, 73rd Cong., 1st Session
    <u>Joint resolution to assure uniform value to the coins and currencies of the United States.</u>

(b) As used in this resolution, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations.
"All coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations) heretofore or hereafter coined or issued, shall be legal tender for all debts, for public and private, public charges, taxes, duties, and dues,"
[USC Title 12.221 Definitions – <u>"The terms "national banking" and "national banking association"...shall be held to be synonymous and interchangeable."</u>]
<u>"notes of national banks" or "national banking associations" have continuously been maintained in the official definition of legal tender since June 5, 1933 to the present day, when the term had never been used to define "currency" or "legal tender" before that.</u>

Prior to 1933 the forms of currency in use that were legal tender were many and varied:

-United States Gold Certificates – United States Notes – Treasury Notes – Interest bearing notes – Gold Coins of United States – Standard silver dollars – Subsidiary silver coins – minor coins – Commemorative Coins –

but the list did not include federal reserve notes or notes of national banks or national banking associations despite the fact national bank notes were a common medium of exchange or "currency" and had been, almost since the founding of our banking system and were backed by United States bonds or other securities on deposit for the bank with the US Treasury.

Further, from the time of their inclusion in the definition they have been phased out until presently all provisions in the United States Code pertaining to incorporated federally chartered National Banking institutions issuing, redeeming, replacing and circulating notes have all been repealed: USC TITLE 12 CHAPTER 2 – NATIONAL BANKS

SUBCHAPTER V – OBTAINING AND ISSUING CIRCULATING NOTES

· Sec. 101 to 110. Repealed. Pub. L. 103-325, title VI, Sec. 602e5-11, f2-4A, g9, Sept. 23, 1994, 108 Stat. 2292. 2294

SUBCHAPTER VI – REDEMPTION AND REPLACEMENT OF CIRCULATING NOTES

· Sec. 121. Repealed. Pub. L. 103-325, title VI, Sec. 602f4B, Sept. 23, 1994, 108 Stat. 2292
· Sec. 121a. Redemption of notes unidentifiable as to bank of issue
· Sec. 122. Repealed. Pub. L. 97-258, Sec. 5b, Sept. 13, 1982, 96 Stat.1068
· Sec. 122a. Redeemed notes of unidentifiable issue; funds charged against
· Sec. 123 to 126. Repealed. Pub. L. 103-325, title VI, Sec. 602e12, 13, f4C, 6, Sept. 23, 1994, 108 Stat. 2292, 2293
· Sec. 127. Repealed. Pub. L. 89-554, Sec 8a. Sept. 6, 1966, 80 Stat. 633

As stated in "Money and Banking", 4th edition, by David H. Friedman, publ. By the American Bankers Association, page 78, "Today commercial banks no longer issue currency,...."

It is clear, federally incorporated banking institutions subject to the restrictions and repealed provisions of Title 12, are not those primarily referred to maintained in the current definition of "legal tender".

The legal statutory and professional definitions of "bank", "banking", and "banker" used in the United States Code and Code of Federal Regulations are not those commonly understood for these terms and have made the statutory definitions of "Bank" accordingly:
UCC 4-105 PART 1 "Bank" means a person engaged in the business of banking."
12CFR Sec. 229.2 Definitions (e) Bank means – "the term bank also includes any person engaged in the business of banking,"
12CFR Sec. 210.2 Definitions. (d) "Bank means any person engaged in the business of banking."

USC Title 12 Sec. 1813. – Definitions of Bank and Related Terms. – (1) Bank – The term "bank" – (A) "means any national bank, State bank, and District bank, and any Federal branch and insured branch;"

Black's Law Dictionary, 5th Edition, page 133, defines a "Banker" as, "In general sense, person that engages in business of banking. In narrower meaning, a private person ......; who is engaged

in the business of banking without being incorporated. Under some statutes, an individual banker, as distinguished from a "private banker", is a person who, having compiled with the statutory requirements, has received authority from the state to engage in the business of banking, while a private banker is a person engaged in banking without having any special privileges or authority from the state."

"Banking" – Is partly and optionally defined as "The business of issuing notes for circulation ......, negotiating bills."

Black's Law Dictionary, 5th Edition, page 133, defines "Banking":

"The business of banking, as defined by law and custom, consists in the issue of notes ......intended to circulate as money ......

And defines a "Banker's Note" as:

"A commercial instrument resembling a bank note in every particular except that it is given by a private banker or unincorporated banking institution."

Federal Statute does not specifically define "national bank" and "national bank association" in those sections where these uses are legislated on to exclude a private banker or unincorporated banking institution.

It does define these terms to the exclusion of such persons in the chapters and sections where the issue and circulation of notes by national banks has been repealed or forbidden.

"In the absence of a statutory definition, courts give terms their ordinary meaning." Bass, Terri L. v. Stolper, Koritzinsky, 111 F.3d 1325, 7th Cir. Apps. (1996)

As the U.S. Supreme Court noted, "We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." See, e.g., United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241-242 (1989); United States v. Goldenberg, 168 U.S. 95, 102-103 (1897);

"The legislative purpose is expressed by the ordinary meaning of the words used." Richards v. United States, 369 U.S.1 (1962).

Therefore, as noted above, the legal definitions relating to 'legal tender' have been written by Congress and maintained as such to be both exclusive, where necessary, and inclusive, where appropriate, to provide in its statutory definitions of legal tender for the inclusion of all those, who by definition of private, unincorporated persons engaged in the business of banking to issue notes against the obligations of the United States for recovery on their risk, whose private assets and property are being used to collateralize the obligations of the United States since 1933, as collectively and nationally constituting a legal class of persons being a "national bank" or "national banking association" with the right to issue such notes against the Obligations of THE UNITED STATES for equity interest recovery due and accrued to these Principals and Sureties of the United States backing the obligations of US currency and credit as a means for the legal tender discharge of lawful debts in commerce and as remedy due them in conjunction

<u>with US obligations to the discharge of that portion of the public debt, which is provided for in the present financial reorganization still in effect and ongoing since 1933.</u> [12 USC 411, 18 USC 8, 31 USC 5118, 3123. with rights protected under the 14th Amendment of the United States Constitution, by the U.S. Supreme Court in United States v. Russell (13 Wall, 623, 627), Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136, 137 (1962), The United States v. Hooe, 3 Cranch, U.S. 73 (1805), and in conformity with the U.S. Supreme Court 79 U.S. 287 (1870), 172 U.S. 48 (1898), and as confirmed at 307 U.S. 247 (1939).]

TITLE 12 > CHAPTER 3 > SUBCHAPTER XII > § 411

§ 411. Issuance to reserve banks; nature of obligation; redemption

**Release date: 2004-03-18**

<u>Federal reserve notes</u>, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said **notes shall be obligations of the United States** and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in **lawful money** on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

TITLE 18 > PART I > CHAPTER 1 > § 8

§ 8. Obligation or other security of the United States defined

*Release date: 2004-08-06*

The term "<u>obligation</u> or other security <u>of the United States" includes all</u> bonds, certificates of <u>indebtedness, national bank currency, Federal Reserve notes,</u> Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, <u>bills,</u> checks, or <u>drafts for money, drawn by or upon authorized officers of the United States,</u> stamps <u>and other representatives of value, of whatever denomination,</u> issued under any Act of Congress, and canceled United States stamps.

HJR-192 further declared ...... "every provision ......which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency .... is declared to be against Public Policy; and no such provision shall be .... is declared to be against Public Policy; and no such provision shall be .... made with respect to any obligation hereafter incurred.

Making way for discharge and recovery on US Corporate pubic debt due the Principals and Sureties of THE UNITED STATES providing as "public policy" for the discharge of "every obligation", "including every obligation of and to THE UNITED STATES", "dollar for dollar", allowing those backing the US financial reorganization to recover on it by discharging an obligation they owed to THE UNITED STATES or its sub-corporate entitles, against that same amount of obligation of THE UNITED STATES owed to them; thus providing the remedy for the discharge and orderly recovery of equity interest on US Corporate public debt due the Sureties, Principals, and Holders of THE UNITED STATES, discharging that portion of the public debt without expansion of credit, debt or obligation on THE UNITED STATES of these it prime-creditors it was intended to satisfy equitable remedy to, but gaining for each bearer of such note, discharge of obligation equivalent in value 'dollar for dollar' to any and all "lawful money of the United States".

Those who constitute an association nationwide of private, unincorporated persons engaged in the business of banking to issue notes against these obligations of the United States due them; whose private property is at risk to collateralize the government's debt and currency, by legal definitions, a "national banking association"; such notes, issued against these obligations of the United States to that part of the public debt due its Principals and Sureties are required by law to be accepted as "legal tender" of payment for all debts public, and private, and, as we have seen, are defined in law as "obligations of the United States", on the same par and category with Federal reserve notes and other currency and legal tender obligations.

The instrument(s) tendered by one of the sovereign people of the several states of the Union and a sovereign people of Iowa in discharge of an accepted debt is an "Obligation of THE UNITED STATES," under Title 18 USC Sect. 8, representing as the definition provides a "certificate of indebtedness ... drawn upon an authorized officer of the United States," (in this case the Secretary of the Treasury) "issued under an Act of Congress" in this case Public Law 73-10, HJR-192 of 1933 and Title 31 USC §3123), which establish this and provide for its issuance as "Public Policy" in remedy for discharge of equity interest recovery on the public debt to its Principals, and Sureties who are bearing the Obligations of THE UNITED STATES.

To my knowledge, this is a very archaic and little used and understood statutory remedy for equity interest recovery due the principles and sureties of the United States for discharge of lawful debts in commerce in conjunction with US obligations to the public debt. What was tendered in discharge of this debt is a statutory legal tender obligation of THE UNITED STATES, and is issued in accordance with UCC§4-105, 12 CFR §§229.2 and 210.2, 12 USC §1813, 31 USC §392 and §3123 and §5103 and HJR-192 (1933) which establish and provide for its issuance as "Public Policy" in remedy for discharge of equity interest recovery on that portion of the public debt to its Principals, and Sureties bearing the Obligations of THE UNITED STATES, and may very well prove to be "legal tender" once accepted by the United States Treasury.

Assignment of any commercial offer in United States Dollars is ultimately a UNITED STATES Government debt obligation pursuant to 18 USC §8 and 12 USC §411 for commitment to guarantee obligations of the UNITED STATES SECRETARY OF TRANSPORTATION Trustee/Receiver of the Public Debt for Vessel/Drawee (Trust/Bank) (Ens Legis United States citizen and U.S. Trust) owned by the Ship Owner/Drawer pursuant to 46 USC §1247(a), 31 USC §§5118 and 5119 at par, and in accord with laws from first paragraph above.

TITLE 46, APPENDIX App. > CHAPTER 27 > SUBCHAPTER IX > § 1247

§ 1247. Appointment of Secretary as trustee or receiver; operation of vessels under court orders; payment of operating costs; claims against corporation

**Release date: 2003-8-1**

(a) Notwithstanding any other provision of law, in any proceeding in a bankruptcy, equity, or admiralty court of the United States in which a receiver or trustee may be appointed for any corporation engaged in the operation of one or more vessels of United States registry between the United States and any foreign country, upon which the United States holds mortgages, the court, upon finding that it will inure to the advantage of the estate and the parties in interest and that it will tend to further the purposes of this chapter, may constitute and appoint the Secretary of Transportation as sole trustee or receiver, subject to the directions and orders of the court, and in any such proceeding the appointment of any person other than the Secretary as trustee or receiver shall become effective upon the ratification thereof by the Secretary without a hearing, unless the Secretary shall deem a hearing necessary. In no such proceeding shall the Secretary be constituted as trustee or receiver without the Secretary's express consent.

USC TITLE 31 - MONEY AND FINANCE 01/22/02
CHAPTER 51
    Sect 511
Sec. 5118. Gold clauses and consent to sue

-STATUTE-
(a) In this section -
(1) ''gold clause'' means a provision in or related to an obligation alleging to give the obligee a right to require payment in -
(A) gold;
(B) a particular United States coin or currency; or
(C) United States money measured in gold or a particular United States coin or currency.

(2) ''public debt obligation'' means a domestic obligation issued or guaranteed by the United States Government to repay money or interest.
(b) The United States Government may not pay out any gold coin. A person lawfully holding United States coins and currency may present the coins and currency to the Secretary of the Treasury for exchange (dollar for dollar) for other United States coins and currency (other than gold and silver coins) that may be lawfully held. The Secretary shall make the exchange under regulations prescribed by the Secretary.
(c)(1) The Government withdraws its consent given to anyone to assert against the Government, its agencies, or its officers, employees, or agents, a claim —
(A) on a gold clause public debt obligation or interest on the obligation;
(B) for United States coins or currency; or
(C) arising out of the surrender, requisition, seizure, or acquisition of United States coins or currency, gold, or silver involving the effect or validity of a change in the metallic content of the dollar or in a regulation about the value of money.
(2) Paragraph (1) of this subsection does not apply to a proceeding in which no claim is made for payment or credit in an amount greater than the face or nominal value in dollars of public debt obligations or United States coins or currency involved in the proceeding.
(3) Except when consent is not withdrawn under this subsection, an amount appropriated for payment on public debt obligations and for United States coins and currency may be expended only dollar for dollar.
(d)(1) In this subsection, ''obligation'' means any obligation (except United States currency) payable in United States money.
(2) An obligation issued containing a gold clause or governed by a gold clause is discharged on payment (dollar for dollar) in United States coin or currency that is legal tender at the time of payment. This paragraph does not apply to an obligation issued after October 27, 1977.

**USC TITLE 31 — MONEY AND FINANCE 01/22/02**
**CHAPTER 51**
   **Sect 511**
Sec. 5119. Redemption and cancellation of currency

-STATUTE-
(a) Except to the extent authorized in regulations the Secretary of the Treasury prescribes with the approval of the President, the

Secretary may not redeem United States currency (including Federal reserve notes and circulating notes of Federal reserve banks and <u>national banks</u>) in gold. However, the Secretary shall redeem gold certificates owned by the Federal reserve banks at times and in amounts the Secretary decides are necessary to maintain the equal purchasing power of each kind of United States currency. When redemption in gold is authorized, the redemption may be made only in gold bullion bearing the stamp of a United States mint or assay office in an amount equal at the time of redemption to the currency presented for redemption.

(b) (1) Except as provided in subsection (c)(1) of this section, the following are public debts bearing no interest:

(A) gold certificates issued before January 30, 1934.

(B) silver certificates.

(C) notes issued under the Act of July 14, 1890 (ch. 708, 26 Stat. 289).

(D) Federal Reserve notes for which payment was made under section 4 of the Old Series Currency Adjustment Act.

(E) United States currency notes, including those issued under section 1 of the Act of February 25, 1862 (ch. 33, 12 Stat. 345), the Act of July 11, 1862 (ch. 142, 12 Stat. 532), the resolution of January 17, 1863 (P.R. 9; 12 Stat. 822), section 2 of the Act of March 3, 1863 (ch. 73, 12 Stat. 710), or section 5115 of this title.

(2) Redemption, cancellation, and destruction of currency. – The Secretary shall –

(A) redeem any currency described in paragraph (1) from the general fund of the Treasury upon presentment to the Secretary; and

(B) cancel and destroy such currency upon redemption. The Secretary shall not be required to reissue United States currency notes upon redemption.

(c) (1) The Secretary may determine the amount of the following United States currency that will not be presented for redemption because the currency has been destroyed or irretrievably lost:

(A) circulating notes of Federal reserve banks and national banks issued before July 1, 1929, for which the United States Government has assumed liability.

(B) outstanding currency referred to in subsection (b)(1) of this section.

(2) When the Secretary makes a determination under this subsection, the Secretary shall reduce the amount of that currency outstanding by the amount the Secretary determines will not be redeemed and credit the appropriate receipt account.

(d) To provide a historical collection of United States currency, the

Secretary may withhold from cancellation and destruction and transfer to a special account one piece of each design, issue, or series of each denomination of each kind of currency (including circulating notes of Federal reserve banks and <u>national banks</u>) after redemption. The Secretary may make appropriate entries in Treasury accounts because of the transfers.

The Holder In Due Course of perfected priority exempt pre-paid account is the Drawer, as filed with Iowa Secretary of State's Office and viewable on Iowa Secretary of State's Official Website in accordance with the Terms of the Indemnity Clause contained within the Commercial Security Agreement of UCC3 File # P492025.

In the remote possibility settlement for credit becomes necessary the U.S. SECRETARY OF THE TREASURY would be the party ultimately responsible to adjust accounts for credit by use of Drawer's private exempt pre-paid account publicly perfected and recorded.

### LEGAL DEFINITIONS CITING WINNING COURT CASES

**ACCEPTOR.** The person who accepts a bill of exchange, (generally the drawee,) or who engages to be primarily responsible for its payment. Nissenbaum v. State, 38 Ga.App. 253, 143 S.E. 776, 777.

**ASSOCIATION.** An unincorporated society; a body of persons united and acting together without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise. Clark v. Grand Lodge of Brotherhood of Railroad Trainmen, 328 Mo. 1084, 43 S.W.2d 404, 408. It is not a legal entity separate from the persons who compose it. Meinhart v. Contresta, Sup., 194 N.Y.S. 593, 594.

It is fundamentally a large partnership, from which it differs, in that it is not bound by the acts of individual partners, but only by those of the manager or trustee. In re Lloyds of Texas, D.C.Tex., 43 F.2d 383, 385.

"Association" has been held to include a common-law business or Massachusetts trust. Tracy v. Banker, 170 Mass. 266, 49 N.E. 308, 39 L.R.A. 508.

**BANK.** The term "bank" is usually restricted in its application to an incorporated body; while a private individual making it his business to conduct banking operations is generally denominated a "banker". Hobbs v. Bank, C.C.A. N.Y., 101 F. 75, 41 C.C.A. 205; Wells, Fargo & Co. v. Northern Pac. R. Co., C.C.Or., 23 F. 469.

**BANKER.** A private person who keeps a bank; one who is engaged in the business of banking. People v. Doty, 80 N.Y. 228; Auten v. Bank, 19 S.Ct. 628, 174 U.S. 125, 43 L.Ed 920.

**BANKER'S ACCEPTANCE.** A draft or bill of exchange of which the acceptor is a bank or banker engaged generally in the business of granting bankers' acceptance credits. Atterbury v. Bank of Washington Heights of City of New York, 241 N.Y. 231, 149 N.E. 841, 843.

**BANKER'S NOTE.** A commercial instrument resembling a bank note in every particular except that it is given by a private banker or unincorporated banking institution. 6 Mod. 29; 3 Chit. Comm.Law 590.

**BANKABLE PAPER.** In mercantile law. Notes, checks, bank bills, drafts, and other securities for money, received as cash by the banks. The term does not necessarily mean discountable paper, but paper of such high credit that, if the time of payment was reasonable and the banks had loanable funds, they would ordinarily discount it. Edward P. Allis Co. v. Madison Electric Light, Heat & Power Co., 9 S.D. 459, 70 N.W. 650, 652.

National bank notes are received as bankable money without regard to the locality of the bank issuing them. U.S.Rev.Stat. § 5133 (12 USCA § 21); Veazle Bank v. Fenno, 8 Wall. 533, 19 L.Ed. 482.

**BILL OF EXCHANGE.** A "check" differs from a "bill of exchange" in that it is always drawn on a deposit whereas a bill is not. Wilson v. Buchenau D.C.Cal., 43 F.Supp. 272, 275.

**CASH.** Whatever can be used as money without being converted into another form. That which circulates as money, including bank bills (IBOE). Hooper v. Flood, 54 Cal. 221; Dazel v. Landry, 21 Nev. 291, 30 Pac. 1064; United States v. Williams, D.C. Wash., 282 F. 324, 325. It is frequently used as an antonym of "credit". Parish v. American Ry. Employees' Pub. Corporation, 83 Cal. App. 298, 256 P. 590, 591; State v. Woodward, 208 Ala. 31, 93 So. 826.

**CHARTER.** A charter differs from a constitution, in that the former is granted by the sovereign, while the latter is established by the people themselves.

Check. A check is not money, as proven as fact using the Uniform Commercial Code in attached copy of the North Dakota Supreme Court Decision of Midwest Federal Savings & Loan Association of Minot v. Kouba, 335 N.W.2d 780 (N.D. 1983). Midwest Federal relies upon two sections, of the Uniform Commercial Code [U.C.C.] to defend its refusal to accept the check offered by Mr. Kouba. U.C.C. § 3-107(1) [codified as § 41-03-07(1), N.D.C.C.] provides that negotiable instruments are payable in "money". "Money", for the purposes of the Uniform Commercial Code, is defined in U.C.C. § 1-201(24) [codified as § 41-01-11(24), N.D.C,] as a medium of exchange authorized or adopted by a, domestic or foreign government as a part of its currency". A check is not included in this definition of money. See Anderson, Uniform Commercial Code § 1-201:363 (3d ed.1981).

The above North Dakota Supreme Court Case is a detailed expos'e of checks, explaining they are not dealing in money, but only credit. So a bill is considered money but still is credit as there is no real money in reality being used without gold or silver backing. All credit-money/legal tender are debt instruments for discharge of indebtedness claims or contract offers private and public, as all debts in United States dollars are ultimately the obligations of the United States Government pursuant to 12 USC 411.

**COMMERCIAL PAPER.** Bills of Exchange, promissory notes, bank-checks, and other negotiable instruments for the payment of money, which, by their form and on their face, purports to be such instruments as are, by the law-merchant, recognized as falling under the designation of "commercial paper". In re Hercules Mut. L. Assur. Soc., in due course of business, whether the element of negotiability be given it by the law-merchant or by statute. In re Sykes, D.C.Ill., 5 Bliss. 113, Fed. Cas.No.13,708; Martin v. McAvoy, 130 Wash. 641, 228 P. 694; Postal Telegraph Cable Co. v. Citizens' Nat. Bank, C.C.A.N.J., 228 F. 601, 604. Commercial Credit Corporation v. Third & Lafayette Streets Garage, 131 Misc. 786, 228 N.Y.S. 166, 168.

**COMPANY.** A society or association ... The term is not identical with "partnership," although every unincorporated society is, in its legal relations, a partnership. The term is not necessarily limited to a trading or commercial body, but may include an unincorporated organization ... Mills v. State, 23 Tex. 303; Smith v. Janesville, 52 Wis. 680, 9 N.W. 789; Attorney General v. Mercantile Marine Ins. Co., 121 Mass. 525; In re Order of Sparta, D.C.Pa., 238 F. 437.

The word is sometimes applicable to a single individual. Harger v. Harger, 144 Ark. 375, 222 S.W. 736, 739. But compare Wood v. Wood, 78 Or. 181, 151 P. 969, 970, L.R.A 1916C, 251, Ann.Cas.1918A, 226.

**DOLLAR.** Money or currency issued by lawful authority and intended to pass and circulate as such. Neufield v. United States, 118 F.2d 375, 387, 73 App.D.C. 174.

**DRAFT.** It is distinguished from "check" by the fact that in a draft the drawer is a bank, while in the ordinary check the drawer is an individual. Leach v. Mechanics' Sav. Bank, 202 Iowa, 899, 211 N.W. 506, 508, 50 A.L.R. 388.

**Federal reserve note.** Not lawful money but legal tender under color of law. Federal Reserve Act of 1913. See: Minnesota Case of JUSTICE V. MAHONEY RE: First National Bank of Montgomery vs. Jerome Daly (1968). MARTIN V. MAHONEY JUSTICE OF THE PEACE CREDIT RIVER TOWNSHIP SCOTT COUNTY, MINNESOTA. (See these two (2) attached cases.)

**FUND.** Assets, securities, bonds, or revenue of a state or government appropriated for the discharge of its debts. State v. Hudson, 93 W.Va. 435, 117 S.E. 122, 126; Broadway Bank of St.

Louis, Mo., v. McGee Creek Levee & Drainage Dist., 292 III. 560, 127 N.E. 165, 166; State v. Board of Education of Sharples Village School Dist., Ohio St. 602, 151 N.E. 669, 670.

**INDORSER.** He who indorses; i.e., being the payee or holder, writes his name on the back of a bill of exchange, etc.

**LAWFUL MONEY.** Money which is a legal tender in payment of debts. Vick v. Howard, 136 Va. 101, 116 S.E. 465, 467, 31 A.L.R. 240; Dunlap v. Whitmer, 133 La. 317, 62 So. 938, 942, Ann.Cas. 1915C, 990.

**MASSACHUSETTS TRUST.** A business organization wherein property is conveyed to trustees and managed for benefit of holders of certificates like corporate stock certificates. Enochs & Flowers v. Roell, 170 Miss. 44, 154 So. 299.

**MONEY.** In usual and ordinary acceptation it means gold, silver, or paper money used as circulating medium of exchange, and does not embrace notes (i.e. Federal reserve notes), bonds, evidences of debt, or other personal or real estate. Lane v. Railey, 280 Ky. 319, 133 S.W.2d 74, 79, 81. Real money is gold and silver. Kennedy v. Briere, 45 Tex. 305; Cook v. State, 130 Ark. 90, 196 S.W. 922, 924; Vick v. Howard, 136 Va. 101, 116 S.E. 465, 467, 31 A.L.R. 240.

**NEGOTIABLE INSTRUMENTS.** Any written securities which may be transferred by indorsement and delivery or by delivery merely, so as to vest in the indorsee the legal title, and thus enable him to sue thereon in his own name. Or, more technically, those instruments which not only carry the legal title with them by indorsement or delivery, but carry as well, when transferred before maturity, the right of the transferee to demand the full amounts which their faces call for. Daniel, Neg Inst. § 1a. A general name for bills, First Nat. Bank v. Rochamora, 193 N.C. 1, 136 S.E. 259, 261.

**NEGOTIATE.** To sell or discount negotiable paper, or assign or transfer it by indorsement and delivery. Palmer v. Ferry, 6 Gray, Mass. 420; Newport Nat. Bank v. Board of Education, 114 Ky. 87, 70 S.W. 186.

**NEGOTIATION.** The act by which a bill of exchange or promissory note is put into circulation by being passed by one of the original parties to another person.

**PEOPLE.** A state or sovereign. Ohio L. Ins. & T. Co. v. Debolt, 16 How. 416, 14 L.Ed. 997; Chisholm. V. Georgia, (2 Dall) 419.

**PRIVATE BANKER.** One who carries on the business of banking without being incorporated. State of Missouri v. Angle, C.C.A.Mo., 236 F. 644, 650; Herzog v. Transatlantic Trust Co., Sup., 172 N.Y.S. 394 , 395. One who carries on the business of banking by receiving money on deposit with or without interest, by buying and selling bills of exchange, promissory notes, gold or silver coin, bullion, uncurrent money, bonds or stock, or other securities, and by loaning money without being incorporated. State ex rel. Barker v. Sage, 267 Mo. 493, 184 S.W. 984, 988.

**SIGHT.** When a bill of exchange is expressed to be payable "at sight," it means on presentment to the drawee. Campbell v. French, 6 Term, 212.

**SOVEREIGN.** State in which supreme power is vested; a chief ruler with supreme power; a king or other ruler with limited power. "Acts of Congress" are not applicable to "sovereigns" in the 50 states. 18 USC, Rule 54 C Positive Law enacted. Titles of United States Code. It is

doctrine of common law that the sovereign cannot be sued in his own court without consent. The Siren, 74 US 152 (1968). Lansing v. Smith, (1829) 4 Wendell 9, (NY); Hopkins and Woo Lee vs Hopkins 118 U.S. 356; U.S. v. Fox (94 US 315); State v. Batson 17S.E. 2d 511, 512, 513; Will v. Michigan State Police (1938 105 L.Ed. 2nd 45).

### PRESENTMENT OF BILL OF EXCHANGE TO BANK

Payee/Assignor or Agent thereof endorses IBOE on back (write the words "without recourse" above signature to protect from liability of payment becoming a mere assignor to the paper) with bank account numbers for presentment with deposit slip to bank to receive deposit receipt from Bank. Any Bank in the Federal Reserve System must receive by law a draft drawn in U.S. Dollars and monetize drawer's signature by properly stamping the IBOE treating as a credit receipt for deposit after which funds are entered into bank records as a book entry available later for fractionalization with IBOE retained by bank as asset of bank's reserves. (Electronic Funds Transfer draws on Bills of Exchange in most instances from Drawee bank. This IBOE is the actual credit funds. See definitions: BILL OF EXCHANGE and BANKER'S NOTE above.) If Assignor's bank deems necessary will deliver in person or mail IBOE to any Federal Reserve Bank's Discount Window to have IBOE monetized.

### ACTIONS TO TAKE AGAINST BANK DISHONOR TO OBTAIN REMEDY

**ACCOUNT RENDER.** A Bank employee who is bound to render an account but refuses to do their fiduciary capacity can have an action of common law brought against them. Portsmouth v. Donaldson, 32 Pa. 202, 72 Am.Dec. 782; Peoples Finance & Thrift Co. of Visalia v. Bowman, 137 P.2d 729, 731, 58 Cal.App2d 729.

"Action of account" is common-law action to compel person to render account for property or money of another. Dahlberg v. Fisse, 323 Mo. 213, 40 S.W.2d 606, 609. Equitable in nature. Gaines Bros. Co. v. Gaines, 188 Okl. 300, 108 P.2d 177, 179.

**BREACH OF DUTY.** Hivick v. Hemme, 118 Okl. 167, 247 P. 692, 693. State ex rel. and to Use of Gnekow v. United States Fidelity & Guaranty Co., 349 Mo. 528, 163 S.W.2d 86, 90.

**DUTY.** A human action which is exactly conformable to the laws which require us to obey them. Chicago, etc. R. Co v. Filson, 35 Okl. 89, 91, 128 P. 298.

**FIDUCIARY CAPACITY.** One is said to act in a "fiduciary capacity" or to receive money or contract a debt in a "fiduciary capacity," when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the one part. The term is not restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law, a guardian, executor, or broker, a director of a corporation, and a public officer. Templeton v. Bockler, 73 Or. 494, 144 P. 405, 409; Madison Tp. V. Dunkle, 114 Ind. 262, 16 N.E. 595;

§138. Powers of notaries public or other officers who are stockholders, directors, officers or employees of a corporation. A notary public, justice of the supreme court, a judge, clerk, deputy clerk, or special deputy clerk of a court, an official examiner of title, or the mayor or recorder of a city, a justice of the peace, surrogate, special surrogate, special county judge, or commissioner of deeds, who is a stockholder, director, officer or employee of a corporation may take the acknowledgment or proof of any party to a written instrument executed to or by such corporation, or administer an oath of any other stockholder, director, officer, employee or agent of such corporation, and such notary public may protest for non- acceptance or non-payment, bills of exchange, drafts, checks, notes and other negotiable instruments owned or held for collection by such corporation; but none of the officers above named shall take the acknowledgment or proof of a written instrument by or to a corporation of which he is a stockholder, director, officer or employee, if such officer taking such acknowledgment or proof to be a party executing such instrument, either individually or as representative of such corporation, nor shall a notary public protest any negotiable instruments owned or held for collection by such corporation, if such notary public be individually a party to such instrument, or have a financial interest in the subject of same. All such acknowledgments or proofs of deeds, mortgages or other written instruments, relating to real property heretofore taken before any of the officers aforesaid are confirmed. This act shall not affect any action or legal proceeding now pending.

PA TITLE 13 Enactment. Chapter 33 was added July 9, 1992, P.L.507, No.97, effective in one year.
Prior Provisions. Former Chapter 33, which related to rights of a holder, was added November 1, 1979, P.L.255, No.86, and repealed July 9, 1992, P.L.507, No.97, effective in one year.
§ 3301.   Person entitled to enforce instrument.
"Person entitled to enforce" an instrument means:
(1)   the holder of the instrument;
(2)   a nonholder in possession of the instrument who has the rights of a holder; or
(3)   a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3309 (relating to enforcement of lost, destroyed or stolen instrument) or 3418(d) (relating to payment or acceptance by mistake).
A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

§ 3303.   Value and consideration.
        (a)   Value.--An instrument is issued or transferred for value if:
                (1)   the instrument is issued or transferred for a
            promise of performance, to the extent the promise has been

performed;

    (2) the transferee acquires a security interest or other lien in the instrument other than a lien obtained by judicial proceeding;

    (3) the instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due;

    (4) the instrument is issued or transferred in exchange for a negotiable instrument; or

    (5) the instrument is issued or transferred in exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument.

    (b) Definition of "consideration".--"Consideration" means any consideration sufficient to support a simple contract. The drawer or maker of an instrument has a defense if the instrument is issued without consideration. If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed. If an instrument is issued for value as stated in subsection (a), the instrument is also issued for consideration.

Cross References. Section 3301 is referred to in sections 3103, 3308, 4104 of this title.

See attached copy of the Federal Reserve Bank of Chicago's overview of U.S. monetary system article titled, "Mod ern Money Mechanics". also available on the Internet URL: http://landru.i-link-2.net/monques/mmm2.html .

Black's Law Dictionary Fourth Edition was source of most word definitions.

Congress has provided for in these statutes on the public debt and obligations of the United States and that this is the remedy codified in statutory law and definition as cited here.

I have provided this lengthy document with attachments to help COP and the FEDERAL RESERVE employees to facilitate the settlement for credit for credit on account, so that I and others may participate within the world of commerce for the economic welfare of the American people, the corporate UNITED STATES and its citizenry. Again this document is not a commercial contract offer with the parties mentioned. I, me the undersigned explicitly reserve all Rights under the common law without prejudice pursuant to 28USC2072(b), NEW YORK COMMERCIAL CODE 1-207, UCC 3-415(b), UCC 1-308, and UCC 1-103.6. Thank you for your time. Until then, I am...

Respectfully yours,

By: _Seson Deon Teleo Adams_ TTEE,
Seson Deon Teleo: Adams
Authorized Representative
of the SESON DEON TELEO ADAMS (TRUST)

☐ CORRECTED (if checked)

| CREDITOR'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br>SESON DEON TELEO      ADAMS<br>C/o 108 West 141st Street Apt. 3G<br>New York, NY 10030-9999<br><br>(917) 345-8979 | **1** Date of identifiable event<br>08/10/2018 | OMB No. 1545-1424 | **Cancellation of Debt** |
|---|---|---|---|
| | **2** Amount of debt discharged<br>$ 1500000.00 | ②◎**18** | |
| | **3** Interest if included in box 2<br>$ 1500000.00 | Form **1099-C** | |

| CREDITOR'S TIN<br>98-6086324 | DEBTOR'S TIN | **4** Debt description<br>RE 190 700 749 US $15000000.Payment for 180302451 | **Copy B**<br>**For Debtor** |
|---|---|---|---|
| DEBTOR'S name<br>CITY OF PHILADELPHIA | | | This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| Street address (including apt. no.)<br>Prothonotary Office Rm. 284 City Hall | | **5** If checked, the debtor was personally liable for repayment of the debt . . . . . . . . ▶ ☒ | |
| City or town, state or province, country, and ZIP or foreign postal code<br>Philadelphia, PA 19107 | | | |
| Account number (see instructions)<br>180302451 | | **6** Identifiable event code | **7** Fair market value of property<br>$ 20000.00 | |

Form **1099-C**          (keep for your records)          www.irs.gov/Form1099C          Department of the Treasury - Internal Revenue Service

## Instructions for Debtor - 1099-C (2018)

You received this form because a Federal Government agency or an applicable financial entity (a creditor) has discharged (canceled or forgiven) a debt you owed, or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more. If a creditor has discharged a debt you owed, you are required to include the discharged amount in your income, even if it is less than $600, on the "Other Income" line of your Form 1040. However, you may not have to include all of the canceled debt in your income. There are exceptions and exclusions, such as bankruptcy and insolvency. See Pub. 4681, available at IRS.gov, for more details. If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged, unless an exception or exclusion applies to you in that year.

**Debtor's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the creditor has reported your complete TIN to the IRS.

**Account number.** May show an account or other unique number the creditor assigned to distinguish your account.

**Box 1.** Shows the date the earliest identifiable event occurred or, at the creditor's discretion, the date of an actual discharge that occurred before an identifiable event. See the code in box 6.

**Box 2.** Shows the amount of debt either actually or deemed discharged. **Note:** If you do not agree with the amount, contact your creditor.

**Box 3.** Shows interest if included in the debt reported in box 2. See Pub. 4681 to see if you must include the interest in gross income.

**Box 4.** Shows a description of the debt. If box 7 is completed, box 4 also shows a description of the property.

**Box 5.** Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, at the time of the last modification. See Pub. 4681 for reporting instructions.

**Box 6.** Shows the reason your creditor has filed this form. The codes in this box are described in more detail in Pub. 4681. A—Bankruptcy; B—Other judicial debt relief; C—Statute of limitations or expiration of deficiency period; D—Foreclosure election; E—Debt relief from probate or similar proceeding; F—By agreement; G—Decision or policy to discontinue collection; or H—Other actual discharge before identifiable event.

**Box 7.** If, in the same calendar year, a foreclosure or abandonment of property occurred in connection with the cancellation of the debt, the fair market value (FMV) of the property will be shown, or you will receive a separate Form 1099-A. Generally, the gross foreclosure bid price is considered to be the FMV. For an abandonment or voluntary conveyance in lieu of foreclosure, the FMV is generally the appraised value of the property. You may have income or loss because of the acquisition or abandonment. See Pub. 4681 for information about foreclosures and abandonments. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

**Future developments.** For the latest information about developments related to Form 1099-C and its instructions, such as legislation enacted after they were published, go to www.irs.gov/Form1099C.

**CITY OF PHILADELPHIA LAW DEPARTMENT**
By: Francesco J. Grieco, Deputy City Solicitor
Attorney I.D. No. 324222
1401 John F. Kennedy Blvd., 5th Floor
Philadelphia, PA 19102
PHONE: (215) 686-6462

## IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## PHILADELPHIA COUNTY

**CITY OF PHILADELPHIA**
        Petitioner

vs.

**No. 2505T0069**

**SESON DEON TELEO ADAMS-ALI**
        Respondent(s)

## PRAECIPE TO ADD EXHIBIT TO THE RECORD

TO THE PROTHONOTARY:

Kindly add to the record in the above-captioned matter **Court Exhibit A**, submitted

herewith, and mark the same as filed of record.

Respectfully submitted,


/s/ Francesco J. Grieco
Francesco J. Grieco, Esq.
PA Bar #: 324222
Deputy City Solicitor, Tax and Revenue Unit
City of Philadelphia Law Department
1401 JFK Boulevard, Suite 580
Philadelphia, PA 19102

Date: 2/5/2026

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

CITY OF PHILADELPHIA,
             Petitioner,

vs.                                              NO. 2505T0069

Seson Deon Teleo Adams-Ali
             Respondent(s).

## DECREE

This matter being before the Court upon the Petition to Show Cause Why Property Should Not Be Sold Free and Clear of All Liens and Encumbrances filed by the City on 05/12/25 pursuant to the Act of Assembly of May 16, 1923, P.L. 207, 53 P.S. §7101, et seq. (the "Act") the Court therefore finds and hereby ORDERS and DECREES that:

1. The Rule return date has passed and the Court has considered Respondent(s) filed answer or appearance, if any.

2. Following a hearing and upon review of the record, the Court finds that service has been effectuated in accordance with Section 39.2 of the Act.

3. The total amount of real estate tax and municipal claim liabilities to the extent included in this Petition (hereinafter "Claim" or "Claims"), including principal, interest, penalties, attorney's fees, and charges, expenses and fees through the date of this Decree, against the subject property, are due for the periods and in the amounts set forth on Exhibit A attached hereto.

4. Additional amounts, including penalties, interest, attorney's fees, lien costs and other charges, expenses and fees, including record costs, if any, will continue to accrue through the end of the month in which full payment of the real estate tax liabilities is made as provided by law.

5.    The premises to wit:

88 Ward of the City of Philadelphia
2355 Turner Street
OPA #: 885000274
Frt. 15' 8" X 59'
(As fully described in the Tax Information Certificate)

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION - CIVIL

CITY OF PHILADELPHIA

V.

SESON DEON TELEO ADAMS-ALI,

Respondent(s)

MAY TERM 2025

No. **T0069**

Property: **2355 TURNER ST, Philadelphia, Pennsylvania**

## RULE RETURNABLE
## CIVIL TAX PETITION

AND NOW, this **MAY 12, 2025**, upon consideration of the Petition filed in the Civil Tax Action, it is hereby **ORDERED** as follows:

1. Petitioner shall serve a copy of this Order and the Petition on all Respondents. Service shall be in accordance with 53 P.S. S7193.2.

2. Respondents shall have fifteen (15) days from the date of service to file a response to the Petition.

3. A Rule Returnable hearing is scheduled for **August 19, 2025**, at 9:00 am in Court Room 676, CITY HALL, Philadelphia, Pennsylvania.

BY THE COURT:

**DANIEL J. ANDERS**
**SUPERVISING JUDGE**
**TRIAL DIVISION ¿ CIVIL**



First Judicial District of Pennsylvania
Court of Common Pleas of Philadelphia County

**Important Notice to Homeowners**
**Please read the following information carefully:**

# A suit has been filed
because of unpaid taxes on the property at:

## 2355 TURNER ST, Philadelphia, Pennsylvania

Read the **"Rule Returnable Civil Tax Petition"**
for important deadlines, dates, and times.

To object in person
**you SHOULD attend the Court Hearing on:**

August 19, 2025 at 9:00 AM
Philadelphia City Hall
Courtroom 676

If you do not attend the hearing,
**the Property May Be Sold**
at a Sheriff's Sale.

For **free help** call
the Save Your Home Philly Hotline
215-334-HOME or 215-334-4663

You can also contact the law firm representing the Petitioner directly
to discuss your case and make payment arrangements.

E-FILE #2505023040
\\zdrtaxpet 10/16/2017

# Court of Common Pleas of Philadelphia County
## Trial Division
# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**MAY 2025**

E-Filing Number: 2505023040

**T0069**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| CITY OF PHILADELPHIA | SESON DEON TELEO ADAMS-ALI,, ALIAS: SESON DEON TELEO-ADAMS-ESTATE/TRUST |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| C/O LAW DEPARTMENT 1515 ARCH ST., 14TH FLOOR PHILADELPHIA PA 19107 | 2355 TURNER ST PHILADELPHIA PA 191212919 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | ☐ Complaint ☐ Petition Action ☐ Notice of Appeal ☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less ☐ More than $50,000.00 | ☐ Arbitration ☐ Jury ☐ Non-Jury ☒ Other: | ☐ Mass Tort ☐ Savings Action ☐ Petition REAL ESTATE TAX LIEN PETITION | ☐ Commerce ☐ Minor Court Appeal ☐ Statutory Appeals | ☐ Settlement ☐ Minors ☐ W/D/Survival |

**CASE TYPE AND CODE**

7P - REAL ESTATE TAX LIEN PETITION

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** MAY **12** 2025 **C. SMITH** | IS CASE SUBJECT TO COORDINATION ORDER? YES        NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: CITY OF PHILADELPHIA

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| JAMES J. ZWOLAK | MUNICIPAL SERVICES BUILDING 1401 JOHN F. KENNEDY BLV. 5TH FLOOR PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)686-0523 | (215)686-0582 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 57408 | james.zwolak@phila.gov |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| JAMES ZWOLAK | Monday, May 12, 2025, 10:36 am |

FINAL COPY (Approved by the Prothonotary Clerk)

CITY OF PHILADELPHIA

vs.

Seson Deon Teleo Adams-Ali

COURT OF COMMON PLEAS

C.P.

*Filed and Attested by the Office of Judicial Records
12 MAY 2025 10:11 am
SMITH*

RULE

AND NOW, this    day of        , 2025, upon consideration of within Petition, this Court hereby grants a Rule (or notice) upon the above named respondent to show cause why a Decree should not be entered permitting the <u>SALE</u> of the following premises,

15' 8" X 59'    2355   Turner Street,

As fully described in the Tax Information Certificate, by the Sheriff of Philadelphia County because of delinquent real estate taxes.

Service and notice of this Rule shall be made in the manner provided in the Act of Assembly of May 16, 1923, P.L. 207, and the amendments thereto, and as required by Act 135 of 1992, December 14, 1992, as amended, for notice of Rules to show cause, and to be returnable fifteen days after such service.

The said Rule is returnable (i.e., an Answer must be filed) within fifteen (15) days of service or a Rule Absolute may be entered i.e., the property may be immediately <u>SCHEDULED FOR SHERIFF'S SALE.</u>

BY THE COURT:

_____
J.

Case ID: 2505T0069

# PETITION FOR RULE TO SHOW CAUSE WHY PROPERTY
## SHOULD BE SOLD FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES

Petitioner, City of Philadelphia, by and through its attorney, James J. Zwolak, Esquire, hereby files this Petition for Rule to Show Cause Why Property Should Not Be Sold Free and Clear of All Liens and Encumbrances, and in support thereof respectfully avers as follows:

1. The City of Philadelphia is the Petitioner in this action.

2. This Petition pertains to delinquent real estate taxes, and is filed pursuant to the Municipal Claim and Tax Lien Act, 53 P.S. § 7101, et seq.

3. The tax years that are the subject of the instant Petition and the amounts owed to the City of Philadelphia for said tax years for said tax years for tax principal, penalties, interest, fees and costs are set forth in the delinquent tax statement attached hereto as Exhibit "A." All said amounts accrued pursuant to the laws of the Commonwealth of Pennsylvania, the ordinances of the City of Philadelphia, and/or applicable regulations. Additional allowable amounts may have accrued since the preparation of Exhibit "A", will continue to accrue in the future, and are fully recoverable in this action.

4. Liens were entered for all outstanding delinquent real estate taxes and related penalties, interest, fees and costs that are the subject of this action. Said liens constitute first and paramount liens upon the subject property, as provided by 53 P.S. § §7102, 7106.

5. The City of Philadelphia field its claims for unpaid taxes and related penalties, interest, fees and costs in this action against the following premises:

   As more fully described in the Tax Information Certificate attached hereto as Exhibit "B."

6. A Tax Information Certificate prepared by AAL Acquest Corp. and attached hereto as Exhibit "B" shows the state of record ownership of the property, all tax liens and municipal claims, mortgages, ground rents, and other charges or estates in the land discovered in the search.

7. The Respondent(s) owned or possessed an interest in the subject property at time of the filing of this Petition.

8. The names of the Respondents shown to be interested in the property that is the subject of this action are as follows: Seson Deon Teleo Adams-Ali, Owner        Occupant, other
   Seson Deon Teleo Adams-Ali, d.b.a SESON DEON TELEO-ADAMS-Estate/Trust, Other
   Seson Deon Teleo Adams-Ali, d.b.a SESON DEON TELEO-ADAMS-Estate/Trust, Other
   Nicholas Rabickow, Other        Seson Deon Teleo Adams-Ali , Owner        Lex Loci
   Domicilii, Owner   Attorney General, Federal Lien        Jean W. Lewis, Other        Leroy
   M. Lewis, Jr., Other        Mayone Lewis Ely, Other        Reginald L. Harrison, Case ID: 2505T0069

Reginald L. Harrison, Other       Lucille E. Clark, Other       Edwin O. Lewis, Individual and Trustee, Other       United States Attorney, Federal Lien       Commonwealth of PA Dept of Revenue Bureau of Compliance, State Lien  Commonwealth of PA- Bureau of Individual Taxes-Inheritance Tax Division, State Lien   Seson Deon Teleo Adams-Ali , Owner

If any of the above-named Respondents are deceased, this action shall proceed against the deceased Respondent's heirs assigns, successors, administrators, personal representatives and/or through their estates, whether or not the estate has been probated.

9. Under the Act of Congress of June 24, 1948, c 646, par. 1, 62 Stat. 972 amended May 24, 1949, c. 139, par. 119, 63 Stat. 105; U.S.C.A. Tit. 28 sec. 2410, it provides that the United States may be named a party in any civil action or suit,  for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien.

10. Notice is hereby given that any property sold for unpaid Claims, including principal, interest, penalties, attorney's fees, and charges, expenses and fees, may be subject to acquisition by the Philadelphia Land Bank ("Land Bank") pursuant to 68 Pa. C.S.A. §2117 (d)(3) and 68 Pa. C.S.A. §2117 (d)(4). If the Land Bank tenders a bid at a Sheriff's Tax Foreclosure Sale pursuant to 68 Pa. C.S.A §2117(d)(4), the Property will be sold to the Land Bank without any further bidding.

11 .The Land Bank will not exercise its right to be the sole bidder with respect to any property it seeks to acquire at a tax sale pursuant to 68 Pa. C.S. § 2117(d)(4) unless notice of the Land Bank's intent to do so has been provided to all interested parties in the City's tax sale petition and no party has requested, in writing to the Land Bank delivered at least ten (10) days before the Sheriff's Tax Foreclosure Sale, that the property be subject to open bidding.

WHEREFORE, the Petitioner respectfully requests that this Honorable Court grant a Rule upon the Respondents to show cause why a court order and decree should not be entered allowing the property described herein to be sold free and clear of all claims, mortgages, ground rents and charges, estates, and liens, and if no answer is filed within fifteen (15) days of service, to make this Rule absolute by entering a decree that this property may be immediately <u>SCHEDULED FOR SHERIFF'S SALE.</u>

Respectfully submitted,

*James J. Zwolak*

Date: 05/09/2025

BY: JAMES J. ZWOLAK, ESQUIRE
Divisional Deputy City Solicitor       Case ID: 2505T0069

Attorney I.D. No. 57408
City of Philadelphia, Law Department
Municipal Services Building
1401 JFK Boulevard, 5th Floor
Philadelphia, Pennsylvania 19102
ATTORNEY FOR PETITIONER,
CITY OF PHILADELPHIA

<u>VERIFICATION</u>

I, JAMES J. ZWOLAK, hereby verify that I am a DIVISIONAL DEPUTY CITY SOLICITOR of the Law Department of the City of Philadelphia, party herein; that I am authorized to make this affidavit on its behalf; and that the aforesaid facts are true and correct to the best of my knowledge, information and belief. This statement is being made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

BY: *James J. Zwolak*

Date: 05/09/2025

JAMES J. ZWOLAK
DIVISIONAL DEPUTY CITY SOLICITOR
For the City of Philadelphia

Case ID: 2505T0069

**First Judicial District Of Pennsylvania**

**Court Of Common Pleas Of Philadelphia County**

**Under a Court Program of the Court of Common Pleas:**

# You may be able to get help with Your Delinquent Property Taxes or Legal Action Filed to Collect Those Taxes.

# YOU MUST Call the Save Your Home Philly Hotline at 215-334-HOME

# (215-334-4663)

1) You will be put in touch with an approved non-profit Housing Counselor who will help you try to work out arrangements with the City. These City approved Housing Counselors are free of charge.

To get this help you must <u>call</u> the Hotline and go to an approved Housing Counselor. They will tell you what to do next.

Call the Hotline immediately. **Call 215-334-HOME (215-334-4663).**

2) You can contact the City of Philadelphia Revenue Department directly to discuss your payment options by calling 215-686-6442 or visiting Taxpayer Services in the Municipal Services Building, 1401 John F. Kennedy Boulevard, Concourse Level, Philadelphia, PA 19102, 8:30 AM-5:00 PM, Monday-Friday.

# Make this call to save your home!

Case ID: 2505T0069

NOTICE

The attached Petition to obtain court permission to sell a property you own, or in which you may have an interest, has been filed in court due to non-payment of real estate taxes. If you wish to defend against this Petition and prevent this sale of this property, you must take action within fifteen (15) days after this Petition and Rule has been served upon you by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the Petition will be presented to the court for approval, and the property scheduled for a Sheriff's Tax Sale, without any further notice to you.

You can still make arrangements to pay the tax liability prior to the Sheriff's Sale. To do this, you must contact a customer collection representative in the Delinquent Real Estate Tax Unit of the Revenue Department (215-686-6442) located on the Concourse Level, Municipal Services Building, 15th Street and John F. Kennedy Boulevard. EVEN IF YOU ARE HAVING FINANCIAL DIFFICULTY, THE REVENUE DEPARTMENT MAY WORK WITH YOU TO ESTABLISH AN AFFORDABLE INSTALLMENT PAYMENT PLAN. YOU MUST CONTACT THEM.

If the sale is not stopped or postponed, a schedule of distribution of the money bid for the property will be filed by the Sheriff thirty (30) days after the date of sale. The schedule will state who will be receiving the money and the money will be paid unless exceptions (reasons why the proposed distribution is wrong) are filed with the Sheriff ten (10) days thereafter.

If this property is sold at Sheriff Sale, you may have the right to redeem the property upon payment of the amount bid at sale, the necessary expenses of the property, the unsatisfied amount of all real estate taxes and municipal claims, whether or not entered as liens, all costs incurred in bringing such property to sale, and interest on the sums outstanding. There is no right to redeem certain properties. Please speak with an attorney if you have questions concerning any right to redeem.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**PHILADELPHIA BAR ASSOCIATION
LAW REFERRAL AND INFORMATION SERVICE
1101 MARKET STREET
PHILADELPHIA, PA 19107
TELEPHONE: (215) 238-1701 OR (215) 238-1641**

Case ID: 2505T0069

Case ID: 2505T0069

| Tax Information Certificate | | AAL Acquest Corp. | By: *Ach* |
|---|---|---|---|
| Case ID: | 043824 | Client: | City of Philadelphia |
| BRT/OPA #: | 885000274 | Certification: | 142172 |
| Premises: | 2355 TURNER ST | Ordered On: | 03/17/2025 |
| Registry #: | 013 N 10 - 0151 | Cover Date: | 10/01/2024 |

Registry Parties: ADAMS SESON          Registry Add:

Actual Record Owner(s): Seson Deon Teleo Adams-Ali, d.b.a SESON DEON TELEO-ADAMS-Estate/Trust

By Conveyance From: Seson Adams

Executed On: 07/08/2016     Recorded On: 07/18/2016     Bk/Page: DOC 53086236

## Municipal Obligations

Assessment: $132,300.00

Water & Sewer Accounts:     Years Due     -     Amount Due     $0.00

Municipal Lien(s) of Record:

| Lien #: | 18100596 | Lien Date: | | Lien Amount: | $3,224.29 |
|---|---|---|---|---|---|
| Lien Type: | Asbestos Onsite Monitoring | | | | |

| Lien #: | 20050752 | Lien Date: | | Lien Amount: | $733.51 |
|---|---|---|---|---|---|
| Lien Type: | Sealing of Abandon Lateral | | | | |

| Lien #: | 18110601 | Lien Date: | | Lien Amount: | $32,828.56 |
|---|---|---|---|---|---|
| Lien Type: | Demolition | | | | |

| Lien #: | 12080396 | Lien Date: | | Lien Amount: | $666.46 |
|---|---|---|---|---|---|
| Lien Type: | Clean and Seal | | | | |

| Lien #: | 18080490 | Lien Date: | | Lien Amount: | $836.60 |
|---|---|---|---|---|---|
| Lien Type: | Clean and Seal | | | | |

| Lien #: | 1505R14025693 | Lien Date: | 05/15/2015 | Lien Amount: | $1,908.78 |
|---|---|---|---|---|---|
| Lien Type: | REAL ESTATE TAX | | | | |

Case ID: 2505T0069

| | | | | |
|---|---|---|---|---|
| Lien #: | 1512R10647902 | Lien Date: | 12/08/2015 | Lien Amount: $841.79 |
| Lien Type: | REAL ESTATE TAX | | | |
| Lien #: | 1512R11617961 | Lien Date: | 12/07/2015 | Lien Amount: $559.36 |
| Lien Type: | REAL ESTATE TAX | | | |
| Lien #: | 1512R12583542 | Lien Date: | 12/04/2015 | Lien Amount: $544.98 |
| Lien Type: | REAL ESTATE TAX | | | |
| Lien #: | 1512R13543433 | Lien Date: | 12/03/2015 | Lien Amount: $527.46 |
| Lien Type: | REAL ESTATE TAX | | | |
| Lien #: | 1603R15087511 | Lien Date: | 03/08/2016 | Lien Amount: $1,661.96 |
| Lien Type: | REAL ESTATE TAX | | | |
| Lien #: | 1703R16141265 | Lien Date: | 03/14/2017 | Lien Amount: $1,732.02 |
| Lien Type: | REAL ESTATE TAX | | | |
| Lien #: | 1802R17195526 | Lien Date: | 02/18/2018 | Lien Amount: $1,709.53 |
| Lien Type: | REAL ESTATE TAX | | | |
| Lien #: | 1805W17083727 | Lien Date: | 05/17/2018 | Lien Amount: $305.76 |
| Lien Type: | CLAIM FOR WATER | | | |
| Lien #: | 1805W17083728 | Lien Date: | 05/17/2018 | Lien Amount: $335.91 |
| Lien Type: | CLAIM FOR WATER | | | |
| Lien #: | 1805W17143010 | Lien Date: | 05/24/2018 | Lien Amount: $326.07 |
| Lien Type: | CLAIM FOR WATER | | | |
| Lien #: | 1805W17174533 | Lien Date: | 06/01/2018 | Lien Amount: $346.65 |
| Lien Type: | CLAIM FOR WATER | | | |
| Lien #: | 1806W17006771 | Lien Date: | 06/07/2018 | Lien Amount: $358.39 |
| Lien Type: | CLAIM FOR WATER | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 1806W17017778 | Lien Date: | 06/16/2018 | Lien Amount: | $374.01 |
| Lien Type: | CLAIM FOR WATER | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 1806W17030910 | Lien Date: | 06/21/2018 | Lien Amount: | $350.02 |
| Lien Type: | CLAIM FOR WATER | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 1806W17043037 | Lien Date: | 06/28/2018 | Lien Amount: | $397.37 |
| Lien Type: | CLAIM FOR WATER | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 1807W18005727 | Lien Date: | 07/05/2018 | Lien Amount: | $407.86 |
| Lien Type: | CLAIM FOR WATER | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 1807W18024531 | Lien Date: | 07/12/2018 | Lien Amount: | $301.06 |
| Lien Type: | CLAIM FOR WATER | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 1903R18431800 | Lien Date: | 03/04/2019 | Lien Amount: | $1,126.90 |
| Lien Type: | REAL ESTATE TAX | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 2002R19475653 | Lien Date: | 02/15/2020 | Lien Amount: | $1,139.35 |
| Lien Type: | REAL ESTATE TAX | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 2102R20520640 | Lien Date: | 02/13/2021 | Lien Amount: | $1,106.96 |
| Lien Type: | REAL ESTATE TAX | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 2202R21562317 | Lien Date: | 02/13/2022 | Lien Amount: | $1,148.10 |
| Lien Type: | REAL ESTATE TAX | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 2301R22062191 | Lien Date: | 01/28/2023 | Lien Amount: | $967.48 |
| Lien Type: | REAL ESTATE TAX | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Lien #: | 2307W23007339 | Lien Date: | 07/07/2023 | Lien Amount: | $1,114.74 |
| Lien Type: | CLAIM FOR WATER | | | | |

Mechanics Lien/Municipal Claim indexes in Prothonotary's Office are incomplete. Possible additional Mechanics Liens/Municipal Claims on record not reported here. Possible unpaid charges due Philadelphia Gas Works (PGW). Possible unpaid Special Services District assessments, where applicable. Under and subject to certain easements, agreements, covenants, conditions, reservations, rights and restrictions of record. (Not searched or certified herein)

Exceptions:

Case ID: 2505T0069

Revenue Real Estate Taxes OPEN for years 2010 through 2025 -- $28,150.73 current balance.
Commercial Trash Fees OPEN for years 2016 through 2025 -- $6,609.20 current balance.
L&I Abatement Work Invoice(s) OPEN for years 2012 through 2018 -- $39,535.83 current balance.
Legal description supplied herewith has been sourced or reconstructed from documents and information available in Dept of Records. May contain typographical errors, inaccuracies, omissions and/or over-inclusions and may not match assessment information shown in BRT/OPA data. [Legal descriptions found in latest and prior recorded Deeds are defective -- beginning point erroneously described on the Northwest corner of Turner and 24th Streets, should be Northeast corner. Further, recorded (Deed) legal description and assessed frontage differ slightly. Deed and title chain are assumed valid and legal description supplied herewith has been adjusted for purposes of this report.] No further warranty made.
Easement of alley(s) and other possible easements, agreements, covenants, conditions, reservations, rights, restrictions, etc. of record.
Possible additional mechanics/municipal/public utilities liens not available at time of search.
Possible outstanding City rubbish and recycling collection fees from 2010 to present (commercial and multi-unit properties only); or evidence of private collection services contract(s) reported to Streets Dept. Solid Waste Resources Unit to be produced.
This report represents a current record owner title and lien search for informational purposes only, to identify equitable interests to be included in and/or notified of collections action. No warranty made as to validity of prior title or defects in the public record (including certain known and unknown deficiencies in Dept of Records "PhilaDox EWeb" or "E-pay" index launched April, 2015). Possible unrecorded leases and other equitable interests not warranted hereunder.
Prior (2001, 2002) Deeds are Quit-Claims -- may or may not convey actual fee simple real estate title. Further, latest recorded Deed that can be considered absolutely bona-fide (1942) is missing in Dept of Records Index -- no warranty made as to contents therein. Subsequent chain of recordings contains severe irregularities and may or may not be legitimate. Every effort has been made to identify and report all pertinent documents, information and interested parties of public record in order to ensure clean Sheriff Sale. No further warranty made hereunder.
All names run exactly as appear in recorded documents. No extrapolation made for extensions, middle names, initials, misspellings, reversal of name order, formalization, nicknames, colloquialisms, etc.
Judgments in favor of City of Phila, School Dist of Phila, Phila Tax Lien Sale Trustees, Traffic Court, Admin Adjudication, Comm of PA Probation, Comm of PA Dept 280946, etc. not included herein.
Judgments vs. current and prior record owner(s) in any official capacity not included herein.
Criminal actions vs. current and prior record owner(s) in US District Court not included herein.
Comm of PA Dept of Public Welfare to be notified for possible outstanding support obligations (individual record owners).
Comm of PA Dept of Revenue to be notified of foreclosure for possible outstanding tax liability (corporate or other fiduciary record owners). Identity of officers, shareholders, members, representatives and/or general and limited partners is unknown for notice of foreclosure except where specifically noted.

# Legal Description

BRT/OPA #:    885000274

Assessed Legal Description:    NEC OF 24TH ST    16' X 59'

Abbreviated Legal Description:    15' 8" X 59'

2355 TURNER ST

Actual Legal Description:

ALL THAT CERTAIN lot or piece of ground with the three story brick messuage and store thereon erected,

SITUATE on the Northeast corner of Turner Street and 24th Street.

CONTAINING in front or breadth on Turner Street 15 feet 8 inches and extending of that width in length or depth Northward along the East side of 24th Street 59 feet to a certain 4 feet wide alley extending from 24th Street to 23rd Street.

BEING the same premises which Seson Adams by Private Life Estate Deed dated 07/08/2016 and recorded 07/18/2016 at Philadelphia in Deed Book DOC 53086236 granted and conveyed unto Seson Deon Teleo Adams-Ali, d.b.a SESON DEON TELEO-ADAMS-Estate/Trust in fee.

Case ID: 2505T0069

## Other Active Documents

Mortgage:                  Nicholas Rabickow

Grantor Or Mortgagor :    Seson D. Adams

Executed On:    08/21/2006      Recorded On:    09/07/2006      Bk/Page:    DOC 51524740

Amount:    $90,000.00

# Interested Parties

Party Type:      Record Owner of Fee

Interested Party:      Seson Deon Teleo Adams-Ali, d.b.a SESON DEON TELEO-ADAMS-Estate/Trust

Document Relationship:

Addresse(s):      2355 TURNER ST, Philadelphia, PA 191212919
108 W 141st, Street, Apt.3G, New York, NY 10030

Estate(s):

Bankruptcies:

Interested Party Notes:


Party Type:      Occupant

Interested Party:      Seson Adams Seson Deon Teleo Adams-Ali

Document Relationship:      DOC 53086236

Addresse(s):      2355 TURNER ST, Philadelphia, PA 191212919
108 W 141ST ST, NEW YORK, NY 10030-1804

Estate(s):

Bankruptcies:

Interested Party Notes:

Prior record owner name still indicated on open water account.

Party Type:      Lienholder

Interested Party:      Nicholas Rabickow

Document Relationship:      DOC 51524740

Addresse(s):      319 Gorman, Avenue, Laurel, MD 20707

Estate(s):

Bankruptcies:

Interested Party Notes:


Party Type:      Possible Continuing Interest

Interested Party:      Jean W. Lewis

Document Relationship:      DOC 53086236

Addresse(s):      2355 TURNER ST, Philadelphia, PA 191212919

Estate(s):

Bankruptcies:

Interested Party Notes:

Case ID: 2505T0069

Party Type: Possible Continuing Interest
Interested Party: Leroy M. Lewis, Jr.
Document Relationship: DOC 53086236
Addresse(s): 2355  TURNER ST, Philadelphia, PA  191212919
Estate(s):
Bankruptcies:
Interested Party Notes:


Party Type: Possible Continuing Interest
Interested Party: Mayone Lewis Ely
Document Relationship: DOC 53086236
Addresse(s): 2355  TURNER ST, Philadelphia, PA  191212919
Estate(s):
Bankruptcies:
Interested Party Notes:


Party Type: Possible Continuing Interest
Interested Party: Reginald L. Harrison
Document Relationship: DOC 53086236
Addresse(s): 2355  TURNER ST, Philadelphia, PA  191212919
377 Beverly, Boulevard, Upper Darby, PA  19082
Estate(s):
Bankruptcies:
Interested Party Notes:


Party Type: Possible Continuing Interest
Interested Party: Lucille E. Clark
Document Relationship: DOC 53086236
Addresse(s): 2355  TURNER ST, Philadelphia, PA  191212919
Estate(s):
Bankruptcies:
Interested Party Notes:

Case ID: 2505T0069

Party Type:                  Possible Continuing Interest

Interested Party:            Edwin O. Lewis, Individual and Trustee

Document Relationship:       DOC 53086236

Addresse(s):                 2355  TURNER ST, Philadelphia, PA  191212919

Estate(s):

Bankruptcies:

Interested Party Notes:

Case ID: 2505T0069

# Judgments

Judgments originally entered in Municipal Court prior to 4/28/2002, and revivals of same, may not be properly displayed in Prothonotary's index. No warranty is given or implied hereunder as to information available from Municipal Court. POSSIBLE ADDITIONAL PLAINTIFFS NOT SHOWN IN CP AND MC JUDGMENT INDEXES FOR JUDGMENTS REPORTED HEREIN.

| Defendent Info | Plaintiff Info | Case ID | Filing Date |
|---|---|---|---|
| | | Judgment Amt | Revived Date |

# Standard Exceptions

Foreclosure notices to Family Court/Domestic Relations of the City & County of Philadelphia and to Commonwealth of PA Department of Welfare are recommended for possible outstanding support obligations versus individual record owners and other parties of equitable interest.
Possible outstanding Commonwealth of PA tax obligations versus corporate/partnership/fiduciary record owners and other parties of equitable interest, not certified herein.
Foreclosure notice to Internal Revenue Service is recommended for possible outstanding federal tax delinquency versus all record owners and other parties of equitable interest.
All record owner and other interested party name searches are run EXACTLY as they appear in related active documents.
This entire report is produced for information purposes only. Liability hereunder is limited to the costs to amend the original Complaint and/or re-list premises for Sheriff Sale.

Case ID: 2505T0069

## Outstanding Taxes

Name on Tax Account: ADAMS ALI SESON DEON TELEO

| Date | Principal | Interest | Penalty | Other | Total |
|---|---|---|---|---|---|
| 12/31/2010 | $288.92 | $321.84 | $20.23 | $0.00 | $630.99 |
| 12/31/2011 | $317.49 | $326.06 | $22.19 | $91.45 | $757.19 |
| 12/31/2012 | $329.73 | $308.75 | $23.10 | $91.45 | $753.03 |
| 12/31/2013 | $341.63 | $289.28 | $23.94 | $91.45 | $746.30 |
| 12/31/2014 | $1,420.78 | $1,076.66 | $99.40 | $91.45 | $2,688.29 |
| 12/31/2015 | $1,420.78 | $948.74 | $99.40 | $91.45 | $2,560.37 |
| 12/31/2016 | $1,484.22 | $857.01 | $103.95 | $91.45 | $2,536.63 |
| 12/31/2017 | $1,484.22 | $723.45 | $103.95 | $91.45 | $2,403.07 |
| 12/31/2018 | $932.08 | $370.47 | $65.24 | $91.45 | $1,459.24 |
| 12/31/2019 | $959.38 | $295.20 | $67.13 | $91.45 | $1,413.16 |
| 12/31/2020 | $929.62 | $202.13 | $65.03 | $91.45 | $1,288.23 |
| 12/31/2021 | $967.48 | $123.42 | $67.69 | $91.45 | $1,250.04 |
| 12/31/2022 | $967.48 | $58.08 | $0.00 | $91.45 | $1,117.01 |
| 12/31/2023 | $1,683.96 | $101.04 | $33.68 | $0.00 | $1,818.68 |
| 12/31/2024 | $1,860.78 | $27.92 | $18.61 | $0.00 | $1,907.31 |

Case ID: 2505T0069

# Water Accounts     For:

2355                    TURNER ST

Account Name: SESON ADAMS                Water Account #:    0537812002355001

2355  TURNER ST

Mailing Name:  SESON ADAMS

108 W 141ST ST, NEW YORK, 10030-1804

| Bill Cycle | Water Chg | Water Srv Chg | Sewer Chg | Sewer Srv Chg | Storm Wtr Chg | Fire Chg | Industry Chg | Lien Fee | Total AMT |
|---|---|---|---|---|---|---|---|---|---|
| 201001 | $29.91 | $5.53 | $22.56 | $17.32 | $0.00 | $0.00 | $0.00 | $0.00 | $75.32 |
| 201001 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $14.68 |
| 201002 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $11.39 |
| 201002 | $5.44 | $5.53 | $4.10 | $17.32 | $0.00 | $0.00 | $0.00 | $0.00 | $32.39 |
| 201003 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $9.67 |
| 201003 | $0.00 | $5.53 | $0.00 | $17.32 | $0.00 | $0.00 | $0.00 | $0.00 | $22.85 |
| 201004 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $9.40 |
| 201004 | $0.00 | $5.53 | $0.00 | $17.32 | $0.00 | $0.00 | $0.00 | $0.00 | $22.85 |
| 201004 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |
| 201005 | $0.00 | $5.53 | $0.00 | $17.32 | $0.00 | $0.00 | $0.00 | $0.00 | $22.85 |
| 201005 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $9.56 |
| 201006 | $2.72 | $5.53 | $2.05 | $17.32 | $0.00 | $0.00 | $0.00 | $0.00 | $27.62 |
| 201006 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $9.73 |
| 201007 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $8.97 |
| 201007 | $109.63 | $5.76 | $89.77 | $9.89 | $8.70 | $0.00 | $0.00 | $0.00 | $226.09 |
| 201008 | $197.24 | $5.94 | $164.01 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $384.89 |
| 201009 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $19.24 |
| 201009 | $228.61 | $5.94 | $191.70 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $443.95 |
| 201010 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $24.22 |
| 201010 | $107.96 | $5.94 | $85.20 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $216.80 |
| 201010 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |
| 201011 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $15.20 |
| 201011 | $0.00 | $5.94 | $0.00 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $23.64 |
| 201012 | $0.00 | $5.94 | $0.00 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $23.64 |
| 201012 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.70 |
| 201101 | $0.00 | $5.94 | $0.00 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $23.64 |
| 201101 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $31.49 |

Case ID: 2505T0069

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 201102 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $21.59 |
| 201102 | $0.00 | $5.94 | $0.00 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $23.64 |
| 201103 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $21.82 |
| 201103 | $0.00 | $5.94 | $0.00 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $23.64 |
| 201104 | $0.00 | $5.94 | $0.00 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $23.64 |
| 201104 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $22.04 |
| 201104 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |
| 201105 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $22.27 |
| 201105 | $0.00 | $5.94 | $0.00 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $23.64 |
| 201106 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $22.50 |
| 201106 | $0.00 | $5.94 | $0.00 | $4.21 | $13.49 | $0.00 | $0.00 | $0.00 | $23.64 |
| 201107 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $22.73 |
| 201107 | $0.00 | $6.18 | $0.00 | $4.32 | $13.33 | $0.00 | $0.00 | $0.00 | $26.26 |
| 201108 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $23.09 |
| 201108 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201109 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201109 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $23.25 |
| 201110 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $33.49 |
| 201110 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201111 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201111 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $23.73 |
| 201112 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201112 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $23.97 |
| 201201 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201201 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $24.21 |
| 201202 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $24.45 |
| 201202 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201203 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $24.70 |
| 201203 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201204 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |
| 201204 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201204 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $24.95 |
| 201205 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.19 |
| 201205 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201206 | $0.00 | $6.37 | $0.00 | $4.41 | $13.69 | $0.00 | $0.00 | $0.00 | $24.47 |
| 201206 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.44 |
| 201207 | $0.00 | $6.37 | $0.00 | $4.41 | $14.72 | $0.00 | $0.00 | $0.00 | $25.50 |
| 201207 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $20.00 |
| 201207 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $25.69 |
| 201208 | $0.00 | $6.37 | $0.00 | $4.41 | $13.70 | $0.00 | $0.00 | $0.00 | $24.48 |
| 201208 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $26.00 |
| 201209 | $0.00 | $6.37 | $0.00 | $4.41 | $13.70 | $0.00 | $0.00 | $0.00 | $24.48 |

Case ID: 2505T0069

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 201209 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $26.20 |
| 201210 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |
| 201210 | $0.00 | $6.37 | $0.00 | $4.41 | $13.70 | $0.00 | $0.00 | $0.00 | $24.48 |
| 201210 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $26.45 |
| 201211 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $26.71 |
| 201211 | $0.00 | $6.37 | $0.00 | $4.41 | $13.70 | $0.00 | $0.00 | $0.00 | $24.48 |
| 201212 | $0.00 | $6.37 | $0.00 | $4.41 | $13.70 | $0.00 | $0.00 | $0.00 | $24.48 |
| 201212 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $26.96 |
| 201301 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $27.22 |
| 201301 | $0.00 | $6.23 | $0.00 | $5.45 | $12.77 | $0.00 | $0.00 | $0.00 | $24.45 |
| 201302 | $0.00 | $6.12 | $0.00 | $6.30 | $12.44 | $0.00 | $0.00 | $0.00 | $24.86 |
| 201302 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $27.48 |
| 201303 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $27.76 |
| 201303 | $0.00 | $6.12 | $0.00 | $6.30 | $12.44 | $0.00 | $0.00 | $0.00 | $24.86 |
| 201304 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |
| 201304 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $28.02 |
| 201304 | $0.00 | $6.12 | $0.00 | $6.30 | $12.44 | $0.00 | $0.00 | $0.00 | $24.86 |
| 201305 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $28.29 |
| 201305 | $0.00 | $6.12 | $0.00 | $6.30 | $12.44 | $0.00 | $0.00 | $0.00 | $24.86 |
| 201306 | $0.00 | $6.12 | $0.00 | $6.30 | $12.44 | $0.00 | $0.00 | $0.00 | $24.86 |
| 201306 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $28.55 |
| 201307 | $0.00 | $6.30 | $0.00 | $6.33 | $12.80 | $0.00 | $0.00 | $0.00 | $25.43 |
| 201307 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $28.82 |
| 201308 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $29.12 |
| 201308 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201309 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $29.46 |
| 201309 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201310 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |
| 201310 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $29.74 |
| 201310 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201311 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201311 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $30.02 |
| 201312 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $30.31 |
| 201312 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201401 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201401 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $30.59 |
| 201402 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $30.88 |
| 201402 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201403 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201403 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $31.17 |
| 201404 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $31.46 |
| 201404 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |

Case ID: 2505T0069

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 201404 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201405 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201405 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $31.75 |
| 201406 | $0.00 | $6.44 | $0.00 | $6.36 | $13.95 | $0.00 | $0.00 | $0.00 | $26.75 |
| 201406 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $32.04 |
| 201407 | $0.00 | $6.45 | $0.00 | $6.47 | $14.12 | $0.00 | $0.00 | $0.00 | $27.04 |
| 201407 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $32.33 |
| 201408 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $32.64 |
| 201408 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201409 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $32.97 |
| 201409 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201410 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $43.27 |
| 201410 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201411 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201411 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $33.58 |
| 201412 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $33.88 |
| 201412 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201501 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201501 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $34.19 |
| 201502 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201502 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $34.50 |
| 201503 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201503 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $34.81 |
| 201504 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201504 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |
| 201504 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $35.12 |
| 201505 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201505 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $35.44 |
| 201506 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201507 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201507 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $37.14 |
| 201508 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201508 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $36.21 |
| 201509 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201510 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $36.53 |
| 201510 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $46.85 |
| 201510 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201511 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201511 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $37.18 |
| 201512 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $37.50 |
| 201512 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201601 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $37.83 |

Case ID: 2505T0069

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 201601 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201602 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $38.15 |
| 201603 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201603 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $38.48 |
| 201604 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $38.81 |
| 201604 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201604 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $10.00 | $10.00 |
| 201605 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201605 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $39.15 |
| 201606 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $39.48 |
| 201606 | $0.00 | $6.46 | $0.00 | $6.55 | $14.65 | $0.00 | $0.00 | $0.00 | $27.66 |
| 201607 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $39.82 |
| 201607 | $0.00 | $6.53 | $0.00 | $6.90 | $14.41 | $0.00 | $0.00 | $0.00 | $27.84 |
| 201608 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $0.00 | $28.54 |
| 201608 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40.16 |
| 201609 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40.54 |
| 201609 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $0.00 | $28.54 |
| 201610 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $10.00 | $38.54 |
| 201611 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $0.00 | $28.54 |
| 201612 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $0.00 | $28.54 |
| 201701 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $0.00 | $28.54 |
| 201702 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $0.00 | $28.54 |
| 201703 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $0.00 | $28.54 |
| 201704 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $10.00 | $38.54 |
| 201705 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $0.00 | $28.54 |
| 201706 | $0.00 | $6.58 | $0.00 | $7.17 | $14.79 | $0.00 | $0.00 | $0.00 | $28.54 |
| 201707 | $0.00 | $6.60 | $0.00 | $7.31 | $15.85 | $0.00 | $0.00 | $0.00 | $29.76 |
| 201708 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201709 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201710 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201711 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201712 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201801 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201802 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201803 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201804 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201804 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $43.53 |
| 201805 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201805 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $43.90 |
| 201806 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $44.26 |
| 201806 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |

Case ID: 2505T0069

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 201807 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $44.63 |
| 201807 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201808 | $0.00 | $6.61 | $0.00 | $7.41 | $15.38 | $0.00 | $0.00 | $0.00 | $29.40 |
| 201808 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $45.00 |
| 201809 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $45.37 |
| 201809 | $0.00 | $4.64 | $0.00 | $5.62 | $8.83 | $0.00 | $0.00 | $0.00 | $19.09 |
| 201810 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $45.23 |

Total:     6701.38

Case ID: 2505T0069

Account Name: ADAMS SESON      Water Account #:   0537812002355002

118  BULLOCK AVE

Mailing Name:  ADAMS SESON

118  BULLOCK AVE, LANSDOWNE, 19050-

| Bill Cycle | Water Chg | Water Srv Chg | Sewer Chg | Sewer Srv Chg | Storm Wtr Chg | Fire Chg | Industry Chg | Lien Fee | Total AMT |
|---|---|---|---|---|---|---|---|---|---|
| 201810 | $0.00 | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $0.00 | $0.00 | $15.00 |
| 201811 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201811 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.75 |
| 201812 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.88 |
| 201812 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201901 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.96 |
| 201901 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201902 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.05 |
| 201902 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201903 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201903 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.13 |
| 201904 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201904 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.22 |
| 201905 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.31 |
| 201905 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201906 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.39 |
| 201906 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201907 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201907 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.48 |
| 201908 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.57 |
| 201908 | $0.00 | $0.00 | $0.00 | $0.00 | $16.07 | $0.00 | $0.00 | $0.00 | $16.07 |
| 201909 | $0.00 | $0.00 | $0.00 | $0.00 | $16.38 | $0.00 | $0.00 | $0.00 | $16.38 |
| 201909 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.66 |
| 201910 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 201910 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.77 |
| 201911 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.86 |
| 201911 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 201912 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1.95 |
| 201912 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202001 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.04 |
| 202001 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202002 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202002 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.13 |
| 202003 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |

Case ID: 2505T0069

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 202004 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202005 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202006 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202007 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202008 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202009 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202010 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202011 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202012 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202101 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202102 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202103 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202104 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202105 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202106 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.85 |
| 202106 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202107 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202107 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.49 |
| 202108 | $0.00 | $0.00 | $0.00 | $0.00 | $16.33 | $0.00 | $0.00 | $0.00 | $16.33 |
| 202108 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.58 |
| 202109 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.68 |
| 202109 | $0.00 | $0.00 | $0.00 | $0.00 | $17.55 | $0.00 | $0.00 | $0.00 | $17.55 |
| 202110 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.83 |
| 202110 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202111 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.92 |
| 202111 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202112 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202112 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.02 |
| 202201 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.13 |
| 202201 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202202 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202202 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.23 |
| 202203 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.33 |
| 202203 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202204 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202204 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.44 |
| 202205 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202205 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.54 |
| 202206 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.64 |
| 202206 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202207 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202207 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.75 |

Case ID: 2505T0069

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 202208 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.86 |
| 202208 | $0.00 | $0.00 | $0.00 | $0.00 | $17.40 | $0.00 | $0.00 | $0.00 | $17.40 |
| 202209 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.96 |
| 202209 | $0.00 | $0.00 | $0.00 | $0.00 | $18.16 | $0.00 | $0.00 | $0.00 | $18.16 |
| 202210 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4.11 |
| 202210 | $0.00 | $0.00 | $0.00 | $0.00 | $18.61 | $0.00 | $0.00 | $0.00 | $18.61 |
| 202211 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4.24 |
| 202211 | $0.00 | $0.00 | $0.00 | $0.00 | $18.61 | $0.00 | $0.00 | $0.00 | $18.61 |
| 202212 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4.35 |
| 202212 | $0.00 | $0.00 | $0.00 | $0.00 | $18.61 | $0.00 | $0.00 | $0.00 | $18.61 |
| 202301 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4.47 |
| 202301 | $0.00 | $0.00 | $0.00 | $0.00 | $18.61 | $0.00 | $0.00 | $0.00 | $18.61 |
| 202302 | $0.00 | $0.00 | $0.00 | $0.00 | $18.61 | $0.00 | $0.00 | $0.00 | $18.61 |
| 202302 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4.58 |
| 202303 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4.70 |
| 202303 | $0.00 | $0.00 | $0.00 | $0.00 | $18.61 | $0.00 | $0.00 | $0.00 | $18.61 |
| 202304 | $0.00 | $0.00 | $0.00 | $0.00 | $18.61 | $0.00 | $0.00 | $0.00 | $18.61 |
| 202304 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4.82 |
| 202305 | $0.00 | $0.00 | $0.00 | $0.00 | $18.61 | $0.00 | $0.00 | $0.00 | $18.61 |
| 202305 | $0.00 | $0.00 | $0.00 | $0.00 | $1.80 | $0.00 | $0.00 | $0.00 | $1.80 |
| 202305 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4.93 |
| 202306 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5.05 |
| 202307 | $0.00 | $0.00 | $0.00 | $0.00 | $37.22 | $0.00 | $0.00 | $106.45 | $143.67 |
| 202307 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4.33 |
| 202308 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.13 |
| 202308 | $0.00 | $0.00 | $0.00 | $0.00 | $18.61 | $0.00 | $0.00 | $0.00 | $18.61 |
| 202309 | $0.00 | $0.00 | $0.00 | $0.00 | $17.27 | $0.00 | $0.00 | $0.00 | $17.27 |
| 202309 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5.42 |
| 202310 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5.47 |
| 202310 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202311 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202311 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5.67 |
| 202312 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5.80 |
| 202312 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202401 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5.92 |
| 202401 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202402 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.04 |
| 202402 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202403 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202403 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.17 |
| 202404 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |

Case ID: 2505T0069

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 202404 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.30 |
| 202405 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202405 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.42 |
| 202406 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.55 |
| 202406 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202407 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202407 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.68 |
| 202408 | $0.00 | $0.00 | $0.00 | $0.00 | $19.07 | $0.00 | $0.00 | $0.00 | $19.07 |
| 202408 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.81 |
| 202409 | $0.00 | $0.00 | $0.00 | $0.00 | $19.47 | $0.00 | $0.00 | $0.00 | $19.47 |
| 202409 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6.94 |
| 202410 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7.09 |
| 202410 | $0.00 | $0.00 | $0.00 | $0.00 | $20.99 | $0.00 | $0.00 | $0.00 | $20.99 |
| 202411 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7.30 |
| 202411 | $0.00 | $0.00 | $0.00 | $0.00 | $20.99 | $0.00 | $0.00 | $0.00 | $20.99 |
| 202412 | $0.00 | $0.00 | $0.00 | $0.00 | $20.99 | $0.00 | $0.00 | $0.00 | $20.99 |
| 202412 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7.44 |
| 202501 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7.58 |
| 202501 | $0.00 | $0.00 | $0.00 | $0.00 | $20.99 | $0.00 | $0.00 | $0.00 | $20.99 |
| 202502 | $0.00 | $0.00 | $0.00 | $0.00 | $20.99 | $0.00 | $0.00 | $0.00 | $20.99 |
| 202502 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $7.73 |

Total: 1703.64



City of **Philadelphia**

**CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE**

05/09/2025

2355 TURNER ST
PHILADELPHIA PA 19121-2919
OPA Number: 885000274
Owner: ADAMS ALI SESON DEON TELEO, SESON DEON TELEO ADAMS TRUST, DOMICILII LEX LOCI
Account Includes 1997 Lien Sale: N

| Year | Principal | Interest | Penalty | Other | Credit | Total | Docket Number | City Solicitor | Status |
|------|-----------|----------|---------|-------|--------|-------|---------------|----------------|--------|
| 2010 | $288.92 | $328.32 | $20.23 | $1,392.22 | $0.00 | $2,029.69 | 1512R10647902 | SHELLEY R. SMITH | |
| 2011 | $317.49 | $333.20 | $22.19 | $135.59 | $0.00 | $808.47 | 1512R11617961 | SHELLEY R. SMITH | |
| 2012 | $329.73 | $316.16 | $23.10 | $135.92 | $0.00 | $804.91 | 1512R12583542 | SHELLEY R. SMITH | |
| 2013 | $341.63 | $296.96 | $23.94 | $134.84 | $0.00 | $797.37 | 1512R13543433 | SHELLEY R. SMITH | |
| 2014 | $1,420.78 | $1,108.64 | $99.40 | $248.75 | $0.00 | $2,877.57 | 1505R14025693 | SHELLEY R. SMITH | |
| 2015 | $1,420.78 | $980.72 | $99.40 | $241.07 | $0.00 | $2,741.97 | 1603R15087511 | SHELLEY R. SMITH | |
| 2016 | $1,484.22 | $890.40 | $103.95 | $239.59 | $0.00 | $2,718.16 | 1703R16141265 | SOZI PEDRO TULANTE | |
| 2017 | $1,484.22 | $756.84 | $103.95 | $231.55 | $0.00 | $2,576.56 | 1802R17195526 | SOZI PEDRO TULANTE | |
| 2018 | $932.08 | $391.44 | $65.24 | $175.82 | $0.00 | $1,564.58 | 1903R18431800 | MARCEL S. PRATT | |
| 2019 | $959.38 | $316.80 | $67.13 | $173.86 | $0.00 | $1,517.17 | 2002R19475653 | MARCEL S. PRATT | |
| 2020 | $929.62 | $223.04 | $65.03 | $167.26 | $0.00 | $1,384.95 | 2102R20520640 | DIANA CORTES | |
| 2021 | $967.48 | $145.20 | $67.69 | $167.85 | $0.00 | $1,348.22 | 2202R21562317 | DIANA CORTES | |
| 2022 | $967.48 | $79.86 | $0.00 | $159.83 | $0.00 | $1,207.17 | 2301R22062191 | DIANA CORTES | |
| 2023 | $1,683.96 | $138.93 | $33.68 | $111.42 | $0.00 | $1,967.99 | | | |
| 2024 | $1,860.78 | $69.80 | $74.44 | $233.17 | $0.00 | $2,238.19 | 2503R24000252 | Renee Garcia | |
| 2025 | $1,851.94 | $55.56 | $0.00 | $0.00 | $0.00 | $1,907.50 | | | |
| | $17,240.49 | $6,431.87 | $869.37 | $3,948.74 | $0.00 | $28,490.47 | | | |

Case ID: 2505T0069

**Description**

AGRE - Active payment agreement plan in effect.

BRT - Under appeal with the Board of Revision of Taxes. If you have a pending appeal affecting the 2023 or 2025 period, you may choose to pay either the total due shown at right, based on your property's current assessment OR the prior year's Real Estate Tax amount based on your property's prior assessment. You can view the prior year's tax amount by selecting "View period balance" from your Property's Summary page on the Philadelphia Tax Center.
GRB - Collections being pursued by GRB Collection Agency. Please call (866) 677-5970.

GRBA - In an agreement with GRB.

HARRIS - Collections being pursued by Harris and Harris Collection Agency. Please call (866) 681-1242.

INST - Active installment payment plan in effect for current taxes.

LBR - Collections being pursued by Linebarger Collection Agency. Please call (215) 790-1117.

LBRA - In an agreement with Linebarger.

LSLD - This charge has a tax lien that was sold to a private third-party lien-holder at a City Tax Lien Sale. Therefore, the amounts listed below for those years may not include all Real Estate Tax liabilities currently due. For more information regarding the name, address, and phone number of the new lien-holder, as well as the status of the lien(s), you may search the Philadelphia Court's civil docket at Civil Docket Access. You may enter or copy/paste the 13-digit lien number listed below (ex. 1504R14010000) to the Court's "Case ID" search box.

PIONR - Collections being pursued by Pioneer Collection Agency. Please call (866) 439-1318.

RCB - Collections being pursued by Revenue Collection Bureau Collection Agency. Please call (215) 288-6800.

SEQR - This charge has a tax lien that is in the Law Department's Sequestration/Receivership Program. For more information regarding the status of the sequestration proceedings, you may call (866) 677-5970, or search the Philadelphia Court's civil docket at Civil Docket Access. You may enter the property owner's name in the Court's "Caption" search box.

Case ID: 2505T0069